UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

TEYO JOHNSON,

                         Plaintiff,

          -against-

EVERYREALM INC., COMPOUND ASSET
MANAGEMENT LLC, REALM METAVERSE
REAL ESTATE INC., REPUBLIC, REPUBLIC
CRYPTO LLC, REPUBLIC REALM MANAGER
LLC, REPUBLIC REALM INC., REPUBLIC
OPERATIONS LLC, OPENDEAL INC.,
OPENDEAL PORTAL LLC, JULIA SCHWARTZ
in her individual and professional capacities, and
JANINE YORIO in her individual and professional
capacities.

                     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No. 1:22-cv-06669(PAE)(GWG)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS EVERYREALM INC. (f/k/a REPUBLIC REALM INC.), JULIA SCHWARTZ, AND JANINE YORIO'S MOTION TO COMPEL ARBITRATION

PROSKAUER ROSE LLP

Lloyd B. Chinn, Esq.
Eleven Times Square
New York, NY 10036
(212) 969-3000
(212) 969-2900 (Fax)
lchinn@proskauer.com
*Attorneys for Everyrealm Inc.
(f/k/a Republic Realm Inc.), Julia
Schwartz, and Janine Yorio*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................1

RELEVANT FACTS ............................................................................................................2

    A.    The Parties.......................................................................................................2

    B.    Terms of Plaintiff's Agreement to Arbitrate ................................................5

    C.    Johnson's Filing of the Instant Action Contrary to the Agreement ..............5

ARGUMENT ......................................................................................................................7

I.    THIS ACTION SHOULD BE DISMISSED AND PLAINTIFF SHOULD BE
COMPELLED TO ARBITRATE ALL OF HIS CLAIMS ......................................7

    A.    This Dispute Is Governed by the Federal Arbitration Act .............................7

    B.    The FAA Requires Arbitration of the Claims Asserted in Plaintiff's Complaint ..........9

        1.    Johnson Entered Into a Valid and Enforceable Agreement to Arbitrate.............11

        2.    Johnson's Agreement to Arbitrate Encompasses the Claims in the
Complaint, which, Excluding any Claims Subject to the EFASASH Act, Are
Arbitrable .................................................................................................12

        3.    All of Plaintiff's Claims, Excluding His Claims Subject to the EFASASH Act,
Should Be Compelled to Arbitration .................................................................14

CONCLUSION.....................................................................................................................15

i

## <u>TABLE OF AUTHORITIES</u>

**Page**

*Ahing v. Lehman Brothers*,
No. 94 Civ. 9027, 2000 WL 460443 (S.D.N.Y. Apr. 18, 2000) ................................................. 14

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995)................................................................................................................... 7

*AT&T Mobility LLC v. Concepcion*,
131 S. Ct. 1740 (2011)............................................................................................................... 9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................... 1

*Campaniello Imps., Ltd. V. Saporiti Italia Sp.A.*,
117 F.3d 655 (2d Cir. 1997) ..................................................................................................... 14

*Charter Communs., Inc. v. Garfin*,
No. 20 Civ. 7049, 2021 U.S. Dist. LEXIS 33579 (S.D.N.Y. Feb. 23, 2021)............................ 8

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001)...................................................................................................... 7, 11, 13

*Daly v. Citigroup, Inc.*,
939 F.3d 415 (2d Cir. 2019) ..................................................................................................... 13

*DeBono v. Wash. Mut. Bank*,
05 Civ. 10333, No. 2006 U.S. Dist. LEXIS 89283 (S.D.N.Y. Dec. 8, 2006).......................... 12

*Desiderio v. NASD*,
191 F.3d 198 (2d Cir. 1999)..................................................................................................... 13

*Dubois v. Macy's East Inc.*,
No. 06 CV 6522, 2007 U.S. Dist. LEXIS 66500 (E.D.N.Y. July 13, 2007),
*aff'd*, 338 F. App'x 32 (2d Cir. 2009)........................................................................................ 7

*Endreson v. Banc of Cal. Inc.*,
2018 U.S. Dist. LEXIS 245645 (C.D. Cal. Sept. 20, 2018) ....................................................14

*Feroce v. Bloomingdale's Inc.*,
No. 12-CV-5014, 2014 U.S. Dist. LEXIS 9119 (E.D.N.Y. Jan. 23, 2014) ............................. 12

*Fletcher v. Kidder, Peabody & Co.*,
81 N.Y.2d 623, *cert. denied*, 510 U.S. 993 (1993) ............................................................... 7, 8

*Genesco, Inc. v. T. Kakiuchi & Co.*,
815 F.2d 840 (2d Cir. 1987)..................................................................................................... 10

*Gilbert v. Indeed, Inc.*,
    513 F. Supp. 3d 374 (S.D.N.Y. 2021) ........................................................................ 8

*Gold v. Deutsche Aktiengesellschaft*,
    365 F.3d 144 (2d Cir. 2004)................................................................... 10, 12, 13

*Graphic Scanning Corp. v. Yampol*,
    850 F.2d 131 (2d Cir. 1988)............................................................................ 7

*Guyden v. Aetna, Inc.*,
    544 F.3d 376, 382 (2d Cir. 2008).................................................................... 11

*JBCHoldings NY, LLC v. Pakter*,
    931 F. Supp. 2d 514, 520 (S.D.N.Y. 2013), ...................................................... 1

*Kim v. Reins Int'l Cal., Inc.*,
    9 Cal. 5th 73 (2020) ................................................................................... 15

*Kuchinsky v. Curry*,
    No. 09 Civ. 00299, 2009 WL 1492225 (S.D.N.Y. May 28, 2009)......................... 12

*Latif v. Morgan-Stanley & Co. LLC*,
    No. 18cv11528, 2019 WL 2610985 (S.D.N.Y. June 26, 2019)............................... 9

*Masthead MAC Drilling Corp. v. Fleck*,
    549 F. Supp. 854 (S.D.N.Y. 1982).................................................................. 8

*Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*,
    473 U.S. 614 (1985)................................................................................ 8, 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)......................................................................... 8, 9, 10, 13

*Nicosia v. Amazon.com, Inc.*,
    834 F.2d 220 (2d Cir. 2016)......................................................................... 9

*Nunez v. Citibank, N.A.*,
    No. 08 Civ. 5398, 2009 U.S. Dist. LEXIS 7783 (S.D.N.Y. Feb. 3, 2009) ..............7, 10, 12, 14

*Oldroyd v. Elmira Sav. Bank*,
    134 F.3d 72 (2d Cir. 1998)......................................................................... 11

*Owoyemi v. JP Morgan Chase & Co.*,
    No. 10-CV-6001, 2011 U.S. Dist. LEXIS 172512 (E.D.N.Y. May 5, 2011) ............ 13

*Porcelli v. JetSmarter, Inc.*,
    No. 19 Civ. 2537, 2019 U.S. Dist. LEXIS 94287 (S.D.N.Y. June 5, 2019)............ 12

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967)...............................................................................................7

*Reynolds v. de Silva*,
   No. 09 Civ. 9218, 2010 U.S. Dist. LEXIS 18040 (S.D.N.Y. Feb. 24, 2010) .........................13

*Rice v. Brown Brothers Harriman & Co.*,
   No. 96 Civ. 6326, 1997 WL 129396 (S.D.N.Y. Mar. 21, 1997) .................................14

*Ricketts v. Nat'l Debt Relief*,
   No 21056/19, 2019 N.Y. Misc. LEXIS 11437 (N.Y. Sup. Oct. 4, 2019)...................9

*Roby v. Corp. of Lloyd's*,
   996 F.2d 1353 (2d Cir. 1993)...........................................................................10, 14

*Rodriguez v. Four Seasons Hotels, Ltd.*,
   No.09 Civ. 2864, 2009 WL 2001328 (S.D.N.Y. July 10, 2009) .................................13

*Schnabel v. Trilegiant Corp.*,
   697 F.3d 110, 118 (2d Cir. 2012) .....................................................................9

*Tarulli v. Circuit City Stores, Inc.*,
   333 F. Supp. 2d 151 (S.D.N.Y. 2004)..................................................................12

*Whyte v. WeWork Companies, Inc.*,
   No. 20-cv-1800, 2020 WL 3099969 (S.D.N.Y. June 11, 2020)...................................8

*Xie v. The JPMorgan Chase Short-Term Disability Plan*,
   No. 15-cv-04546, 2017 U.S. Dist. LEXIS 87493 (S.D.N.Y. June 7, 2017) ...............7

STATUTES & OTHER AUTHORITIES

9 U.S.C. § 2.............................................................................................................11

9 U.S.C. § 1 *et seq*...................................................................................................7

9 U.S.C. § 3............................................................................................................1

9 U.S.C. § 4.......................................................................................................1, 9, 10

42 U.S.C. § 1981.....................................................................................................6

Civil Rights Act of 1964 Title VII ...............................................................10, 13, 14

Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act............................. passim

Equal Pay Act ........................................................................................................13

Federal Arbitration Act .................................................................................... passim

Federal Rules of Civil Procedure.................................................................................................1

New York City Human Rights Law.............................................................................................6

New York Equal Pay Law.............................................................................................................6

New York Labor Law.....................................................................................................................6

New York State Human Rights Law............................................................................................6

## PRELIMINARY STATEMENT

This is an action in which the Plaintiff Teyo Johnson, along with others including Katherine Yost (Case No. 1:22-cv-06549), have threatened Everyrealm Inc. ("Everyrealm") with patently frivolous claims, virtually all – if not all – of which are subject to mandatory arbitration. Having failed in seeking to "shake down" Everyrealm for an unwarranted settlement pre-filing, Plaintiff has now gone public by filing a series of frivolous claims that belong – if anywhere at all – in arbitration. As has been made clear by Plaintiff's counsel in the media, Plaintiff's counsel intends to file more proceedings, all in plain contravention of valid arbitration agreements – and all of which assert frivolous claims laced with salacious irrelevant (and false) assertions. These cases – that belong in arbitration – are instead being filed publicly with the intent to cause reputational harm and extract unwarranted settlements from Everyrealm.[1]

Defendants, Everyrealm (f/k/a "Republic Realm Inc."), Julia Schwartz, and Janine Yorio (collectively "the Everyrealm Defendants") respectfully move this Court for an Order pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and the Federal Arbitration Act, 9 U.S.C. §§ 3, 4: (i) dismissing the action against the Everyrealm Defendants because all claims, excluding any that may be subject to the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("the EFASASH Act"),[2] contained in the Complaint are subject to arbitration under a valid arbitration agreement; (ii) compelling Plaintiff Teyo Johnson to arbitrate the claims, excluding any that may be

---

[1] Everyrealm closed a landmark Series A round in Q1 of this year; the largest Series A by a female CEO in the last several years. *See e.g. https://www.businessinsider.com/startup-funding-metaverse-real-estate-60-million-a16z-coinbase-celebs-2022-2.*

[2] These claims, if any, are very thinly pled and appear to be "thrown in" by Plaintiff's counsel as an attempt to fall within EFASASH, but certainly not crossing over the line from "possible" to "plausible". *See JBCholdings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 520 (S.D.N.Y. 2013), quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 557 (2007). Should the Court decide to retain jurisdiction over any such claims, Everyrealm intends thereafter to seek their dismissal pursuant to Fed. R. Civ. P. 12(b)(6) and *Twombly/Iqbal*. For example, the allegations asserted against Ms. Yorio in paragraphs 43-44 and 73-76 describe no legally actionable conduct whatsoever, and cannot serve as the basis for any liability to Plaintiff or anyone else.

subject to the EFASASH Act, asserted in his Complaint against the Everyrealm Defendants pursuant to the arbitration provision contained within his employment agreement; and (iii) staying the remainder of this action against the Everyrealm Defendants pending resolution of the arbitration between the parties.

Following his brief three-month tenure with Everyrealm (f/k/a Republic Realm, Inc.), Johnson filed the instant action contrary to an express contract, in which he agreed to arbitrate all disputes with Everyrealm. Indeed, it appears that this action was filed here as a "money grab" primarily to garner publicity – and to try to harm Everyrealm, especially in its relations with its investors – while fully cognizant that the public lawsuit would ultimately be dismissed (in whole or in virtually its entirety) in favor of arbitration.

Johnson entered into an employment agreement (the "Agreement") at the time of his hire in which he expressly agreed to arbitrate "any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this [Employment] Agreement . . . ." (attached to the Declaration of William Kerr ("Kerr Decl.") as Exhibit ("Ex.") B, at pp. 5-6). Contrary to his contractual obligations under the Agreement, Johnson filed a Complaint against the Everyrealm Defendants in this Court, including false inflammatory and salacious allegations and content, and purporting to assert claims relating to his employment, including claims of race discrimination and retaliation. [*See* doc. 1]. Because the claims asserted by Plaintiff are plainly within the scope of the Agreement's broad arbitration provision, Plaintiff's claims must be addressed in arbitration pursuant to the Agreement. (Kerr Decl., Ex. B at pp. 5-6).

## **RELEVANT FACTS**

### A.   **The Parties**

Plaintiff's claims arise out of his employment with Everyrealm. Everyrealm, formerly known as Republic Realm Inc., was renamed by certificate of name change filed with the State of Delaware on February 3, 2022. (Kerr Decl., Ex. A at p. 2). Everyrealm is an active investor in and developer of the

metaverse, focusing on content, infrastructure and gaming.  It is a Delaware corporation with its principal place of business in New York, New York. (*Id.* at ¶ 4).  Everyrealm has additional operations in Connecticut and in Croatia. (*Id.* at ¶5).

Janine Yorio is the founder and CEO of Everyrealm, and is a resident of the State of New York. (Kerr Decl. at ¶ 13). Julia Schwartz is a board member and the Chief Strategy Officer of Everyrealm, and is a resident of the State of New York.  (*Id.* at ¶ 14). Schwartz had no supervisory or management authority with respect to Johnson. (*Id.* at ¶ 15).

Everyrealm hired Johnson as its Director of Strategic Partnerships on March 1, 2022, transferred him to an Asset Management position roughly 30 days later, and discharged him on May 31, 2022. (Kerr Decl. at ¶ 8).  Contrary to the fanciful public assertions by Johnson, Johnson was discharged after engaging in a plethora of inappropriate misconduct and failing to perform his job duties.  Johnson's misconduct included, among other acts, expense account abuse and flagrant misogyny toward his female co-workers[3] as documented by then-Human Resources Director Katherine Yost who recommended and ultimately handled his termination.[4] Other misconduct included falling asleep at his desk and on video calls, and attempting to cover up his poor performance by falsely claiming to have closed major business deals to external parties and investors when those claims were untrue.

---

[3] Johnson openly and routinely disparaged the mother of his child and demanded that Everyrealm pay a portion of his wages in cash to avoid garnishment for child support payments (a request that was refused by Everyrealm).  Johnson made various inappropriate comments in the workplace regarding other women in his life, hazed a junior female employee by disparaging her as "rookie" and refusing to meet with her, and referred to Ms. Schwartz as "that bitch" and Mrs. Yorio as "that crazy bitch."

[4] Yost and Johnson are represented by the same counsel in their respective actions pending before this Court.  Documents authored by Yost and her testimony could prove to be critical to Everyrealm's future merits defense against Johnson's claims. For example, Yost stated in writing to Mrs. Yorio, "Look at you blaming yourself for Teyo['s] misogyny like you encouraged [it]. All you did was engage about a friend he introduced. We've been gaslit to believe we bring this all on. And it's horseshit."

3

Despite Johnson's utter failure to perform in his initial partnerships role, Everyrealm management gave him a second chance, moving him to the asset management team, where he was supervised by former Everyrealm employee Kevin Virgil. Soon after Johnson joined his team, Mr. Virgil noted Johnson's poor performance and placed him on a thirty (30) day performance improvement plan. After Johnson failed to improve his performance and continued to engage in inappropriate conduct, Virgil (along with Yost) recommended Johnson's termination.

Johnson primarily worked remotely, and was only present in Everyrealm's office located at 335 Madison Avenue, New York, NY 10017 on one occasion totaling approximately one week. (Kerr Decl. at ¶ 11).  As described above, it became readily apparent during his brief tenure that Plaintiff lacked the work ethic or professionalism to remain employed by Everyrealm.

At no time was Johnson employed by Compound Asset Management, LLC, Realm Metaverse Real Estate Inc., Republic, Republic Crypto, LLC, Republic Realm Manager, LLC, Republic Operations, LLC, Opendeal, Inc., or Opendeal Portal, LLC. (Kerr Decl. at ¶ 9).  The naming of these entities in his Complaint is merely another facet of Johnson's efforts to "shake down" Everyrealm. Lumping all of the defendants together categorically by footnote, Johnson does not allege any basis upon which any of these separate and distinct business entities could have somehow employed him during his limited tenure [*see* doc. 1 at n. 1], and makes no particularized allegations that would impute liability to any of them.  Specifically, Compound Asset Management, LLC is an unaffiliated business entity previously run by defendant Mrs. Yorio which at all relevant times had no employees. (Kerr Decl. at ¶ 10). Realm Metaverse Real Estate Inc. is an affiliate of Everyrealm that has never had employees. (*Id.*). Republic is not a legal entity but the "dba" for a family of legal entities owned by OpenDeal, Inc. which was – until February 4, 2022 (before Johnson was hired) – the parent company of Everyrealm. (*Id.*). Republic Crypto, LLC is a wholly-owned subsidiary of OpenDeal, Inc. (*Id.*).

4

Republic Realm Manager, LLC is the former name of Everyrealm Manager LLC, the parent company

of Realm Metaverse Real Estate Inc, which has never had employees. (*Id.*). Republic Operations, LLC

and OpenDeal Portal, LLC are wholly-owned subsidiaries of OpenDeal, Inc. (*Id.*).

> **B.**     **Terms of Plaintiff's Agreement to Arbitrate**

On or about February 24, 2022, when Everyrealm offered Johnson a job, he entered into an

employment agreement setting forth certain terms and conditions of his employment. (*See* Kerr Decl.,

Ex. B). Paragraph 13e of the Agreement contains a broad arbitration provision that sets forth Plaintiff's

commitment to arbitrate all disputes arising from his employment. It states, in relevant part:

> Arbitration. Except as provided in Section 13(e)(ii) below, you agree that
> any dispute or controversy **arising out of or relating to** any
> interpretation, construction, **performance** or breach of this Agreement,
> shall be settled by arbitration to be held in the State of New York, in
> accordance with the rules then in effect of the American Arbitration
> Association. The arbitrator shall be final, conclusive, and binding on both
> the Company and you. Judgment may be entered on the arbitrator's
> decision in any court having jurisdiction. The Company and you shall
> each pay one-half of the costs and expenses of such arbitration, and each
> of the Company and you shall separately pay counsel fees and expenses.

(Kerr Decl., Ex. B at pp. 5-6) (emphasis added).

In addition to the broad arbitration provision, the Agreement included a wide-ranging

successors and assigns clause:

> This Agreement will be binding upon your heirs, executors,
> administrators and other legal representatives, and your successors and
> assigns, and will be for the benefit of the Company, its successors, and its
> assigns. You may not assign your rights or obligations pursuant to this
> Agreement, except to the extent required by law.

(*Id.*).

> **C.**     **Johnson's Filing of the Instant Action Contrary to the Agreement**

Johnson filed the instant lawsuit primarily to garner publicity, as it was filed with his full-

knowledge that he was subject to a binding arbitration agreement, and that virtually all – if not all – of

his claims would be dismissed on that basis. In addition, by letter dated July 22, 2022, Everyrealm's counsel advised Plaintiff's counsel that, to the extent permitted by law, Johnson is bound by the Agreement to use final and binding arbitration as the exclusive forum to resolve disputes arising out of his employment. (Chinn Decl. at ¶¶ 3-5, Ex. A). Nonetheless, Plaintiff filed a Complaint in this Court on August 5, 2022, asserting claims of race discrimination, retaliation, and sexual harassment in violation of the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), 42 U.S.C. § 1981, New York Labor Law ("NYLL"), the New York Equal Pay Law, and a common law claim for Intentional Infliction of Emotional Distress ("IIED").  [*See* doc 1]. Plaintiff filed the Complaint in this action notwithstanding the Agreement, which unmistakably requires him to resolve any dispute arising from his employment relationship through arbitration. (Kerr Decl., Ex. B at pp. 5-6).  Indeed, although plainly on notice of his arbitration obligation, Plaintiff made no mention of it in his Complaint.

Plaintiff's counsel made it clear that negative publicity was the desired goal of a public filing. Notwithstanding the July 22 correspondence from Everyrealm's counsel, Plaintiff's counsel filed another action before this Court (*Katherine Yost v. Everyrealm Inc.*, et al., Case No. 1:22-cv-06549), and has threatened to file more.[5]  Indeed, Plaintiff's counsel initially ignored, and ultimately refused, Everyrealm's third-party investigator's request to interview Plaintiff regarding his claims of discrimination, harassment, and retaliation. (Chinn Decl. at ¶ 6). Moreover, Plaintiff's Complaint is littered with immaterial, impertinent, and scandalous allegations that have no bearing on the legal causes of action asserted therein, including, but not limited to, references to Defendant Mrs. Yorio's home purchases, Plaintiff's friendship with Yao Ming, and the names of Everyrealm's investors.

---

[5] Andrew Hayward, *Ex-NFL Player and Former Exec Sues Metaverse Startup Everyrealm, Alleging Discrimination A second lawsuit was also filed by the company's former HR director. And more suits may be coming.*, Aug. 8, 2022, https://decrypt.co/107009/ex-nfl-player-former-exec-metaverse-startup-everyrealm-lawsuit.

## ARGUMENT

**I.      THIS ACTION SHOULD BE DISMISSED AND PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE HIS CLAIMS.**

### A.      This Dispute Is Governed by the Federal Arbitration Act.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., applies to all contracts involving interstate commerce. The term "involving interstate commerce" is construed broadly. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995).  As the Supreme Court has held, "the control over interstate commerce . . . reaches not only the actual physical interstate shipment of goods but also contracts relating to interstate commerce."  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 n.7 (1967). Where an employer's business is national in scope, the FAA will govern disputes about arbitrability. *See, e.g.*, *Graphic ScanningCorp. v. Yampol*, 850 F.2d 131, 133 (2d Cir. 1988) (concluding that the FAA applies where employer operated in several states).

The Agreement at issue here is undoubtedly within the scope of the FAA. It cannot be disputed that Everyrealm's business – the sale and marketing of digital real estate and metaverse development services to a worldwide market – is national in scope and, thus, plainly involves interstate commerce. (Kerr Decl. at ¶¶ 3, 5). Moreover, Everyrealm has a physical presence in two states, which also constitutes engaging in interstate commerce. (*Id.*).

In addition, it is well-settled that the FAA applies to employment agreements such as Plaintiff's.  *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123-24 (2001) (holding that FAA governs arbitration clauses in employment contracts other than those for transportation workers); *Xie v. The JP Morgan Chase Short-Term Disability Plan*, No. 15-cv-04546, 2017 U.S. Dist. LEXIS 87493, at *20 (S.D.N.Y. June 7, 2017); *Nunez v. Citibank, N.A.*, No. 08 Civ. 5398, 2009 U.S. Dist. LEXIS 7783 (S.D.N.Y. Feb. 3, 2009); *Dubois v. Macy's East Inc.*, No. 06 CV 6522, 2007 U.S. Dist.

LEXIS 66500 (E.D.N.Y. July 13, 2007), *aff'd*, 338 F. App'x 32 (2d Cir. 2009); *see also Fletcher v. Kidder, Peabody & Co.*, 81 N.Y.2d 623, 638, *cert. denied*, 510 U.S.993 (1993) (holding that arbitration clause in an employment contract "is within the class of agreements that are governed by the FAA").

Further, in situations where the FAA applies, it is a basic principle that the FAA preempts state law on the subject of the enforceability of arbitration clauses.  *See Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (holding courts should apply federal substantive law of arbitrability to any arbitration agreement within coverage of FAA); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (FAA creates a "body of federal substantive law of arbitrability").  Therefore, even though Plaintiff's Agreement provides that it be governed by the laws of the State of New York (Kerr Decl., Ex. B at p. 5), in arbitration disputes like this where the contract involves interstate commerce, federal – not state– arbitration law applies. *See Masthead MAC Drilling Corp. v. Fleck*, 549 F. Supp. 854, 856 (S.D.N.Y. 1982) ("[n]or is the applicability of the Federal Arbitration Act affected or diluted by the fact that the agreements between the parties specify that they are controlled by New York law"); *Fletcher*, 81 N.Y.2d at 630-31 ("the provisions of the FAA are controlling even though the dispute itself may arise under State law").

Although New York State has recently sought to eliminate mandatory pre-dispute arbitration in the employment setting, New York courts have continued – as they must – to enforce the FAA. *See Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374 (S.D.N.Y. 2021) (compelling arbitration of federal, state and local discrimination claims via the FAA in spite of Section 7515 of the C.P.L.R.)*; Charter Communs., Inc. v. Garfin*, No. 20 Civ. 7049, 2021 U.S. Dist. LEXIS 33579, at *41 (S.D.N.Y. Feb. 23, 2021) (granting petition to compel arbitration of discrimination, retaliation and sexual harassment claims via the FAA in spite of Section 7515 of the C.P.L.R.); *Whyte v. WeWork Companies, Inc.*, No. 20-cv-1800, 2020 WL 3099969, at *7 (S.D.N.Y. June 11, 2020) (granting motion to compel arbitration

of discrimination claims pursuant to the Federal Arbitration Act where agreement included New York choice of law rule and plaintiff claimed New York law precluded enforcement of agreement); *Latif v. Morgan-Stanley & Co. LLC*, No. 18cv11528, 2019 WL 2610985, at \*4 (S.D.N.Y. June 26, 2019) (enforcing arbitration agreement where plaintiff claimed New York law precluded enforcement of agreement); *Ricketts v. Nat'l Debt Relief*, No. 21056/19, 2019 N.Y. Misc. LEXIS 11437, at \*2 (N.Y. Sup. Oct. 4, 2019) (compelling arbitration of claims and finding the Federal Arbitration Act supersedes New York law prohibiting arbitration of discrimination claims).[6]

### B. The FAA Requires Arbitration of the Claims Asserted in Plaintiff's Complaint.

A motion to compel arbitration is governed by Section 4 of the FAA, which provides that "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA, and the strong federal policy favoring arbitration that it embodies, requires courts to "rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp.*, 473 U.S. at 626; *see also AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (*quoting Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24) (discussing "liberal federal policy favoring arbitration" under FAA); *Nicosia v. Amazon.com, Inc.,* 834 F.2d 220, 229 (2d Cir. 2016) ("This policy is founded on a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, disputes.") (alteration omitted) (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)). Indeed, courts are obligated to "place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC*, 131 S. Ct. at 1745 (citations omitted).

---

[6] The sole case concluding otherwise was reversed on other grounds. *See Newton v. LVMH Moet Hennessey Louis Vuitton*, 192 A.D.3d 540 (1st Dep't 2021).

When a litigant in a court proceeding refuses to arbitrate a dispute within the scope of a valid arbitration agreement, a court should compel arbitration of the dispute. *See* 9 U.S.C. § 4 (directing that the court "shall" order arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue."); *see also Gold v. Deutsche Aktiengesellschaft,* 365 F.3d 144, 150 (2d Cir. 2004) (upholding district court grant of motion to compel arbitration, and finding that "given the very strong federal policy favoring arbitration…[plaintiff's] Title VII claims were subject to a compulsory arbitration[.]")

Further, courts should construe arbitration clauses as broadly as possible, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

The exacting application and broad construction of arbitration agreements dictate that, "[i]f the allegations underlying the claims 'touch matters' covered by the parties' [arbitration] agreement[s], then those claims must be arbitrated, whatever the legal labels attached to them." *Genesco Inc. v. t. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987). Thus, a broad arbitration clause creates a presumption of arbitrability which can only be overcome if it "may be said with positive assurance that the arbitration clause is not susceptible to [the] interpretation that [it] covers the asserted dispute." *Nunez*, 2009 U.S. Dist. LEXIS 7783, at *8-9 (*citing Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993).

In deciding a motion to compel arbitration through the lens of the strong policy favoring arbitration, this Court must consider four factors: (i) whether the parties have agreed to arbitrate their disputes; (ii) whether the scope of that agreement encompasses the plaintiff's claims; (iii) if federal statutory claims are asserted, whether the legislature intended them to be non-arbitrable; and (iv) if the

court concludes that some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration. *See Guyden v. Aetna, Inc.,* 544 F.3d 376, 382 (2d Cir. 2008) (citing *Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 76 (2d Cir. 1998)). As set forth below, application of these factors clearly requires that Plaintiff's Complaint, excluding his claims subject to the EFASASH Act, be dismissed and that he be compelled to arbitration.

### 1.      Johnson Entered Into a Valid and Enforceable Agreement to Arbitrate.

The FAA provides that "a written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be *valid, irrevocable, and enforceable*, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added); *see also Circuit City Stores, Inc*, 532 U.S. at 111-12.

Plaintiff has unquestionably entered into such a valid, unconditional and enforceable written agreement to arbitrate the very same claims he purports to bring before this Court, as evidenced by the following provision in his Agreement:

> Arbitration. Except as provided in Section 13(e)(ii) below, you agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held in the State of New York, in accordance with the rules then in effect of the American Arbitration Association. The arbitrator shall be final, conclusive, and binding on both the Company and you. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. The Company and you shall each pay one-half of the costs and expenses of such arbitration, and each of the Company and you shall separately pay counsel fees and expenses.

(Kerr Decl., Ex. B at pp. 5-6).

Moreover, the final paragraph of the Agreement, which appears only inches away from Plaintiff's signature, provides "[i]f you wish to accept this offer, please sign and date the enclosed duplicate original of this Agreement and return it to my attention. By accepting this offer, **you agree to**

**all of the terms of this Agreement** including the terms of the Confidentiality and Invention

Assignment Addendum." (Kerr Decl., Ex. B at p. 6) (emphasis added). No question exists under these

circumstances that arbitration is warranted. *See Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 148

(2d Cir. 2004); *Feroce v. Bloomingdale's Inc.*, No. 12-CV-5014, 2014 U.S. Dist. LEXIS 9119, at *18-

19 (E.D.N.Y. Jan. 23, 2014); *Nunez*, 2009 U.S. Dist. LEXIS 7783, at *8-9; *DeBono v. Wash. Mut.*

*Bank*, 05 Civ. 10333, No. 2006 U.S. Dist. LEXIS 89283 (S.D.N.Y. Dec. 8, 2006); *Tarulli v. Circuit*

*City Stores, Inc.*, 333 F. Supp. 2d151, 158 (S.D.N.Y. 2004) (compelling arbitration where "[t]he

Plaintiff voluntarily signed the [arbitration] Agreement and knowingly accepted employment with the

Defendant on the express condition that employment-related disputes would be settled through

arbitration").

**2.      Johnson's Agreement to Arbitrate Encompasses the Claims in the**
**Complaint, which, Excluding any Claims Subject to the EFASASH Act, Are**
**Arbitrable.**

The claims in the Complaint are clearly within the scope of the Agreement's arbitration clause

and the mandate of the FAA. Here, the arbitration clause in Plaintiff's Agreement provides for "final,

conclusive, and binding" arbitration of "any dispute or controversy arising out of or relating to any

interpretation, construction, performance or breach of this [Employment] Agreement." (Kerr Decl., Ex.

B at pp. 5-6). This is a "classically broad" arbitration clause that, by virtue of the phrase "relating to"

extends well beyond claims asserted under the Agreement itself, including to statutory claims of

discrimination and retaliation.  *See, e.g., Porcelli v. JetSmarter, Inc.*, No. 19 Civ. 2537 (PAE), 2019

U.S. Dist. LEXIS 94287, at *4 (S.D.N.Y. June 5, 2019) (compelling arbitration where agreement

provided for arbitration of "[a]ny claim or dispute between the parties and/or against any agent,

employee, successor, or assign of the other, whether related to this Agreement, any of the Terms and

Conditions or the relationship or rights or obligations contemplated herein . . . ."); *Kuchinsky v. Curr*y,

12

No. 09 Civ. 00299 (DLC), 2009 WL 1492225, at **6-7 (S.D.N.Y. May 28, 2009) (compelling arbitration where arbitration agreement provided "[a]ny controversy or claim arising out of or relating to the construction of or application of any terms, provisions, or conditions of this Agreement shall . . . be submitted to arbitration.").  It is beyond dispute that the gravamen of Plaintiff's Complaint here – race discrimination and retaliation – expressly falls within the scope of this arbitration clause.

Even assuming, however, that the arbitration provision was ambiguous in scope (which it is not), any doubt as to the arbitrability of a claim should be resolved in favor of arbitrability. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 (holding arbitration must be ordered "unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute") (emphasis added).

In addition, there is nothing in the language or history of the federal or local statutes to indicate a congressional intent to foreclose arbitration of any claims except to the degree Johnson may have asserted claims governed by the EFASASH Act. *See Circuit City Stores, Inc.*, 532 U.S. at 123 ("The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discriminationprohibited by federal law[.]").  As discussed prior (*see* FN 1, *supra*), the EFASASH Act precludes enforcement of pre-dispute arbitration agreements **only** as to sexual harassment and sexual assault claims. (PL 117-90, March 3, 2022, 136 Stat 26.) (emphasis added). Moreover, courts routinely hold that statutory employment discrimination claims are arbitrable and may be compelled to arbitration.  *See*, *e.g.*, *Daly v. Citigroup, Inc.*, 939 F.3d 415, 422 (2d Cir. 2019) (Title VII and Equal Pay Act); *Gold*, 365 F.3d at 148 (Title VII); *Desiderio v. NASD*, 191 F.3d 198, 206 (2d Cir. 1999) (Title VII); *Owoyemi v. JP Morgan Chase & Co.*, No. 10-CV-6001, 2011 U.S. Dist. LEXIS 172512, at *11 (E.D.N.Y. May 5, 2011) (Section 1981); *Reynolds v. de Silva*, No. 09 Civ. 9218,

13

2010 WL 743510, at *4 (S.D.N.Y. Feb. 24, 2010) (NYLL); *Rodriguez v. Four Seasons Hotels, Ltd.*,

No. 09 Civ. 2864 (DLC), 2009 WL 2001328, at *3 (S.D.N.Y. July 10, 2009) (NYSHRL); *Nunez*, 2009

U.S. Dist. LEXIS 7783 (Title VII);  *Ahing v. Lehman Brothers*, No. 94 Civ. 9027, 2000 WL 460443, at

*4 (S.D.N.Y. April 18, 2000) (NYCHRL); *Rice v. Brown Brothers Harriman & Co.*, No. 96 Civ. 6326,

1997 WL 129396, at *3 (S.D.N.Y. March 21, 1997) (NYCHRL).

Finally, the Second Circuit endorses the theory that employees and agents of a signatory to an

arbitration agreement are included within the scope of the agreement as beneficiaries. *Campaniello

Imps., Ltd. v. Saporiti Italia Sp.A.,* 117 F.3d 655, 668 (2d Cir. 1997) ("Courts in this and other circuits

consistently have held that employees or disclosed agents of an entity that is a party to an arbitration

agreement are protected by that agreement.") (citation omitted); *accord Roby v. Corp. of Lloyd's,* 996

F.2d 1353, 1360 (2d Cir. 1993).  Accordingly, Plaintiff's claims against Defendants Mrs. Yorio and

Ms. Schwartz must too be compelled to arbitration.

### 3.      All of Plaintiff's Claims, Excluding His Claims Subject to the EFASASH Act, Should Be Compelled to Arbitration.

Because all of Plaintiff's claims fall within the scope of the arbitration provision contained in

his Agreement, excluding his claims subject to the EFASASH Act, this Court should dismiss all of his

claims subject to arbitration.  The Everyrealm Defendants intend to initiate arbitration proceedings

before the AAA both to adjudicate the claims Plaintiff has asserted in the Complaint and to pursue

breach of contract claims and sanctions against Plaintiff.  This Court should therefore dismiss the

claims subject to arbitration, and compel that these claims be heard before the AAA.

To the extent Johnson asserted claims subject to the EFASASH Act, following the line of

authority pertaining to Sarbanes-Oxley ("SOX") and California's Private Attorney General Act claims,

those claims should be stayed pending the outcome of the arbitration.  *See, e.g., Endresen v. Banc of

Cal., Inc.*, 2018 U.S. Dist. LEXIS 245645, at **12-13 (C.D. Cal. Sept. 20, 2018) (staying non-

arbitrable SOX whistleblower claim while arbitration was pending, because non-arbitrable claims predominated the dispute and the outcome of non-arbitrable issues could be determined via arbitration); *Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73, 82 (2020) ("The court dismissed Kim's class claims and ordered arbitration of all remaining claims except the PAGA claim and the injunctive relief portion of the unfair competition claim. The PAGA litigation was stayed until arbitration was complete."). Here, Plaintiff asserts eight causes of action, two of which – Causes of Action Three and Four – may include claims governed by the EFASASH Act. [*See* doc. 1]. Arbitrable claims accordingly predominate the dispute. In light of the foregoing, the Court should, respectfully, stay any potential non-arbitrable claims while arbitration is pending.

## **CONCLUSION**

For the foregoing reasons, Defendant is entitled to an Order dismissing the Complaint, excluding claims subject to the EFASASH Act, compelling arbitration, staying the claims subject to the EFASASH Act, and for all other relief that the Court may deem just and proper.

Dated:  New York, New York
        August 19, 2022

                           PROSKAUER ROSE LLP

                   By:     */s/ Lloyd B. Chinn*

                           Lloyd B. Chinn, Esq.
                           Eleven Times Square
                           New York, New York 10036-8299
                           Ph. (212) 969-3000
                           Fax (212) 969-2900
                           lchinn@proskauer.com
                           *Attorney for Everyrealm Inc.*
                           *(f/k/a Republic Realm Inc.),*
                           *Julia Schwartz, and Janine Yorio*