**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TEYO JOHNSON,

                       Plaintiff,

        v.

EVERYREALM INC., COMPOUND ASSET
MANAGEMENT LLC, REALM METAVERSE
REAL ESTATE INC., REPUBLIC, REPUBLIC
CRYPTO LLC, REPUBLIC REALM MANAGER
LLC, REPUBLIC REALM INC., REPUBLIC
OPERATIONS LLC, OPENDEAL INC.,
OPENDEAL PORTAL LLC, JANINE YORIO, in
her individual and professional capacities, and JULIA
SCHWARTZ, in her individual and professional
capacities.

                  Defendants.

Index No. 1:22-cv-06669(PAE)(GWG)

## PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' ORDER TO SHOW CAUSE TO COMPEL ARBITRATION

**SEPPINNI LLP**
Shane Seppinni
43 W. 43rd St., Suite 256
New York, NY 10036

*Counsel for Teyo Johnson*

# CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ....................................................................................................................... 2

ARGUMENT ............................................................................................................................ 3

**I.** **AS A THRESHOLD MATTER, THE ENDING FORCED ARBITRATION ACT PREVENTS THIS CASE FROM BEING FORCED INTO ARBITRATION** ................................................................... 4

    A.   The EFA's Plain Text Renders the AER Invalid and Unenforceable in this Case ..................... 4

    B.   Applying the EFA to *Claims* Rather than to this *Case* would Nullify Congress's Intent ........... 6

    C.   Mr. Johnson's Claims Should Not Be Stayed Pending Arbitration ............................................. 7

**II.** **THE PARTIES DID NOT AGREE TO ARBITRATE THESE CLAIMS** ................................... 10

    A.   The Arbitration Clause Does Not Cover Mr. Johnson's Claims ............................................... 10

    B.   The Arbitration Clause is Unenforceable ................................................................................ 14

**III.** **DEFENDANTS WAIVED ANY RIGHT TO ARBITRATE THESE CLAIMS** ........................... 19

CONCLUSION ....................................................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012) .................................................................................. 2

*Bensadoun v. Job-Riat*,
    316 F.3d 171 (2d Cir. 2003) .................................................................................. 3

*JLM Indus., Inc. v. Stolt-Nielsen SE*,
    387 F.3d 163 (2d Cir. 2004) .................................................................................. 4

*U.S. v. White*,
    429 F. App'x 43 (2d Cir. 2011) ............................................................................. 4

*Connors v. Bowles*,
    63 A.D.2d 956 (N.Y. App. Div. 1978) .................................................................. 9

*Corp. v. Home Ins. Co.*,
    302 A.D.2d 118 (1st Dept. 2002) ........................................................................ 10

*Allstate Ins. Co. v. Roseboro*,
    247 A.D.2d 379 (2d Dept. 1998) ......................................................................... 10

*Waldron v. Goddess*,
    461 N.E.2d 273 (N.Y. 1984) ............................................................................... 10

*Application of Doughboy Indus., Inc.*,
    17 A.D.2d 216 (1st Dept. 1963) .......................................................................... 10

*Ross v. Am. Express Co.*,
    547 F.3d 137 (2d Cir. 2008) ................................................................................ 10

*Bar–Ayal v. Time Warner Cable Inc.*,
    2006 WL 2990032 (S.D.N.Y. 2006) .................................................................... 10

*Mehler v. Terminix Int'l Co.*,
    205 F.3d 44 (2d Cir. 2000) .................................................................................. 11

*Peerless Imps., Inc. v. Wine, Liquor & Distillery Workers Union Local One*,
    903 F.2d 924 (2d Cir. 1990) ................................................................................ 11

*McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*,
    858 F.2d 825 (2d Cir. 1988) ................................................................................ 11

*Rochdale Vill., Inc. v. Pub. Serv. Employees Union,*
    605 F.2d 1290 (2d Cir. 1979) .......................................................................... 11

*Prudential Lines, Inc. v. Exxon Corp.,*
    704 F.2d 59 (2d Cir. 1983) ............................................................................... 11

*Cornell Univ. v. UAW Local 2300,*
    942 F.2d 138 (2d Cir. 1991) ............................................................................. 11

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,*
    252 F.3d 218 (2d Cir. 2001) ............................................................................. 11

*Gold v. Deutsche Aktiengesellschaft,*
    365 F.3d 144 (2d Cir. 2004) ............................................................................. 11

*Tarulli v. Circuit City Stores, Inc.,*
    333 F. Supp. 2d 151 (S.D.N.Y. 2004) .............................................................. 12

*Lloyd v. J.P. Morgan Chase & Co.,*
    791 F.3d 265 (2d Cir. 2015) ............................................................................. 13

*Ahmad v. Day,*
    556 F.Supp.3d 214 (S.D.N.Y. 2021) ........................................................... 13, 14

*Eisen v. Venulum Ltd.,*
    244 F. Supp. 3d 324 (2005) .............................................................................. 15

*King v. Fox,*
    418 F.3d 121 (2d Cir. 2005) ............................................................................. 15

*Cap Gemini Ernst & Young, U.S., L.L.C. v Nackel,*
    346 F.3d 360 (2d Cir. 2003) ............................................................................. 15

*Desiderio v. Nat'l Assoc. of Sec. Dealers,*
    191 F.3d 198 (2d Cir. 1999) ............................................................................. 15

*Doctors Assocs., Inc. v. Casarotto,*
    517 U.S. 681 (1996) ......................................................................................... 15

*Gillman v. Chase Manhattan,*
    73 N.Y.2d 1 (N.Y. 1988) ............................................................................. 15, 16

*New York v. Wolowitz,*
    96 A.D.2d 47 (1983) ......................................................................................... 16

*Jones v. Star Credit Corp.*,
    298 N.Y.S.2d 264 (N.Y. Sup. Ct. Nassau County 1969)....................................16

*Beletsis v. Credit Suisse First Boston, Corp.*,
    No. 01 Civ. 6266, 2002 WL 2031610 (S.D.N.Y. 2002).....................................16

*Haro v. NCR Corp.*,
    2006 WL 2990386 (S.D. Ohio 2006)..................................................................17

*Shankle v. B-G Maint. Mgmt. of Col., Inc.*,
    163 F.3d 1230 (10th Cir. 1999) ..........................................................................17

*Andresen v. IntePros Fed., Inc.*,
    240 F. Supp. 3d 143 (D.D.C. 2017) ....................................................................17

*Nesbitt v. FCNH, Inc.*,
    811 F.3d 371 (10th Cir. 2016) ............................................................................17

*CMH Homes, Inc. v. Sexton*,
    441 F. Supp. 3d 1202 (D.N.M. 2020)..................................................................17

*Mitsubishi Motors v. Soler Chrysler-Plymouth*,
    473 U.S. 614 (1985).............................................................................................18

*Ragone v. Atl. Video*,
    595 F.3d 115 (2d Cir. 2010).................................................................................18

*Perez v. Globe Airport Security Services, Inc.*,
    253 F.3d 1280 (11th Cir. 2001) ..........................................................................19

*Morgan v. Sundance, Inc.*,
    142 S.Ct. 1708 (2022)....................................................................................19, 20

*Parler v. KFC Corp.*,
    529 F. Supp. 2d 1009 (D. Minn. 2008)...............................................................20

## STATUTES

9 U.S.C.
    § 402.....................................................................................................1, 4, 5, 6, 7
    § 4...................................................................................................................... 3
    § 401.................................................................................................................. 4
    § 3...................................................................................................................... 7

§ 2...................................................................................................................... 15

42 U.S.C.
   § 1981.................................................................................................................. 5

**OTHER AUTHORITIES**

David Horton, The Yale Law Journal Forum, *The Limits of the Ending Forced Arbitration of
Sexual Assault and Sexual Harassment Act* (June 23, 2022).......................................................... 6

H.R. Rep. No. 117-234, at 18 (2022)....................................................................................... 6

Deborah Rothman, Dispute Resolution Magazine, *Trends in Arbitrator Compensation*,
https://www.americanbar.org/content/dam/aba/publications/dispute_resolution_magazine/spring
2017/3_rothman_trends_in_arbitrator.pdf ...................................................................................17

## PRELIMINARY STATEMENT

Defendants ask this Court to force Mr. Johnson into secret arbitration in violation of the Federal Arbitration Act ("FAA") and to give Defendants the benefit of a bargain that they did not strike.

Mr. Johnson has the right to litigate these claims in federal court rather than in secret, forced arbitration because his "case . . . relates" to sexual harassment. 9 U.S.C. § 402(a). The Ending Forced Arbitration of Sexual Assault and Harassment Act of 2021 ("EFA") renders the Arbitration and Equitable Remedies ("AER") provision of the Everyrealm Employment Agreement ("Agreement") unenforceable in this case. Additionally, (1) the AER does not otherwise cover Mr. Johnson's claims, (2) Defendants drafted the AER in contradiction of public policy to deter Mr. Johnson from filing any claim against the company rather than to encourage arbitration, and (3) Defendants waived their right to enforce the AER when they acted inconsistently with a desire to arbitrate.

Defendants are so afraid that Mr. Johnson will speak publicly about the ways in which Defendants mistreated and abused him that they rushed to file a parallel Arbitration Demand with the American Arbitration Association ("AAA") on September 1, 2022, to undermine this litigation by asking the AAA to rule on the central question at issue here: whether Defendants' treatment and termination of Mr. Johnson was unlawful. Seppinni Decl., Ex. A at 1 (Defs.' AAA Am. Stmt. of Claim).

1

Defendants denigrate Mr. Johnson, relying on numerous racist tropes in their Motion to discredit his claims as "false" and a "shakedown."[1] Defs.' Mem. at 7. But Defendants ignore that the Court must accept Mr. Johnson's allegations as true at this stage.  *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012).  Even so, Defendants are wrong.  Far from a shakedown, Mr. Johnson wants nothing less than complete public accountability for Defendants' sexual misconduct and racism. Johnson Decl. ¶ 3.

## BACKGROUND

On July 11, 2022, Mr. Johnson's counsel sent a confidential letter to Defendants informing them in detail of well-founded allegations of sexual harassment and other misconduct. *See* Chinn Decl., Ex. A at 18. Defendants responded two weeks later, demanding that by July 29, 2022, Mr. Johnson participate in Everyrealm's internal investigation,[2] turn over his personal computer for examination by a forensics expert, sign an affidavit, and agree not to sue in this Court or Defendants would sue him and seek sanctions against his counsel. Chinn Decl., Ex. A at 18-21. Despite these retaliatory and illegal threats, Mr. Johnson believes that the AER is unenforceable because, among other reasons, his case alleges sexual harassment. EFA, Pub. L. No.117-90, 136 Stat. 26 (codified as amended in sections of 9 U.S.C.)

If the AER is enforceable at all, it applies only to contract claims. None of Mr. Johnson's claims sound in contract, nor do they arise from the Agreement. *See gen.* Compl. The AER does

---

[1] Mr. Johnson will not respond to each of Defendants' misrepresentations individually. He denies every allegation Defendants make in their Memorandum of Law. Johnson Decl. ¶ 3.

[2] That Defendants are aware of the contents of what was framed by Everyrealm's "independent" investigator, Xan Raskin, as a confidential conversation between Plaintiff's counsel and herself, confirms that the interrogation Everyrealm demanded was not, in fact, "independent," and reaffirms Mr. Johnson's well-founded decision not to participate in the sham investigation financed by the very Defendants who sexually harassed him. Seppinni Decl. ¶ 3.

not state that it applies to employment-based claims nor tort claims. Kerr Decl., Ex. B at 6-7. In fact, the AER, never uses the word "employment" nor the phrase "employment related disputes." *Id*. Furthermore, the AER is unenforceable because it is unconscionable. Mr. Johnson must pay half of the arbitration costs of any proceeding he brings (and of the proceeding that Defendants initiated *against him*)*. Id*. Fearing financial ruin and retaliation for confidentially making Defendants aware of his allegations, Mr. Johnson had no choice but to file his claims in this Court. Johnson Decl. ¶ 4.

Mr. Johnson asks that Your Honor deny Defendants' request to ignore the EFA's plain language and reject Defendants' improper attempt to force secret arbitration in this case. Furthermore, Mr. Johnson asks the Court to declare that the AER is invalid as it relates to Defendants' AAA Amended Statement of Claim due to its unconscionable provisions.

## **ARGUMENT**

When a party moves to compel arbitration, courts use "a standard similar to that applicable for a motion for summary judgment," to determine whether "there is an issue of fact as to the making of the agreement for arbitration." *Bensadoun v. Job-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). If the party opposing arbitration can show that "there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Id.* (citing 9 U.S.C. § 4). There are numerous issues of fact here, any one of which dooms Defendants' Motion.

In applying this standard, this Court must first "determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it

must then decide whether to stay the balance of the proceedings pending arbitration." *JLM Indus., Inc. v. Stolt-Nielsen SE,* 387 F.3d 163, 169 (2d Cir. 2004).

**I.**     **AS A THRESHOLD MATTER, THE ENDING FORCED ARBITRATION ACT PREVENTS THIS CASE FROM BEING FORCED INTO ARBITRATION**

Congress deemed the AER invalid and unenforceable in this case when it enacted the EFA to prohibit forced arbitration in cases that relate to sexual harassment. *See gen.* 9 U.S.C. Chapter 4. "[T]he [EFA] **unequivocally** ends the era of employers being able to unilaterally compel arbitration in sexual harassment **cases**." *Steinberg v. Capgemini Am., Inc.*, Civil Action 22-489, at *2 (E.D. Pa. Aug. 16, 2022) (emphasis added). The EFA provides that "at the election of the person alleging conduct constituting a sexual harassment dispute . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal [or] State law and relates to the ... sexual harassment dispute." EFA, Pub. L. No. 117-90, 136 Stat. 26 (2022) (codified at 9 U.S.C. § 402(a)). The EFA defines "sexual harassment dispute" broadly as any "conduct that is alleged to constitute sexual harassment." *Id*. § 401(4).

"[W]hether [the EFA] applies to a dispute shall be determined under Federal law[,]" and "[t]he applicability of [the EFA] to an agreement to arbitrate and the validity and enforceability of an agreement to which [Chapter 4] applies shall be determined by a court, rather than an arbitrator . . . irrespective of whether the agreement purports to delegate such determinations to an arbitrator." *Id*. § 402(b).

**A.** **The EFA's Plain Text Renders the AER Invalid and Unenforceable in this Case**

To begin with, "As in any exercise of statutory construction, [courts] begin with the text of the provision in question." *U.S. v. White*, 429 F. App'x 43, 45-46 (2d Cir. 2011). As stated, the EFA states, "no predispute arbitration agreement . . . shall be valid or enforceable **with respect**

4

**to a case** which is filed under Federal [or] State law and **relates to** . . .**the sexual harassment dispute**." 9 U.S.C § 402(a) (emphasis added). Mr. Johnson's case was filed under Federal and State law, and plainly "relates to . . . the sexual harassment dispute." Mr. Johnson alleges sexual harassment during his preemployment interview, during meetings at work, under theories of aiding and abetting sexual harassment, under State law, Common law, and Federal law. *See* Defs. Mem. at 12 ("Plaintiff filed a Complaint in this Court on August 5, 2022, asserting claims of race discrimination, retaliation, and sexual harassment in violation of the New York State Human Rights Law [], the New York City Human Rights Law [], 42 U.S.C. § 1981, New York Labor Law [], the New York Equal Pay Law, and a common law claim for Intentional Infliction of Emotional Distress [].); *also,* Compl. ¶¶ 37-46, 73-79, 80-123. As Mr. Johnson has alleged wide-ranging sexual harassment by Defendants, this case relates to sexual harassment. Thus, Mr. Johnson cannot be compelled to arbitrate.

Defendants state that Mr. Johnson's sexual harassment claims, "appear to be 'thrown in'" and, regardless, that only "two [causes of action] . . . may include claims governed by the EFA." Defs.' Mem. at FN 1, p. 15. This is demonstrably false. First, Defendants' cavalier disregard for Mr. Johnson's serious allegations of sexual misconduct in the workplace typifies why Congress carved out sexual misconduct claims from forced arbitration in the first place. Second, all of Mr. Johnson's claims *are* "governed" by the EFA. The EFA is an amendment to the FAA and Defendants argue, but only insofar as it suits their interests, that the FAA governs this dispute and must be construed broadly. Defs.' Mem. at 7 ("A. This Dispute Is Governed by the Federal Arbitration Act."); *see also, id.* ("The Agreement at issue here is undoubtedly within the scope of the FAA."). Third, Defendants' claim that Mr. Johnson only alleges two claims for sexual harassment is untrue (*see supra*) and, regardless, the EFA does not invite Courts, nor Defendants,

to count claims to determine whether accusations of sexual harassment and assault "relate[]" to this case. *See* 9 U.S.C § 402(a). Thus, a forced arbitration clause is invalid in this case—not parts of this case—because this case "relates" to a sexual harassment dispute. *Id.* The EFA would be unworkable otherwise.

     **B.**   <u>Applying the EFA to *Claims* Rather than to this *Case* would Nullify Congress's Intent</u>

Defendants misrepresent the EFA when they claim that it "precludes enforcement of pre-dispute arbitration agreements **only** as to sexual harassment and sexual assault claims. Defs.' Mem. at 13 (emphasis in original). Defendants' wordplay moves the goalposts.  Congress carved out "cases," not claims, that "relate to" sexual assault and harassment from arbitration agreements under the FAA.  *See* David Horton, The Yale Law Journal Forum, *The Limits of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act* (June 23, 2022) ("Notably, chapter 4 governs not just sexual misconduct *claims*, but *cases* that 'relate[] to' such disputes.").

The EFA's legislative purpose emphasizes that Mr. Johnson should not be forced to arbitrate this case. That is, Congress passed the EFA to "improve access to justice for survivors of sexual assault and harassment." H.R. Rep. No. 117-234, at 18 (2022). Congress surely understood that sexual harassment and sexual assault often occur part and parcel to other misconduct. It would not "improve access to justice for survivors" for Mr. Johnson to bear the costs of maintaining two parallel actions against Defendants because *they* engaged in a broad range of misconduct. Congress could have written Section 402(a) narrowly, excluding only *claims* relating to sexual harassment and sexual assault. But it did not. Instead, it invalidated arbitration agreements in *cases related to* sexual misconduct. Defendants' view would insulate

6

wrongdoers in a way that runs counter to Congress's intent to prioritize public justice for cases related to sexual misconduct.

Thus, Congress wrote the EFA such that where a "case" relates to sexual harassment, as here, an arbitration agreement is invalid with respect to the "case" and not just to some of the case's claims.

### C.  Mr. Johnson's Claims Should Not Be Stayed Pending Arbitration

Because none of Mr. Johnson's claims are arbitrable none can be stayed pending arbitration. 9 U.S.C. § 3.

To the extent that this Court forces some of Mr. Johnson's claims into arbitration but not others, congressional intent, common sense, and the structure of 9 U.S.C. Chapter 4, all require that Mr. Johnson's claims proceed at once in litigation.

Defendants' request for a stay ignores that Congress amended the FAA with the express purpose of prioritizing sexual harassment cases that previously fell under the FAA's purview. *See* H.R. Rep. No. 117-234, at 18 (2022). It is not that under the EFA sexual harassment claims are merely nonarbitrable and therefore fall under an analysis subject to 9 U.S.C Section 3; rather, predispute arbitration agreements in sexual misconduct cases are now entirely "void" and "unenforceable." 9 U.S.C. § 402(a). But according to Defendants' view, Congress voided arbitration agreements in cases related to sexual harassment and sexual assault so that sexual misconduct claims could be indefinitely delayed while other potentially less significant claims trod through forced arbitration. *See* Defs.' Mem. at 20. This is nonsensical. Defendants' view encourages wrongdoers who might otherwise have engaged just in sexual misconduct to engage in additional minor non-sexual misconduct so that they too can have the sexual misconduct

claims made against them stayed subject to the conclusion of a lengthy and costly ancillary proceeding, which a plaintiff might not have the means nor the stamina to proceed beyond. Defendants offer no on-point support—textual, legal, or otherwise—for this farfetched reading of the EFA.

Defendants cite just two cases, both decided in California, one applying the Sarbanes-Oxley Act ("SOX") and the other applying the California Private Attorney General Act ("CA PAGA"), to argue that some of Mr. Johnson's claims should be stayed pending arbitration. Defs.' Mem. at 20. Neither of these cases involved sexual harassment, neither were decided post-EFA, and neither are binding precedent in this District. *Id.* Congress's prior successful efforts to invalidate forced predispute arbitration were narrowly tailored to subject-specific statutes in specific contract niches or discreet causes of action. *See e.g.* Motor Vehicle Franchise Contract Arbitration Fairness Act, and the Food, Conservation, and Energy Act (allowing certain well-defined parties to retract their assent to a predispute arbitration clause); the Military Lending Act (invalidates arbitration provisions in loans to active-duty military personnel, another bright line category of claims); and the Dodd-Frank Wall Street Reform and Consumer Protection Act (bars the arbitration of some whistleblower claims and voids predispute arbitration clauses in residential mortgages). With the EFA, Congress recognized that sexual harassment and assault are qualitatively different from these niches. Sexual misconduct can occur in just about any contractual scenario and is, as here, often inextricably intertwined with other misconduct such that it would be impossible to reliably determine which claims in a case involving sexual harassment do not "relate" to sexual misconduct at the outset. Mr. Johnson alleges, among other instances of sexual harassment, that he was sexually harassed in his preemployment interview and believes that much of his subsequent mistreatment stems from and relates to the sexual

8

harassment that began then and continued until he was terminated. Compl. ¶¶ 36-46; Johnson Decl. ¶ 5. For example, Mr. Johnson understands based on recent public filings with the EEOC made by other former Black Everyrealm employees, that Ms. Yorio sexually harassed Mr. Johnson and other Everyrealm employees *because* they are Black and due to an improper fetishization of Black employees. Johnson Decl. ¶ 6. Mr. Johnson intends to prove this at trial. In other words, Mr. Johnson's race discrimination claims cannot be decoupled from his sexual harassment claims because he was sexually harassed on account of his race. *See gen.,* Compl.; *see also*, Johnson Decl. ¶ 6. Congress, instead of drafting a narrow subject-matter statute that relates only to individual claims like SOX or CA PAGA, determined that all predispute arbitration clauses are unenforceable in "cases" involving sexual-misconduct "disputes," not just for individual claims of sexual harassment, to avoid issues such as this one. *See* 9 U.S.C. Chapter 4. Thus, Congress intended all of Mr. Johnson's claims would be litigated in court without delay.

Defendants fail to show that Congress intended for sexual misconduct to go from being subject to forced arbitration pre-EFA to being subject to *the resolution* of forced arbitration post-EFA. To hold, post-EFA, that sexual misconduct can only be litigated in court once arbitration for non-sexual misconduct-claims (Defendants fail to define what constitutes a non-sexual misconduct claim) are arbitrated would effectively nullify the statute. "This construction of the statute would give the [Defendants] the power to nullify the statute simply by . . . [engaging in other non-sexual misconduct] and would contravene the legislative purpose in enacting the statute." *Connors v. Bowles*, 63 A.D.2d 956 (N.Y. App. Div. 1978) (regarding a municipality's strategic termination of an officer in attempt to avoid liability under another law). Defendants' position disincentivizes employees from coming forward regarding claims of general misconduct because otherwise their sexual harassment and assault claims would be at the mercy of their

9

opponents' delay tactics in arbitration. Congress did not intend for the EFA to create impunity for non-sexual misconduct. Mr. Johnson's claims must not be stayed.

## II.      THE PARTIES DID NOT AGREE TO ARBITRATE THESE CLAIMS

Regardless of the AER's enforceability under the EFA, when Mr. Johnson signed the Agreement, he did not agree to arbitrate these claims.

It is a "bedrock principle" of law in the Second Circuit that "arbitration is a matter of consent, not coercion. Specifically, arbitration is a matter of contract, and therefore a party cannot be required to submit to arbitration any dispute which it has not agreed so to submit." *Ross v. Am. Express Co.*, 547 F.3d 137, 142-43 (2d Cir. 2008).

Defendants have the burden to show a "clear and unequivocal" agreement to arbitrate these claims. *Fiveco, Inc. v. Haber*, 11 NY3d 140, 144 (2008); *Gerling Global Reins. Corp. v. Home Ins. Co.*, 302 A.D.2d 118, 123 (1st Dept. 2002), lv denied 99 N.Y.2d 511 (2003); *see also Bar–Ayal v. Time Warner Cable Inc.*, 2006 WL 2990032 at *8 (S.D.N.Y. 2006); *Allstate Ins. Co. v. Roseboro*, 247 A.D.2d 379 (2d Dept. 1998); *Manigault v. Macy's East, LLC*, 318 Fed Appx 6 (2d Cir. 2009). It is a general principle that "the threshold for clarity of agreement to arbitrate is greater than with respect to other contractual terms'" *Waldron v. Goddess*, 461 N.E.2d 273, 275 (N.Y. 1984) (*quoting Application of Doughboy Indus., Inc.*, 17 A.D.2d 216, 219 (1st Dept. 1963))**.**

### A.   The Arbitration Clause Does Not Cover Mr. Johnson's Claims

To determine whether the Parties agreed to arbitrate Mr. Johnson's claims, courts "undertake a three-part inquiry. First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. *See*

*Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 49 (2d Cir. 2000); *Peerless Imps., Inc. v. Wine, Liquor & Distillery Workers Union Local One*, 903 F.2d 924, 927 (2d Cir. 1990); *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988). Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that 'is on its face within the purview of the clause,' or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. *Rochdale Vill., Inc. v. Pub. Serv. Employees Union*, 605 F.2d 1290, 1295 (2d Cir. 1979); *see also Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir. 1983). Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. *See Cornell Univ. v. UAW Local 2300*, 942 F.2d 138, 140 (2d Cir. 1991)." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001).

Defendants' conclusory assertion that "No question exists under these circumstances that arbitration is warranted" is false. Defs.' Mem. at 18. If it were true that "no question exists," Defendants would have cited numerous cases with arbitration provisions that fail to use the word "employment" but were found to cover employment disputes. Defendants cite no such support. Instead, Defendants' citations for their unsupported assertion refer to clauses that are much broader and more clearly applicable to non-contractual employment and tort disputes than the narrower AER in question here. *See* Defs.' Mem. at 18 (collecting Defs.' citations and adding relevant quotes) (*Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 146 (2d Cir. 2004) ("I agree to arbitrate . . . [a]ny dispute, claim or controversy . . . **arising out of the employment or termination of employment of** . . . associated person(s) . . . ."); *Feroce v. Bloomingdale's Inc.*, 12-CV-5014 (SJF)(GRB), at *3-4 (E.D.N.Y. Jan. 24, 2014) ("**all employment-related legal disputes**, controversies or claims **arising out of, or relating to, employment** or cessation of

11

employment shall be settled exclusively by final and binding arbitration by the American

Arbitration Association. [T]hese claims include, but are not limited to, claims arising under . . .

Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil

Rights Act of 1991, . . . state discrimination statutes, state statutes, and/or common law

regulating employment termination."); *Nunez v. Citibank, N.A.*, 08 Cv. 5398 (BSJ), at *2

(S.D.N.Y. Feb. 3, 2009) ("'You agree to follow our dispute resolution/arbitration procedures for

**employment disputes** . . . These include without limitation all claims, demands or actions under

Title VII . . . and any other federal, state or local statute, regulation or common law doctrine

regarding **employment discrimination, conditions of employment or termination of**

**employment**.'") *also* ("I understand that this Handbook contains a policy that **requires me to**

**submit employment-related disputes** to binding arbitration); *Tarulli v. Circuit City Stores, Inc.*,

333 F. Supp. 2d 151, 153 (S.D.N.Y. 2004) ("to settle all **claims arising out of her employment**

with the Defendant (emphasis added) '**exclusively**' by final and binding **arbitration**" (emphasis

in original); (2) that **the claims to be settled through arbitration included claims brought**

**under 'federal, state and local statutory or common law**, such as the Age Discrimination in

Employment Act, **Title VII** of the Civil Rights Act of 1964, as amended, including amendments

of the Civil Rights Act of 1991, the Americans with Disabilities Act, and the law of contract **and**

**tort**.) (Emphasis added unless otherwise noted)).

Even if this Court determines that the AER is broad, the presumption of arbitrability

under broad clauses "is a soft one, and has effect only where it reflects, and derives its legitimacy

from, a judicial conclusion that arbitration of a particular dispute is what the parties intended

because their express agreement to arbitrate … [is] best construed to encompass the dispute. The

presumption may tip the scale if an agreement is truly ambiguous, but it does not alter the

controlling question: is the arbitration agreement best construed to encompass the dispute?"
*Lloyd v. J.P. Morgan Chase & Co.*, 791 F.3d 265, 270 (2d Cir. 2015) (some alteration in
original) (internal citations and quotations omitted). No reasonable reading of the AER can find
that Mr. Johnson's claims "arise out of or relat[e] to any interpretation, construction,
performance, or breach of [the] Agreement." Kerr Decl., Ex. B at 5. Mr. Johnson's Complaint
does not allege any failure to perform or breach of the Agreement.  *See gen.* Compl.

     *Ahmad v. Day et al.* demonstrates that the AER should not be found to encompass this
dispute. 556 F.Supp.3d 214 (S.D.N.Y. 2021). In *Ahmad*, the plaintiff brought numerous
employment discrimination claims. *Id* at 219. As here, the *Ahmad* plaintiff "[sought] no relief
under his employment agreement." *Id.* Also as here (as Defendant notes at Defs.' Mem. p. 12),
the *Ahmad* plaintiff did not meaningfully discuss the agreement in his complaint. *Id.* In finding
that the arbitration clause did not cover claims arising out of plaintiff's employment, this Court
stated that, "[W]e note that, unlike cases cited by defendants, the clause does not state that any
claims arising out of Ahmad's 'employment' would be subject to arbitration." *Id.* at 220.
Defendants here also fail to cite cases in which arbitration clauses that do not mention
"employment" were found to encompass employment disputes. *See supra* at 12.

     The arbitration clause in *Ahmad* is even broader than the AER. The clause in *Ahmad*
states, "that the parties agree to arbitrate '[a]ny dispute, controversy or claim arising out of or
related to this Agreement or any breach of this Agreement.'" *Ahmad*, 556 F.Supp.3d at 220. Yet
the *Ahmad* Court rejected the defendants' arguments that the arbitration clause applied to
employment disputes stating, "While these phrases are 'broad' in relation to the Confidentiality
Agreement, Ahmad makes no claims seeking to enforce any provision of the Confidentiality
Agreement." *Id*. Mr. Johnson also "makes no claims seeking to enforce any provision of the []

13

Agreement." *Id*. Therefore, the *Ahmad* court determined, it could not be said that Ahmad's

claims arose out of or related to the agreement. The same is true in Mr. Johnson's case. "[Mr.

Johnson's] complaint is not premised around Plaintiff's ... contention that he did not violate the []

Agreement. Instead, it is premised on his contention that the actions taken against him in the

course of his employment, including his termination, were the result of invidious discrimination.

It is [Defendants'] planned defense, not [Mr. Johnson]'s claim, that 'arises out of' or is 'related

to' the [] Agreement." *Id*. at 221 (internal citations removed).

Because Mr. Johnson's claims do not arise out of the AER, he cannot be compelled to

arbitrate them.  Like the plaintiff in *Ahmad*, Mr. Johnson "does not purport to assert a breach of

contract claim in [his] Complaint. Indeed, the [] Agreement [] explicitly . . . provides no promise

of continued employment. Thus, [Mr. Johnson] could not bring a breach of contract claim under

the [] Agreement to obtain a remedy for his termination." *Id.* at 221; Chinn Decl., Ex. A at 5

("**No Duty to Employ.**  You understand that this Agreement does not obligate the Company to

employ you or continue the Relationship for any stated period of time.") (Emphasis in original).

If Mr. Johnson cannot possibly vindicate these claims under the Agreement, it can be said with

certainty that his claims are beyond the AER's scope.

    **B.**  **The Arbitration Clause is Unenforceable**

       **1.**  **The Arbitration Clause is Unconscionable and Violates Public Policy Because It Was Written to Deter Mr. Johnson from Bringing Claims Rather than to Encourage Arbitration**

The AER cannot be enforced because it was written with a singular intention: to deter

arbitration rather than to require it. This section discusses two ways in which the AER is

unenforceable: (i.) the AER's fee splitting provision is substantively unconscionable, and (ii.) the

AER violates antidiscrimination and pro-arbitration public policies.

14

        *i.*    *The AER Is Unconscionable*

The AER contains a substantively unconscionable fee-splitting provision that renders it wholly unenforceable.

"A court reviewing a contract for unconscionability is required to fully explore the facts and circumstances surrounding the agreement." *Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 341 (citing *King v. Fox*, 418 F.3d 121, 135 (2d Cir. 2005)). Moreover, courts must determine enforceability before arbitrability. *Cap Gemini Ernst & Young, U.S., L.L.C. v Nackel*, 346 F.3d 360, 365 (2d Cir. 2003) ("It is clear that questions of contractual validity relating to the unconscionability of the underlying arbitration agreement must be resolved first, as a matter of state law, *before compelling arbitration* pursuant to the FAA.") (Emphasis added).

An agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Accordingly, an agreement to arbitrate may be set aside if it is unconscionable. *Doctors Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) ("[A]pplicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements."). "A contract or clause is unconscionable when there is 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Desiderio v. Nat'l Assoc. of Sec. Dealers*, 191 F.3d 198, 207 (2d Cir. 1999) (quoting 8 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS, § 18:9). In New York, "[a] determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made." *Gillman v. Chase Manhattan*, 73 N.Y.2d 1, 10 (N.Y. 1988). Normally "procedural and substantive unconscionability operate on a 'sliding scale'; the more questionable the meaningfulness of choice, the less imbalance in a

contract's terms should be tolerated and vice versa." *New York v. Wolowitz*, 96 A.D.2d 47, 68, (2d Dep't 1983). However, "there have been exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone. . .." *Gillman v. Chase Manhattan*, 73 N.Y.2d 1, 12 (N.Y. 1988); *Beletsis v. Credit Suisse First Boston, Corp.*, No. 01 Civ. 6266, 2002 WL 2031610, at *6 (S.D.N.Y. Sept. 4, 2002) ("It is true that an overabundance of invalid provisions can void an **entire** agreement.") (Emphasis added). A paradigmatic example of an "exceptional case" is *Jones v. Star Credit Corp.*, where an installment contract required indigent plaintiffs to pay $900 for a $300 refrigerator—substantive unfairness that pales in comparison to what is described below. 298 N.Y.S.2d 264, 266-67 (N.Y. Sup. Ct. Nassau County 1969).

The AER requires Mr. Johnson to "pay one-half of the costs and expenses of such arbitration[.]" Chinn Decl. Ex. A at 7. Fear of this onerous and unconscionable cost-splitting provision prevented Mr. Johnson from filing an arbitration demand, just as Defendants intended. Johnson Decl. ¶ 4. Without this provision, Mr. Johnson likely would have arbitrated his claims to avoid the risk of being publicly blacklisted by employers and having the details of the sexual harassment he suffered shared publicly, but Defendants already did that damage. So now, Mr. Johnson wants—and has a right to—his day in court. Johnson Decl. ¶¶ 9-10. Defendants, a $200 million corporation with over $60 million in cash raised, did not include this cost-splitting provision because they cannot afford to pay for their preferred method of dispute resolution (secret forced arbitration) without Mr. Johnson's contribution. Compl. ¶ 4. Defendants included this unconscionable provision because they wagered that Mr. Johnson could not afford to arbitrate, and they illegally underpaid him to make sure of it. *Id.* ¶ 47. Defendants hoped that Mr. Johnson would consider his options, read the AER, determine that he could not afford to pay the

thousands of dollars per day it costs to arbitrate with the AAA,[3] decide against filing an arbitration, and would fear Defendants' threats to sue him personally if he brought his claims in court and thus not pursue his claim at all. *See* Chinn Decl., Ex. A at 18.

Courts have found nearly identical fee-splitting provisions, and even less severe ones, unenforceable. *See, e.g.*, *Shankle v. B-G Maint. Mgmt. of Col., Inc.*, 163 F.3d 1230, 1235 (10th Cir. 1999) (provision requiring plaintiff to pay between $1,875 to $5,000 was unenforceable because it "clearly undermines the remedial and deterrent functions of the federal anti-discrimination laws"); *Andresen v. IntePros Fed., Inc.*, 240 F. Supp. 3d 143, 157-59 (D.D.C. 2017) (provision requiring plaintiff to pay $7,500 "is more than sufficient to demonstrate cost-prohibitiveness . . .."); *Nesbitt v. FCNH, Inc.*, 811 F.3d 371, (10th Cir. 2016) (provision requiring plaintiff to pay between $2,320 to $12,487 was unenforceable); *CMH Homes, Inc. v. Sexton*, 441 F. Supp. 3d 1202, 1213-14 (D.N.M. 2020) (same for provision requiring plaintiff to pay between $6,000 to $12,000); *Haro v. NCR Corp.*, 2006 WL 2990386, at *3-*4 (*S.D. Ohio Oct. 18, 2006*) (same for provision requiring plaintiff to pay between $4,000 to $14,000). Because this fee splitting provision succeeded in preventing Mr. Johnson from filing an arbitration claim this Court should deem the AER unconscionable.

---

[3] Deborah Rothman, Dispute Resolution Magazine, *Trends in Arbitrator Compensation*, https://www.americanbar.org/content/dam/aba/publications/dispute_resolution_magazine/spring2017/3_rothman_trends_in_arbitrator.pdf (2017) ("the American Arbitration Association is kind of a Fort Knox, making [arbitration cost] data available only when a party has opened an arbitration case. Anecdotal . . . conversations suggest that [back in 2017,] AAA arbitrators charge[d] as little as $300 and as much as $1,150 an hour . . . and that rates tend to be highest in . . . New York . . ..") (Last accessed September 9, 2022).

ii.   *The AER is Contrary to Public Policy*

It is the longstanding policy of the United States that victims of discrimination are entitled to attorney's fees and that arbitration is a favored means of dispute resolution. Defendants irreparably violated these public policies by, ironically, drafting an arbitration agreement that discourages arbitration thereby violating "the strong federal policy in favor of arbitration. . .." (Defs.' Mem. at 15), and that runs contrary to the private enforcement mechanisms built into antidiscrimination laws.

An arbitration agreement is unenforceable when it violates public policy. "[A] federal court will compel arbitration of a statutory claim only if it is clear that 'the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum,' such that the statute under which its claims are brought 'will continue to serve both its remedial and deterrent function.' *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614, 637 (1985). Thus, as the Supreme Court stated in *Mitsubishi*, if certain terms of an arbitration agreement served to act 'as a prospective waiver of a party's right to pursue statutory remedies . . ., we would have little hesitation in condemning the agreement as against public policy.' *Id.* at 637 n. 19, 105 S.Ct. 3346." *Ragone v. Atl. Video*, 595 F.3d 115, 125 (2d Cir. 2010).

The AER acts a "a prospective waiver of [Mr. Johnson's] right to pursue statutory remedies" and prevents Mr. Johnson from "effectively vindicat[ing] [his] statutory cause of action in the arbitral forum" because it states, "each of the Company and you shall separately pay counsel fees and expenses." *Id.*; Chinn Decl., Ex. A at 7. Antidiscrimination laws were enacted with the express intent to provide successful plaintiffs with attorney fee awards to deter misconduct without saddling plaintiffs with prohibitive out-of-pocket expenses. "Congress determined that to remedy and effectively deter discrimination, a party prevailing on

18

[discrimination] claims would be permitted to receive fees and costs" and "[c]urtailing the availability of a statutorily available remedy reduces the potential award [and] undercut[s] the strong compensatory policy of the statute" *Perez v. Globe Airport Security Services, Inc.*, 253 F.3d 1280, 1287 (11th Cir. 2001). By drafting the AER with the intent to deprive Mr. Johnson of his statutorily guaranteed right to attorney fees in arbitration, Defendants attempted to rewrite state and federal antidiscrimination laws in violation of public policy. In so doing, Defendants prevented Mr. Johnson from pursuing his claims in arbitration, as was their intent. This intent to rewrite statutory law to prevent Mr. Johnson from being able to afford to arbitrate his claims violates not only antidiscrimination policy, but also the strong federal policy encouraging arbitration. Severing this unenforceable clause would not be equitable because it already had its intended illegal effect. For these reasons, the AER is unenforceable as against public policy.

### III.   DEFENDANTS WAIVED ANY RIGHT TO ARBITRATE THESE CLAIMS

Defendants relinquished any right to compel arbitration when they asked a third-party non-employee to intervene in this lawsuit outside of arbitration. Only after this attempt failed did Defendants file this motion as a second attempt to avoid public litigation.

The Supreme Court recently held that any conduct inconsistent with a party's right to arbitrate may result in waiver of this right, regardless of whether such conduct causes prejudice. *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708, 1712 (2022). *Morgan* rejected this Circuit's longstanding requirement that a party that claims waiver of an arbitration provision must demonstrate prejudice to succeed. The Supreme Court found instead that defendants waive their right to arbitration when "[they] knowingly relinquish the right to arbitrate by acting inconsistently with that right," just as they do in other contractual contexts. *Id*. at 1712.

Defendants waived their right to arbitrate when Ms. Yorio contacted a third-party professional investor who is not employed by Defendants, was not a witness to this lawsuit, and is not a party to Mr. Johnson's employment agreement and demanded that this person broker a resolution to this case. Ms. Yorio demanded that this third-party investor intervene in the explicit hope that the third-party would dissuade Mr. Johnson from proceeding with this lawsuit. Johnson Decl. ¶ 7. Defendants' attempt to resolve the dispute outside of arbitration failed. *Id* ¶ 8. Defendants cannot frame this misconduct as an attempt between the parties to settle. Indeed, Mr. Johnson only learned of this attempt when the third party shared with Mr. Johnson that he or she was contacted by Ms. Yorio. *Id* ¶ 7.

Defendants' attempt to preempt confidential arbitration by engaging a third party to resolve this dispute demonstrates Defendants' desire to avoid arbitration. When Ms. Yorio attempted to broker a resolution via a third-party, Defendants' counsel had already informed Mr. Johnson weeks earlier that this dispute *must* be resolved via arbitration or Mr. Johnson would face personal liability. *See* Chinn Decl. Ex. A at 18-21. Ms. Yorio acted inconsistently with this demand when *she* opted to resolve this dispute outside of arbitration. Ms. Yorio and Everyrealm only "turn[ed] to their secondchoice forum, arbitration[,]" when they realized "that their firstchoice forum," negotiations brokered by people with no involvement in this lawsuit other than preexisting friendships with witnesses, had "not gone as they hoped." *Parler v. KFC Corp.*, 529 F. Supp. 2d 1009, 1014-15 (D. Minn. 2008). "Seeking arbitration only after the [firstchoice forum] goes badly," as Defendants have done, "is acting inconsistent with the right to arbitrate." *Id.* at 1015. Defendants therefore waived any right they might have had to compel arbitration when they acted inconsistently with that right. *See Morgan v. Sundance, Inc.*, 142 S.Ct. 1708, 1712 (2022).

## **<u>CONCLUSION</u>**

The Court should deny Defendants' Motion to Compel Arbitration in its entirety and declare the AER unenforceable. If the Court believes that issues of fact exist, Mr. Johnson asserts his right to begin discovery and proceed toward a jury trial.

**Dated:** September 9, 2022
New York, New York

Respectfully submitted,

*/s/ Shane Seppinni*

Shane Seppinni
Seppinni LLP
43 W 43rd St., Suite 256
New York, NY 10036
212-849-7000
shane@seppinnilaw.com

*Counsel for Plaintiff Teyo Johnson*

22