UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

TEYO JOHNSON,                  :
                                        :
                   Plaintiff,         :
                                        :
        -against-              :    Case No. 1:22-cv-06669(PAE)(GWG)
                                        :
EVERYREALM INC., COMPOUND ASSET     :
MANAGEMENT LLC, REALM METAVERSE     :
REAL ESTATE INC., REPUBLIC, REPUBLIC    :
CRYPTO LLC, REPUBLIC REALM MANAGER   :
LLC, REPUBLIC REALM INC., REPUBLIC      :
OPERATIONS LLC, OPENDEAL INC.,         :
OPENDEAL PORTAL LLC, JULIA            :
SCHWARTZ in her individual and professional   :
capacities, WILLIAM KERR in his individual and   :
professional capacities, and JANINE YORIO in   :
her individual and professional capacities.      :
                                        :
                                        :
                   Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## EVERYREALM INC., JULIA SCHWARTZ, WILLIAM KERR, AND JANINE YORIO'S MOTION TO DISMISS PLAINTIFF'S CLAIM FOR SEXUAL HARASSMENT

PROSKAUER ROSE LLP

Lloyd B. Chinn, Esq.
Eleven Times Square
New York, NY 10036
(212) 969-3000
(212) 969-2900 (Fax)
lchinn@proskauer.com
*Attorneys for Everyrealm Inc.*
*(f/k/a Republic Realm Inc.), Julia*
*Schwartz, Janine Yorio, and*
*William Kerr*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

LEGAL STANDARD .......................................................................................................... 3

ARGUMENT ....................................................................................................................... 4

      I.     Johnson Fails to State a Claim for Sexual Harassment ..................................... 4

             a.     Johnson Does not Assert Any Harassment Was "Because of" a Discriminatory Motive ............................................................................................................6

             b.     Johnson's Allegations Amount to Petty Slights or Trivial Inconveniences...........8

      II.    Johnson Cannot Avail Himself of the Protections of the NYCHRL and NYSHRL ....... 13

      III.   The Court Should Reject Johnson's Contradictory and False Allegations .................... 17

CONCLUSION ................................................................................................................... 21

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Alfano v. Costello*,
294 F.3d 365 (2d Cir. 2002)................................................................................................7

*Am. Centennial Ins. Co. v. Seguros La Republica, S.A.*,
No. 91 Civ. 1235(MJL), 1996 WL 304436 (S.D.N.Y. June 5, 1996)...............................18

*Anderson v. Davis Polk & Wardwell LLP*,
850 F. Supp. 2d 392 (S.D.N.Y. 2012).............................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................................3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................................3

*Bermudez v. City of N.Y.*,
783 F. Supp. 2d 560 (S.D.N.Y. 2011)...............................................................................9

*Brandenburg v. Greek Orthodox Archdiocese of N. Am.*,
No. 20-CV-3809, 2021 U.S. Dist. LEXIS 102800 (S.D.N.Y. June 1, 2021)...................16

*Clark Cnty. Sch. Dist. v. Breeden*,
532 U.S. 268 (2001).......................................................................................................11

*Colon v. Fashion Inst. of Tech.*,
983 F. Supp. 2d 277 (S.D.N.Y. 2013)...............................................................................9

*Davis-Bell v. Columbia Univ.*,
851 F. Supp. 2d 650 (S.D.N.Y. 2012)...............................................................................9

*Dayes v. Pace Univ.*,
No. 98 Civ. 3675 (WHP), 2000 WL 307382 (S.D.N.Y. Mar. 24, 2000),
*aff'd*, 2 F. App'x 204 (2d Cir. 2001)...............................................................................13

*Dellefave v. Access Temporaries, Inc.*,
No. 99 CIV. 6098 RWS, 2001 WL 25745 (S.D.N.Y. Jan. 10, 2001) ............................7, 8

*Duff v. Pristine Servs., Inc.*,
No. 19-CV-10423 (RA), 2021 WL 663981 (S.D.N.Y. Feb. 19, 2021)...............................5

*Erasmus v. Deutsche Bank Ams. Holding Corp.*,
No. 15 CIV. 1398, 2015 WL 7736554 (S.D.N.Y. Nov. 30, 2015) (Engelmayer, J.)............10, 11, 12

*Field Day, LLC v. Cnty. of Suffolk*,
463 F.3d 167 (2d Cir. 2006)..............................................................................................4

*First Nationwide Bank v. Gelt Funding Corp.*,
  27 F.3d 763 (2d Cir. 1994)............................................................................................3

*Fried v. LVI Servs.*,
  500 F. App'x 39 (2d Cir. 2012)....................................................................................16

*Gebhardt v. Allspect, Inc.*,
  96 F. Supp. 2d 331 (S.D.N.Y. 2000)............................................................................3

*Germano v. Cornell Univ.*,
  No. 03 Civ 9766, 2005 WL 2030355 (S.D.N.Y. Aug. 17, 2005)....................................14

*Goodwine v. City of N.Y.*,
  No. 15-CV-2868 (JMF), 2016 WL 3017398 (S.D.N.Y. May 23, 2016)............................9

*Harris v. Forklift Sys.*,
  510 U.S. 17 (1993) ........................................................................................................3

*Hayden v. Cnty. of Nassau*,
  180 F.3d 42 (2d Cir. 1999)............................................................................................4

*Hirsch v. Arthur Andersen & Co.*,
  72 F.3d 1085 (2d Cir. 1995).........................................................................................17

*Hoffman v. Parade Publ'ns*,
  15 N.Y.3d 285 (N.Y. 2010)...................................................................................15, 16

*Inman v. City of N.Y.*,
  No. 08 CV 8239 (DAB), 2011 WL 4344015 (S.D.N.Y. Sept. 13, 2011) .........................9

*Jaffe v. Nat'l League for Nursing*,
  222 A.D.2d 233 (1st Dep't 1995)...................................................................................5

*Kaytor v. Elec. Boat Corp.*,
  609 F.3d 537 (2d Cir. 2010).........................................................................................11

*Kearse v. ATC Healthcare Servs.*,
  No. 12 Civ. 233 (NRB), 2013 WL 1496951 (S.D.N.Y. Apr. 8, 2013) ...........................14

*Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*,
  120 A.D.3d 18 (1st Dep't 2014)....................................................................................10

*Lambui v. Collins*,
  No. 14-CV-6457, 2015 WL 5821589 (E.D.N.Y, Sept. 30, 2015)...................................14

*Leibowitz v. Bank Leumi Trust Co.*,
  152 A.D.2d 169 (2d Dep't 1989) ...................................................................................5

*Livingston v. Roosevelt Union Free Sch. Dist.*,
  No. 17-CV-4189 (JMA) (SIL), 2020 WL 1172642 (E.D.N.Y. Jan. 15, 2020)
  *report and recommendation adopted* No. 17-CV-4189 (JMA) (SIL), 2020 WL
  1166450 (E.D.N.Y. Mar. 11, 2020) ................................................................................9

*Llanos v. City of N.Y.*,
   129 A.D.3d 620 (1st Dep't 2015)......................................................................6, 7

*Lucas v. S. Nassau Cmtys. Hosp.*,
   54 F. Supp. 2d 141 (E.D.N.Y. 1998).......................................................................13

*Lynch v. City of N.Y.*,
   952 F.3d 67 (2d Cir. 2020)..........................................................................................4

*Macias v. Barrier Free Living, Inc.*,
   No. 16 Civ. 1735, 2018 U.S. Dist. LEXIS 52018 (S.D.N.Y. Mar. 28, 2018)...................12

*Maines v. Last Chance Funding, Inc.*,
   No. 2:17-cv-05453 (ADS) (ARL), 2018 WL 4558408 (E.D.N.Y. Sept. 21, 2018)..........14

*Marshall v. N.Y. City Bd. of Elections*,
   322 F. App'x 17 (2d Cir. 2009)...............................................................................12

*McHenry v. Fox News Network, LLC*,
   510 F. Supp. 3d 51 (S.D.N.Y. 2020).........................................................................3

*Mihalik v. Credit Agricole Cheuvreux N. Am. Inc.*,
   715 F.3d 102 (2d Cir. 2013)..................................................................................6, 8

*Mitchell v. Macy's, Inc.*,
   No. 17 Civ. 1845, 2018 WL 9918137 (S.D.N.Y. Sept. 25, 2018) ................................10

*Murray v. Visiting Nurse Servs.*,
   528 F. Supp. 2d 257 (S.D.N.Y. 2007).......................................................................12

*Nachmany v. FXCM, Inc.*,
   No. 91 Civ. 1235 (MJL), 2020 WL 178413 (S.D.N.Y. Jan. 9, 2020).................................7

*O'Dell v. Trans. World Ent. Corp.*,
   153 F. Supp. 2d 378 (S.D.N.Y. 2001).......................................................................12

*Olaechea v. City of N.Y.*,
   No. 17-CV-4797 (RA), 2019 WL 4805846 (S.D.N.Y. Sept. 30, 2019)........................7, 8

*Pedroza v. Ralph Lauren Corp.*,
   No. 19-cv-08639 (ER), 2020 WL 4273988 (S.D.N.Y. July 24, 2020) ......................14, 16

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013)...................................................................................3, 7

*Ponticelli v. Zurich Am. Ins. Grp.*,
   16 F. Supp. 2d 414 (S.D.N.Y. 1998).........................................................................5

*Prince v. Cablevision Sys. Corp.*,
   No. 04-CV-8151 (RWS), 2005 WL 1060373 (S.D.N.Y. May 6, 2005) ...........................12

*Quinn v. Green Tree Credit Corp.*,
    159 F.3d 759 (2d Cir. 1998) (abrogated on other grounds) ............................................12

*Ramirez v. Michael Cetta Inc.*,
    No. 19-CV-986 (VEC), 2020 WL 5819551 (S.D.N.Y. Sept. 30, 2020) .............................5

*Rapoport v. Asia Elecs. Holding Co.*,
    88 F. Supp. 2d 179 (S.D.N.Y. 2000) .............................................................................17

*Rieger v. Drabinsky (In re Livent Noteholders Sec. Litig.)*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) ........................................................................4, 17

*Robinson v. Dibble*,
    613 F. App'x 9 (2d Cir. 2015)........................................................................................12

*Robles v. Cox & Co.*,
    841 F. Supp. 2d 615 (E.D.N.Y. 2012)...........................................................................14

*Salahuddin v. Jones*,
    992 F.2d 447 (2d Cir. 1993) ..........................................................................................17

*Salvatore v. KLM Royal Dutch Airlines*,
    No. 98- CV-2450 (LAP), 1999 U.S. Dist. LEXIS 15551 (S.D.N.Y. Sept. 30, 1999)...................5, 16

*Simon v. City of N.Y.*,
    No. 17 CIV. 9575, 2019 WL 916767 (S.D.N.Y. Feb. 14, 2019) .......................................9

*Smith v. Local 819 I.B.T. Pension Plan*,
    291 F.3d 236 (2d Cir. 2002)............................................................................................3

*Sosa v. Medstaff, Inc.*,
    No. 12 Civ. 8926 (NRB), 2013 WL 6569913 (S.D.N.Y. Dec. 13, 2013) ...........................5

*Syeed v. Bloomberg L.P.*,
    568 F. Supp. 3d 314 (S.D.N.Y. 2021) ...........................................................................14

*Thomas v. Five Star Elec.*,
    No. 18-CV-3691 (AT) (RWL), 2022 U.S. Dist. LEXIS 121830
    (S.D.N.Y. May 5, 2022)................................................................................................17

*Trans World Airlines, Inc. v. Hughes*,
    449 F.2d 51 (2d Cir. 1971)............................................................................................18

*Vangas v. Montefiore Med. Ctr.*,
    823 F.3d 174 (2d Cir. 2016)..........................................................................................15

*Vito v. Bausch & Lomb Inc.*,
    403 F. App'x 593 (2d Cir. 2010)...................................................................................12

*Wang v. Gov't Emps. Ins. Co.*,
    No. 15-CV-1773 (JS) (ARL), 2016 WL 11469653 (E.D.N.Y. Mar. 31, 2016) .................15

*Williams v. N.Y. City Hous. Auth.*,
  61 A.D.3d 62 (1st Dep't 2009) ........................................................................................3

*Wolff v. Rare Medium, Inc.*,
  210 F. Supp. 2d 490 (S.D.N.Y. 2002) ............................................................................7

**STATUTES**

Americans with Disabilities Act ........................................................................................18

Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ..............................2

New York City Human Rights Law ........................................................................... passim

New York State Human Rights Law ........................................................................... passim

N.Y. Exec. Law § 296(1)(h) ..............................................................................................9

Title VII ...................................................................................................................... passim

**OTHER AUTHORITIES**

N.Y.C. Admin. Code § 8-107 (1)(a)(3) .............................................................................9

Fed. R. Civ. P. 10 ..............................................................................................................4

Fed. R. Civ. P. 12 .................................................................................................1, 3, 4, 10, 12

## PRELIMINARY STATEMENT

This First Amended Complaint is the latest chapter in a string of factually and legally frivolous filings seeking to publicly embarrass Everyrealm Inc. ("Everyrealm") by Plaintiff Teyo Johnson and another former employee represented by common counsel. The Court should dismiss Johnson's purported sexual harassment claim against Everyrealm Inc., Mrs. Yorio, William Kerr ("Mr. Kerr"), and Julia Schwartz ("Ms. Schwartz") (collectively "the Everyrealm Defendants") and compel the remaining claims to arbitration, because: (i) the purported sexual harassment assertions are facially implausible and legally insufficient to support a sexual harassment claim, whether under state, city or federal law; (ii) the "impact" of the purported harassment did not occur in New York, thus depriving him of any ability to pursue any such claim under the New York State Human Rights Law or New York City Human Rights Law (or avail himself of their legal standards); and (iii) his latest fabrications should be disregarded as they continue the string of lies put forward by Johnson and directly contradict his sworn Charge of Discrimination as well as six other filings with this Court.[1]

With each successive court filing – and ever more lurid (even if legally inconsequential) assertions – Johnson has sought to pressure Everyrealm into acceding to his extortionate $1.9 million settlement demand.  Everyrealm hired Johnson as its Director of Strategic Partnerships on March 1, 2022, transferred him to an Asset Management position roughly 30 days later after his supervisor Kevin Virgil put him on a written performance improvement plan, and he was discharged by the company's head of human resources, Katherine Yost, on May 31, 2022. Plaintiff was thus employed for roughly thirteen weeks. During his three months of full-time employment, Everyrealm paid Johnson approximately $31,000; he has thus demanded by way of settlement roughly 61 times the salary paid to

---

[1] The Everyrealm Defendants file this Motion to Dismiss in compliance with the Court's October 6, 2022 Order. (See doc. 28). The Everyrealm Defendants note, however, that their pending Motion to Compel Arbitration is subject to a summary judgment standard (and not Rule 12), as has already been recognized by this Court. (See doc. 22).

him by Everyrealm. (See doc. 29 at ¶ 118).  Indeed, contrary to Johnson's claims, he was employed in a low paying manual labor job at the time of his hire by Everyrealm.

The original "theme" of this Action – that Johnson was discharged "solely on account of his race" (See doc. 1 at ¶ 71) – has been cast aside in an effort to avoid arbitration. Now, the claim is that Johnson was sexually harassed, and that all of his claims should be exempt from arbitration. Aside from his failure to plead a sexual harassment claim, the evidence will show that it was Johnson who encouraged discussions regarding sexuality and promiscuity. Indeed, on April 19, 2022, Johnson sent a picture of a female in a hat to Mr. Kerr, and when Mr. Kerr inquired who she was, Johnson wrote: "21 year old smoke show, her [boyfriend] is older than me . . . Gonna snatch it up when they part ways . . . Catch and release [Mr. Kerr]!!"[2] (See Declaration of William Kerr ("Kerr Decl.") at Exh. A). Tellingly, following his discharge, Everyrealm hired a third-party investigator to investigate Johnson's (and others') claims, but he declined to participate.

The Court should dismiss Johnson's legally deficient sexual harassment claim. Accepting all of Johnson's lies as true – even including his latest falsehoods – his purported "sex harassment" claim is not remotely plausible, whether under state, local or federal law.  And as such, it must be dismissed. Indeed, although Johnson's purported sexual harassment allegations do not satisfy the state or city legal standards, the Court need only address the federal "severe or pervasive" standard because Johnson was never employed in New York state or city.  At all relevant times, Johnson lived and worked in Nevada; he only physically worked in the Everyrealm New York City on one occasion totaling approximately one week.  Johnson's allegations plainly do not establish that he felt the impact of alleged harassment within the territorial boundaries of New York State or New York City, as is required to state a claim

---

[2] "Catch and release" presumably meaning that Johnson would engage in sexual relations with this woman, and then never see her again.

under the NYSHRL and NYCHRL. The Court should not allow Johnson to benefit from a law designed to protect New York resident employees when he was nothing more than a one-time visitor.

Further, although Johnson's allegations in their entirety do not amount to sexual harassment under any legal standard, the Court should ignore the newest allegations in Johnson's First Amended Complaint.[3] These allegations are noticeably absent in his six previous filings with this Court and his sworn Charge of Discrimination. The Court need not accept these contradictory allegations as true, and dismissal of the remaining sexual harassment allegations is clearly warranted under applicable law.

In light of the foregoing, the Court should dismiss Johnson's sexual harassment claim, and compel the remainder of this Action to arbitration.

## LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the Court must assume the truth of Johnson's factual allegations, but not his legal conclusions or any "unwarranted deductions of fact." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994).

To state a valid claim, a plaintiff cannot rely on mere conclusory assertions, but instead must allege "concrete" facts that make his claims "plausible." *See Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013). Indeed, conclusory allegations are not entitled to be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007)); *see also Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir.2002) ("legal conclusions masquerading as factual conclusions will not suffice") (quoting *Gebhardt v. Allspect, Inc.,* 96 F. Supp. 2d 331, 333 (S.D.N.Y.2000)).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the

---

[3] Johnson attempts to conflate alleged pay discrimination with sexual harassment even though sexual harassment is a discrete form of discrimination. *See Williams v. N.Y. City Hous. Auth.*, 61 A.D.3d 62, 75 (1st Dep't 2009) (recognizing that sexual harassment is "one species" of gender-based discrimination, indicating not all gender-based discrimination constitutes sexual harassment).

complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir.1999)). But a court may consider "any 'written instrument' . . . attached to [the complaint] as 'an exhibit' or . . . incorporated in it by reference." *Lynch v. City of N.Y.*, 952 F.3d 67, 79 (2d Cir. 2020) (quoting Fed. R. Civ. P. 10(c) (other citations omitted)). Moreover, allegations in a Complaint that are contradicted by other documents available to the Court need not be accepted as true when assessing a Motion to Dismiss under Rule 12. *Rieger v. Drabinsky (In re Livent Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371, 405-406 (S.D.N.Y. 2001) ("Thus, a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice.")

## ARGUMENT

The Court should dismiss Johnson's sexual harassment claim. Johnson has made no assertion that the purported harassment was based on his gender or sex, he has asserted nothing more than isolated incidents, petty slights and trivial inconveniences, and he has failed to plausibly allege the impact of the alleged harassment was felt in New York.

## I.   Johnson Fails to State a Claim for Sexual Harassment.

In his First Amended Complaint, Johnson fails to allege conduct by the Everyrealm Defendants[4] that would constitute sexual harassment, whether under state, city, or federal law. Indeed, the purported inquiries and comments were directed to both male and female employees, and have no connection to Johnson's gender. While Johnson claims he was subjected to unwanted inquiries

---

[4]  The Second Amended Complaint is devoid of any sexual harassment assertions involving Defendant Julia Schwartz. Thus, to the extent Johnson's vaguely described causes of action purport to state a sexual harassment claim against her (e.g. "Third Cause of Action – Sexual Harassment, Hostile Work Environment, and Discrimination in Violation of the NYSHRL – Against All Defendants"), any such claim is frivolous.

regarding his sex life, he does not allege that any of the Everyrealm Defendants inquired whether he would be interested in an amorous relationship.  Thus Johnson alleges nothing more than petty slights or minor annoyances – if that – and therefore does not state a claim for a hostile work environment. *Ramirez v. Michael Cetta Inc.*, No. 19-CV-986 (VEC), 2020 WL 5819551, at *18 (S.D.N.Y. Sept. 30, 2020) ("'petty slights and trivial inconveniences'" are insufficient to establish a hostile work environment).[5]  As the claims fail under the NYCHRL and NYSHRL, they must also fail under Title VII's "severe or pervasive" standard.  *See Sosa v. Medstaff, Inc.*, No. 12 Civ. 8926 (NRB), 2013 WL 6569913, at *5-6 (S.D.N.Y. Dec. 13, 2013) (dismissing Title VII race-based hostile work environment claim where plaintiff's claim was "based on only two comments," including "'You look like Urckle'" and "'You're so street, Eddie'"); *see also Duff v. Pristine Servs., Inc.*, No. 19-CV-10423 (RA), 2021 WL 663981, at *2 (S.D.N.Y. Feb. 19, 2021) (graffiti plaintiff encountered at the job site which "included a racial epithet derogatory to African Americans and a reference to the KKK" insufficient to prove hostile work environment). Notably, there is no evidence that any of the alleged "harassment" was related to Johnson's protected characteristic – his gender.

Johnson specifically asserts he was subjected to sexual harassment based on the following: Mrs. Yorio (i) stated he "was not just a pretty face" (See doc. 29 at ¶ 47), (ii) "in other words" asked

---

[5]  Although this motion addresses, as directed by the Court, Plaintiff's claim of "sexual harassment," to the extent Plaintiff seeks to characterize his IIED claim as itself a "sexual harassment dispute," that too fails as a matter of law. It is well settled law that verbal insults – which, to be clear, are not even alleged here – do not meet the rigorous standard of intentional infliction of emotional distress. *See Leibowitz v. Bank Leumi Trust Co. of N.Y.*, 152 A.D.2d 169, 171 (2d Dep't 1989). Moreover, in *Salvatore*, the court dismissed the plaintiffs' claims for intentional infliction of emotional distress based on purported sexual harassment, even where "many of the plaintiffs allege that the harassing and discriminatory gibes were accompanied with minor physical abuse like the slapping of the back of the head, the placing of an arm around a female plaintiff, and the occasional grabbing of a female plaintiff's hip. As offensive as these alleged acts are, plaintiffs have not alleged that they were done with an intent to sexually harass or performed on a 'day in, day out basis.'" 1999 U.S. Dist. LEXIS 15551, at *8 (citing *Jaffe v. Nat'l League for Nursing*, 222 A.D.2d 233, 233 (1st Dep't 1995) (stating hard slap on plaintiff's backside sufficiently alleged tort of assault and battery but declining to find intentional infliction of emotional distress); *Ponticelli v. Zurich Am. Ins. Grp.*, 16 F. Supp. 2d 414, 440 (S.D.N.Y. 1998) (finding allegation that plaintiff was shoved into file cabinet did not meet requirements for claim of intentional infliction of emotional distress)). The claims in *Salvatore* were far more "outrageous" than those Johnson asserts here.

Johnson (while in Austin, Texas) whether he planned to have sex or "hook up" with any of his coworkers at a music festival under the guise of an alleged work-related game called "KYP" (See doc. 29 at ¶¶ 56–59), (iii) "insinuated" (while in Texas) he was "promiscuous" (Id. at ¶¶ 61 & 63), (iv) asked on an undisclosed date whether he had "'done' or would do 'any KYP'" (Id. at ¶ 65), (v) inquired whether he had sexual relations with his girlfriend (Id. at ¶¶ 83–85),[6] (vi) stated (while in Texas) that an Everyrealm employee was "an incel," in love with another man, and hoped he would "have gay sex" (Id. at ¶¶ 90 & 93), and (vii) referred to a potential business partner as a "Big Swinging Dick" and called this partner a "dick" multiple times during a business call (Id. at ¶¶ 109–113); Johnson also claims he overheard a conversation (to which he was not a party) between Mrs. Yorio and another relationship discussing a potential amorous relationship between two employees (Id. at ¶¶ 67–71); and finally, Johnson claims that Mr. Kerr – who until Johnson's First Amended Complaint was not mentioned in any prior filing in this case, let alone named as a party – referred to an investor by the name of a pornographic film in which she was featured. (Id. at ¶¶ 99–105). These comments have no relationship to Johnson's gender, nor do they plausibly state a claim for sexual harassment.

### a.   Johnson Does not Assert Any Harassment was "Because of" a Discriminatory Motive.

Johnson's claims fail at the outset – whether under state, city or federal law – because he does not make any attempt to link the alleged comments to his gender. To support a sexual harassment claim, a plaintiff must advance factual assertions that would demonstrate that the alleged harassment occurred because of a discriminatory motive. *Mihalik v. Credit Agricole Cheuvreux N. Am. Inc.*, 715 F.3d 102, 110 (2d Cir. 2013); *Llanos v. City of N.Y.*, 129 A.D.3d 620, 620 (1st Dep't 2015) (a

---

[6] To the extent Johnson purports to state a claim for sexual harassment based on "bullying" of his girlfriend, these facts do not meet the definition of "sexual harassment" under any applicable legal theory.

6

"plaintiff's failure to adequately plead discriminatory animus is fatal to her claim of hostile work environment [under NYCHRL and NYSHRL]").

Nowhere does Johnson allege any facts to indicate that Mrs. Yorio's or Mr. Kerr's comments were made *because of* Johnson's gender.  *See Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002) (affirming judgment on the pleadings and holding facially-neutral comments only relevant where there is "some circumstantial or other basis for inferring that incidents []-neutral on their face were in fact discriminatory"). *See also Nachmany v. FXCM, Inc.*, No. 91 Civ. 1235 (MJL), 2020 WL 178413, at *6 (S.D.N.Y. Jan. 9, 2020) (finding allegations were not "because of" protected characteristic and granting motion to dismiss on NYCHRL, NYSHRL and Title VII claims where (1) defendant called plaintiff "a dick"; (2) "changed Plaintiff's computer background to an image of a 'naked male with an erect penis, spreading his buttocks, with two hands, to expose his internal anatomy'"; and (3) "drew onto a photograph of Plaintiff a 'depiction of an individual placing his erect penis in front of Plaintiff's mouth to simulate oral sex and defecation onto Plaintiff's head'"); *Olaechea v. City of N.Y.*, No. 17-CV-4797 (RA), 2019 WL 4805846, at *6 (S.D.N.Y. Sept. 30, 2019) (dismissing Title VII and NYSHRL claims because "[r]umors of two colleagues having a sexual relationship with one another are not innately gender based—they may be equally upsetting to either colleague regardless of their gender"); *Dellefave v. Access Temporaries, Inc.*, No. 99 CIV. 6098 RWS, 2001 WL 25745, at *7 (S.D.N.Y. Jan. 10, 2001) (dismissing NYSHRL and Title VII claims because "[n]othing about the alleged statement relate[d] to DelleFave's gender. Even if embarrassing or even humiliating, a statement that an employee is having a consensual relationship with a co-worker cannot be construed as discrimination or harassment on the basis of sex absent some additional assertion, such as that the plaintiff was singled out for such comments because of his or her gender.").

Here, Johnson has not advanced a single factual allegation that would connect the alleged

comments by Mrs. Yorio or Mr. Kerr to Johnson's gender or sex.  Indeed, as described by Johnson the comments were both about women and men.  And Johnson has made no claim that Mrs. Yorio or Mr. Kerr only made the alleged comments to him because he is a man.  Moreover, as the Court is aware, Katherine Yost (a woman) attempts to support her sexual harassment claim by reference to the very same sort of alleged comments by Mrs. Yorio regarding the relationships and sexuality of others in the office (See doc. 35 at ¶¶ 73, 76–78) – so there can be no inference that Mrs. Yorio only made these alleged comments to Johnson because of his gender. And little, if anything, about the alleged comments themselves indicates any connection to Johnson's gender.  Indeed, the alleged comments at issue here are very much like those in the *Olaechea* and *Dellefave* cases discussed above – nothing more than remarks about the relationships or sexuality of others in the workplace.  And, as such, they cannot give rise to a claim of sexual harassment.

        **b.**       **Johnson's Allegations Amount to Petty Slights or Trivial Inconveniences.**

Even if the purported remarks had been alleged to relate somehow to Johnson's own gender, the allegations against the Everyrealm Defendants individually and collectively do not amount to a claim of sexual harassment, whether under state, city or federal law.

Under the NYSHRL, sexual harassment is defined as "harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 74 (S.D.N.Y. 2020). To "establish a . . . discrimination claim under the NYCHRL, the plaintiff must demonstrate 'by a preponderance of the evidence that she has been treated less well than other employees because of her gender . . . .'" *Mihalik*, 715 F.3d at 110.  Neither statute constitutes a "general civility code." *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 671 (S.D.N.Y. 2012) (internal quotation marks omitted)).  Yost's

allegations do not constitute sexual harassment under either the NYCHRL[7] or under the recently-amended NYSHRL because, at most, they constitute "petty slights" or "trivial inconveniences." N.Y.C. Admin. Code § 8-107 (1)(a)(3); N.Y. Exec. Law § 296(1)(h).

Any number of courts have dismissed harassment claims presenting allegations far more serious than those present here.[8] *See Goodwine v. City of N.Y.*, No. 15-CV-2868 (JMF), 2016 WL 3017398, at *8-9 (S.D.N.Y. May 23, 2016) (allegation plaintiff was "referred to as a 'cunt' and 'bitch' by a manager . . . that she was once asked rhetorically if she was 'smoking crack' (a comment that she perceived to be racial) . . . and that she was referred to as 'shit girl,'" fail to allege hostile work environment under NYCHRL and were "stray remarks using nominally gendered or racial language"); *Colon v. Fashion Inst. of Tech.*, 983 F. Supp. 2d 277, 292 (S.D.N.Y. 2013) (allegations that plaintiff was subject to "intense scrutiny and micro-management on a daily basis" and reprimanded more harshly than white employees "do not rise above the level of 'petty slights and trivial inconveniences'"); *Inman v. v. City of N.Y.*, No. 08 CV 8239 (DAB), 2011 WL 4344015, at *7 (S.D.N.Y. Sept. 13, 2011) (calling plaintiff, along with others, "loads," as in "loads of shit," and "lazy," consisted of nothing more than "petty-slights and inconveniences"); *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 604-05 (S.D.N.Y. 2011) ("statements about women and Hispanics, while deeply offensive, are '"petty slights and inconveniences"'); *Simon v. City of N.Y.*, No. 17 CIV. 9575, 2019 WL 916767, at *10 (S.D.N.Y. Feb. 14, 2019) (granting MTD on NYCHRL HWE claim as defendant's

---

[7] While the NYCHRL and NYSHRL do not apply to Johnson's claims because he did not work in New York, the Everyrealm Defendants address them in any event.

[8] Defendants cite NYCHRL cases given the recent amendments to the NYSHRL, effective October 11, 2019, that removed the "severe or pervasive" standard to more closely track the lower-threshold NYCHRL standard for hostile work environment claims. *Livingston v. Roosevelt Union Free Sch. Dist.*, No. 17-CV-4189 (JMA) (SIL), 2020 WL 1172642, at *11 (E.D.N.Y. Jan. 15, 2020), *report and recommendation adopted*, No. 17-CV-4189 (JMA) (SIL), 2020 WL 1166450 (E.D.N.Y. Mar. 11, 2020) (2019 amendments to the NYSHRL "effectively rendered the standard for claims thereunder closer to that of the New York City Human Rights Law").

actions (namely, that he invaded the plaintiff's personal space, told the plaintiff that "she liked him," and asked when she was leaving work) were insufficient to demonstrate that she received unequal treatment because of her sex); *Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*, 120 A.D.3d 18, 23 (1st Dep't 2014) (granting MTD, or in the alternative motion for SJ under NYCHRL where plaintiff claimed HWE where partner at law firm made inappropriate comments regarding her expression of breast milk, including that "women who breast feed were cows," holding that "a reasonable person would consider the complained-of conduct nothing more than petty slights and trivial inconveniences."); *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 404 (S.D.N.Y. 2012) (MTD granted under NYCHRL where employee alleged supervisor "would come around [his] cube on occasions & place her vagina literally on [his] left shoulder or inches from [his] face," construing this as an allegation that supervisor "stood too close" which "plainly does not violate even [l]ower threshold of NYCHRL"); *Mitchell v. Macy's, Inc.*, No. 17 Civ. 1845, 2018 WL 9918137, at *4 (S.D.N.Y. Sept. 25, 2018) (granting MTD as to NYCHRL sexual harassment claims where defendant allegedly "exposed her bare breasts to [him] on the sales floor" three times, noting there is no indication the plaintiff "suffered any differential treatment").

This Court has previously addressed substantially more serious sexual harassment allegations than those present in this case and dismissed the claim under both Title VII and the NYCHRL on a Rule 12 motion. *Erasmus v. Deutsche Bank Ams. Holding Corp.*, No. 15 CIV. 1398, 2015 WL 7736554, at *6 (S.D.N.Y. Nov. 30, 2015) (Engelmayer, J.). Although as to the NYCHRL, the Court dismissed on the ground that there was no basis to impute the alleged harassing conduct to the defendant, it nonetheless also stated that it had "substantial doubts" about whether a series of "sexual gestures and advances toward [plaintiff]," could give rise to a harassment claim under the NYCHRL. The conduct at issue in *Erasmus* included: (i) "leer[ing] at [plaintiff] in a sexual manner"; (ii)

commenting to plaintiff that he was "having so much sex all the time," (iii) advising plaintiff, "To get into a nightclub just put a sock in your pants and pretend like you have a really big dick," then motioning to plaintiff and "pointing to his penis," (iv) on several occasions, "pretend[ing] to hold his penis while pointing it at [plaintiff] and (v) making "inappropriate sexual comments to [plaintiff]."  The allegations at issue in *Erasmus* are, by several orders of magnitude, far more serious than those alleged by Johnson.  They involved conduct and statements directed at the plaintiff plainly relating to sex with the plaintiff.  And there was physical conduct (leering, pointing at plaintiff's penis and pretending to hold his own), not mere statements. None of that is present here.

Johnson alleges approximately a half-dozen instances where he was made allegedly uncomfortable by discussions of other employees'/investors' sex lives and one (or possibly two) inquiries regarding his own sex life. Moreover, Johnson's allegations pertaining to conduct during his remote pre-hire video interview, and at the South by Southwest Music Festival in Austin, Texas should be excluded from this analysis. *See* Section II, *infra*. Johnson does not allege he was ever physically touched, let alone touched in a sexually inappropriate manner. Nor does he allege Mrs. Yorio, Ms. Schwartz, or Mr. Kerr ever propositioned him for sexual or otherwise inappropriate encounters. The Court should accordingly dismiss Johnson's sexual harassment claim.

While it is plain that Johnson has failed to assert an actionable claim of sexual harassment under any statute, this failure is even more striking under Title VII, the only applicable statute pleaded by Johnson, given that he lived and worked in Nevada.  Johnson does not even remotely allege conduct that would be, "so severe or pervasive as to alter the conditions of h[is] employment and create an abusive working environment." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (internal quotations and alterations omitted); *Kaytor v. Elec. Boat Corp.,* 609 F.3d 537, 547 (2d Cir. 2010). Courts within the Second Circuit routinely find that far more substantial allegations of "harassment"

11

fail to satisfy this standard. *See Vito v. Bausch & Lomb Inc.*, 403 F. App'x 593 (2d Cir. 2010) (rejecting Title VII hostile work environment claim because the alleged actions were just sporadic use of abusive language, gender-related jokes, occasional teasing, or workplace bullying); *Marshall v. N.Y. City Bd. of Elections*, 322 F. App'x 17, 18 (2d Cir. 2009) (summary order) (finding no hostile work environment where homosexual supervisor showed plaintiff a "sexual device he had purchased for his partner," even though plaintiff "may have been legitimately offended" by such talk); *Robinson v. v. Dibble*, 613 F. App'x 9, 13 (2d Cir. 2015) (affirming dismissal where "evidence of crude and offensive comments directed at [plaintiff's] gender or mental health issues that were delivered sporadically by coworkers . . . while condemnable, did not rise to the level of creating an abusive and hostile workplace environment"); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998) (affirming dismissal of sexual harassment claim where a supervisor told the plaintiff that "she had been voted the 'sleekest ass'" in the office and touched the plaintiff's breasts with papers in his hand) (abrogated on other grounds); *Murray v. Visiting Nurse Servs.*, 528 F. Supp. 2d 257, 278–80 (S.D.N.Y. 2007) (male-to-male statements in the workplace such as "you're such a bitch," "good morning ladies," "when are you going to come out of the closet," and "are you ladies going to the parade?" insufficient to establish hostile work environment claim); *O'Dell v. v. Trans. World Ent. Corp.*, 153 F. Supp. 2d 378, 386 (S.D.N.Y. 2001) (dismissing sexual harassment claim where a supervisor made comments about the plaintiff's appearance, "sent her e-mails professing his love for her, called her at work and at home, invited her to tour New York City with him, gave her three gifts, and played her a song that she found offensive"); *Macias v. Barrier Free Living, Inc.*, No. 16 Civ. 1735, 2018 U.S. Dist. LEXIS 52018, at *22 (S.D.N.Y. Mar. 28, 2018) (gossip about plaintiff's purported sexual relationships was not sufficiently severe or pervasive to alter conditions of employment); *Erasmus*, 2015 WL 7736554, at **5–7 (see above); *Prince v. Cablevision Sys. Corp.*, No. 04-CV-8151 (RWS), 2005 WL 1060373, at

12

*2, 6-7 (S.D.N.Y. May 6, 2005) (dismissing a hostile work environment claim on a Rule 12(c) motion where an employee was subjected to "sex talk," and where a co-worker attempted to kiss the plaintiff and asked her to have sex with him); *Dayes v. Pace Univ.*, No. 98 Civ. 3675 (WHP), 2000 WL 307382, at *4–5 (S.D.N.Y. Mar. 24, 2000), *aff'd*, 2 F. App'x 204 (2d Cir. 2001) (granting summary judgment to defendant where plaintiff was subject to six sexual comments, multiple requests for dates, was screamed at by supervisor, and was touched on the back); *Lucas v. S. Nassau Cmtys. Hosp.*, 54 F. Supp. 2d 141, 147–49 (E.D.N.Y. 1998) (denying hostile work environment claim where supervisor touched plaintiff multiple times, asked about the color of plaintiff's underwear, said plaintiff wanted to "go to bed" with her, and said "fuck you" to plaintiff on two occasions). Johnson's claims fall well short of establishing "severe and pervasive" sexual harassment.

Johnson advances no allegation that these gender-neutral remarks were made because of his gender. And even accepting Johnson's mere isolated incidents, petty slights and minor annoyances as true, these claims fail as a matter of law.

## II.    Johnson Cannot Avail Himself of the Protections of the NYCHRL and NYSHRL.

Johnson resided in and worked for Everyrealm in Nevada. Out of thirteen weeks of employment, Johnson visited New York City to perform work for Everyrealm on only one occasion, for a total of approximately one week. (See docs. 11 at ¶ 11 & 29 at ¶ 14).[9] (Id.) As Johnson made clear in his First Amended Complaint, he was purportedly harassed outside of New York during his remote video interview, and in connection with two alleged statements made to him during a music festival in Austin, Texas. He otherwise asserts only three discrete instances of purported harassment that occurred in New York City. He therefore cannot avail himself of either the NYCHRL or NYSHRL and their attendant legal standards for sexual harassment claim.

---

[9] Johnson carefully alleges he was "assigned to Everyrealm's New York, New York office for at least two weeks per month", but he does not allege he was there for more than one week. Indeed, he was not.

Under similar circumstances, numerous New York courts have dismissed NYSHRL and NYCHRL claims brought by non-resident plaintiffs who worked outside of New York at the time of the alleged unlawful conduct. *See, e.g., Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 329-330 (S.D.N.Y. 2021) (dismissing plaintiff's NYCHRL and NYSHRL claims where she did not work in New York, even where she sought a promotion in New York City); *Pedroza v. Ralph Lauren Corp.*, No. 19-cv-08639 (ER), 2020 WL 4273988, at *2, 4-6 (S.D.N.Y. July 24, 2020) (dismissing NYSHRL and NYCHRL claims because plaintiff who worked in New Jersey could not establish impact in New York); *Maines v. Last Chance Funding, Inc.*, No. 2:17-cv-05453 (ADS) (ARL), 2018 WL 4558408, at *8 (E.D.N.Y. Sept. 21, 2018) (dismissing NYSHRL claim brought by a plaintiff who worked with people in New York, but did not personally work in New York); *Lambui v. Collins*, No. 14-CV-6457, 2015 WL 5821589, at *5 (E.D.N.Y, Sept. 30, 2015) ("While Plaintiff does allege a January 2013 New York City trip in which Collins made sexual advances, and a March 2013 work assignment in New York City, the rest of the Complaint details a number of incidents involving Collins' sexual advances all occurring on Long Island. It is abundantly clear that the vast majority of Collins' discriminatory and harassing conduct occurred on Long Island. Thus, Plaintiff has failed to show that Collins' alleged conduct affected the terms and conditions of her employment within New York City, as Plaintiff has failed to adequately allege that she was employed within New York City."); *Kearse v. ATC Healthcare Servs.*, No. 12 Civ. 233(NRB), 2013 WL 1496951, at *1-2 (S.D.N.Y. Apr. 8, 2013) (dismissing NYCHRL claim where plaintiff did not work in New York City); *Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 625 (E.D.N.Y. 2012) (granting motion to dismiss NYCHRL claim and stating that "the relevant location of the injury for purposes of the impact analysis is . . . the [p]laintiff's place of employment"); *Germano v. Cornell Univ.*, No. 03 Civ. 9766, 2005 WL 2030355, at *5 (S.D.N.Y. Aug. 17, 2005) ("Plaintiff alleges in his Complaint that Defendants discriminated against him at four meetings and

14

dinners that took place in New York City at which Martin harassed and pressured him to retire. Assuming such conduct constitutes discrimination, Plaintiff still only felt the impact of that discrimination in his place of occupation, Long Island, not New York City.") The same outcome is compelled in this case: Johnson's claims under the NYSHRL and NYCHRL for alleged harassment that purportedly occurred while he was employed in Nevada should be dismissed.

Johnson's allegations regarding his minimal contacts with New York do nothing to change this conclusion. For instance, as it concerns purported harassment that occurred in New York, he only alleges he overheard a single conversation regarding two coworkers' amorous relationship, was asked whether he engaged in sexual relations with his girlfriend, and was told to refer to an investor by the name of a pornographic video in which she was featured. Johnson apparently has no other connection to New York City, except for the fact that Everyrealm is headquartered there.

That Johnson claims he was "required" to work from New York for two weeks every month is immaterial, because he fails to allege he did so, and the alleged impact must actually be "felt by the plaintiff" within the geographic boundaries of New York City or State. *See Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 183 (2d Cir. 2016). *See also Wang v. Gov't Emps. Ins. Co.*, No. 15-CV-1773 (JS) (ARL), 2016 WL 11469653, at *7 (E.D.N.Y. Mar. 31, 2016) (dismissing plaintiff's failure-to-promote claim under the NYCHRL notwithstanding allegations that the promotion would have required plaintiff to work in New York City).

The law is clear that a plaintiff is not entitled to bring a claim under the NYSHRL or NYCHRL when the plaintiff did not work in New York, even in circumstances where the defendant was headquartered in New York, and/or the plaintiff periodically traveled to New York. The test is where the impact of the purported harassment allegedly was felt by the plaintiff. Indeed, in *Hoffman*, the New York Court of Appeals ruled that the plaintiff (who lived and worked in Georgia) could not assert a

claim under the NYSHRL or NYCHRL even though Hoffman had attended quarterly meetings at the defendant's headquarters in New York, the defendant managed Hoffman from New York, and the defendant made the decision to terminate Hoffman's employment in New York.[10] *Hoffman v. Parade Publ'ns*, 15 N.Y.3d at 288. *See also, e.g., Fried v. LVI Servs.*, 500 F. App'x 39, 42 (2d Cir. 2012) (affirming dismissal of NYCHRL claim because plaintiff "did not 'work in the city'"); *Brandenburg v. Greek Orthodox Archdiocese of N. Am.*, No. 20-CV-3809, 2021 U.S. Dist. LEXIS 102800, at **19–20 (S.D.N.Y. June 1, 2021) (dismissing NYCHRL claims because "Plaintiffs currently live in Missouri and, during their employment with the Archdiocese, lived and primarily worked in Calverton, New York. And although the Amended Complaint does include a handful of allegations regarding Plaintiffs' work-related trips to New York City, and Defendants' conduct at the Archdiocese headquarters in New York City,  these allegations, even taken together, show no 'more than a tangential relationship between New York [City] and the actions of which [Plaintiffs] complain[].'") (internal citations omitted); *Pedroza v. Ralph Lauren Corp.*, No. 19-cv-08639(ER), 2020 WL 4273988, at *2, 5 (S.D.N.Y. July 24, 2020) (dismissing NYSHRL and NYCHRL claims brought by New Jersey-based employee because "[c]ourts look to where the impact occurs, not the place of its origination…and the impact needs to be felt by the plaintiff in New York City" or State); *Salvatore v. KLM Royal Dutch Airlines*, No. 98- CV-2450 (LAP), 1999 U.S. Dist. LEXIS 15551, at **52-53 (S.D.N.Y. Sept. 30, 1999) (finding a lack of discriminatory impact "even if the isolated incidents in New York City contributed to a hostile work environment").

Moreover, in *Salvatore*, the Southern District of New York held the impact of the discrimination was not felt in New York, where "the alleged [harassing] remarks and conduct may have

---

[10] In *Hoffman*, the New York Court of Appeals resolved a split among state and federal courts and held that a plaintiff could not bring a claim under the NYCHRL by merely alleging and proving that the alleged discriminatory decision was made in New York City. 15 N.Y.3d at 290.

originated within the boundaries of New York City, [but] plaintiffs have failed to allege that the whole or substantial part of the discrimination occurred in New York City." *Id.* at *52–53. The court explained, "even if the isolated incidents in New York City contributed to a hostile work environment, the plaintiffs' work environment is in Elmsford, New York, not New York City." *Id.* at *53. Johnson was employed in Nevada, and only visited Everyrealm's office in New York City once for less than a week. Even accepting his fictionalized allegations as true, he has only alleged isolated incidents of purported harassment in New York, and the Court should dismiss his city and state sexual harassment claims.

III.   <u>**The Court Should Reject Johnson's Contradictory and False Allegations.**</u>

While Johnson's allegations in their totality as alleged in the First Amended Complaint do not amount to a plausible claim of harassment as a matter of law, his latest allegations should be disregarded by the Court. Courts within the Second Circuit routinely reject contradictory and incoherent allegations in a complaint when analyzing a motion to dismiss. *See Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Lit.)*, 151 F. Supp. 2d 371, 405-406 (S.D.N.Y. 2001) ("Thus, a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice.") (citing *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (sustaining dismissal of the complaint where "attenuated allegations" supporting a claim "are contradicted both by more specific allegations in the complaint and by facts of which [the court] may take judicial notice")). *See also Thomas v. Five Star Elec.*, No. 18-CV-3691 (AT) (RWL), 2022 U.S. Dist. LEXIS 121830, at **16–17 (S.D.N.Y. May 5, 2022) ("[If] a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations

in the complaint as true."); *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (dismissing claim

that is based on "wholly conclusory and inconsistent allegations"); *Rapoport v. Asia Elecs. Holding*

*Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) (granting motion to dismiss where the documents on

which plaintiffs' securities fraud claim purport to rely contradict allegations in

plaintiffs' complaint); *Am. Centennial Ins. Co. v. Seguros La Republica, S.A.*, No. 91 Civ. 1235, 1996

WL 304436 at *16 (S.D.N.Y. June 5, 1996) ("Allegations are not well pleaded if they are 'made

indefinite or erroneous by other allegations in the same complaint [, or] . . . are contrary to facts of

which the Court will take judicial notice.") (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51,

63 (2d Cir. 1971)). A surplus of documentary evidence exists in the judicial record from which the

Court can take judicial notice of Johnson's contradictory assertions. Indeed, it is plain that Johnson's

purported sexual harassment allegations only appeared – and have continued to expand – in an attempt

to avoid arbitration.

On August 9, 2022, Johnson submitted his sworn Charge of Discrimination to the Equal

Employment Opportunity Commission. (See Declaration of Lloyd B. Chinn ("Chinn Decl.") at Exhibit

A).[11]  In his Charge, Johnson "sw[ore] or affirm[ed] that [he] [] read the above charge and that it is true

to the best of [his] knowledge, information and belief." None of the purported sexual harassment

allegations contained in the First Amended Complaint – with the exception of Mrs. Yorio referring to

him as "not just a pretty face" and to a third-party investor as a "dick" – are found in his sworn Charge.

---

[11] Johnson's First Amended Complaint indicates he will file a Second Amended Complaint to allege claims under Title VII following his receipt of a Right to Sue Letter. (See doc. 29 at ¶ 32). Indeed, his counter-part Katherine Yost amended her First Amended Complaint to include claims under Title VII and the Americans with Disabilities Act. (See doc. 35 at p. 17 in Katherine Yost v. Everyrealm, et al.).

In fact, in Johnson's earliest description of his purported claims against Everyrealm, he made no mention whatsoever of sexual harassment.[12] It was not until after Everyrealm notified Johnson of its intent to enforce its right to arbitrate that Johnson began to assert that he had been subjected to sexual harassment.

Moreover, these latest allegations are also noticeably absent from Johnson's Opposition to the Everyrealm Defendants' Motion to Compel Arbitration, his Declaration in Support of his Opposition to the Everyrealm Defendants' Motion to Compel Arbitration, his Sur-reply to the Everyrealm Defendants' Reply in Support of its Motion to Compel Arbitration, his Declaration in Support of his Sur-reply to the Everyrealm Defendants' Reply in Support of its Motion to Compel Arbitration or his Motion for a Temporary Restraining Order and Preliminary Injunction. This is so, even though: (i) the Everyrealm Defendants made it plain from their earliest filing that they challenged the sufficiency of any purported sexual harassment claim (See doc. 9 at n. 2), (ii) the Court itself issued a September 16, 2022 Order providing in relevant part that, "it will evaluate the motion to compel arbitration under similar standards to a motion for summary judgment . . . and that Plaintiff should attach such materials as are necessary for the Court to resolve the Motion."  (Doc 22); and (iii) Johnson utilized these prior filings to assert and continually expand on his sexual harassment allegations, going as far as to allege he was somehow subjected to "improper fetishization of Black men." (See doc. 14 at ¶ 6).[13]  Johnson even discussed the South by Southwest Music Festival in a prior declaration, but never alleged he was subjected to sexual harassment while there. (See Doc. 27 at ¶ 3).

---

[12] In response to the Everyrealm Defendants' Motion to Compel Arbitration, Johnson referenced a "confidential letter to Defendants" in which he falsely stated he had "inform[ed] them **in detail of well-founded allegations of sexual harassment** and other misconduct." (See doc. 13 at p. 8) (emphasis added). That letter does not contain a single allegation of sexual harassment in reference to Mr. Johnson. (Chinn Decl. at Exh. B).

[13] That allegation is nowhere to be found in his First Amended Complaint.

In addition to the foregoing, Johnson's claims are contradicted by his own contemporaneous writings. Following his pre-hire video interview, where he was reportedly told he was "not just a pretty face" and was consequently "surprised and embarrassed", Johnson emailed Mrs. Yorio and described their meeting as a "sincere pleasure," and stated that Mrs. Yorio was a "leader that [he] can follow" and that "[he] would love to be a part of [her] team." (See doc. 17-1). In describing the alleged "dick" incident between Janine Yorio and the third-party investor Parker Berling ("Berling"), Johnson endorsed Mrs. Yorio's purported description of the investor: "[By the way] Janine[] [Yorio's] spidey senses were right about Parker [Berling]. A reliable source just told me Parker is being pushed out by their silent partner(s)." (See Declaration of Julia Schwartz ("Schwartz Decl.") at Exh. A). Johnson went so far as to state he would "never question Janine's spidey senses." (Id.) Indeed, Johnson believed Berling was in love with Mrs. Yorio, and didn't believe anyone "ha[d] ever called [Berling] out like that in front of his people before."  (See Declaration of Janine Yorio ("Yorio Decl.") at Exh. A). Johnson even responded to Mrs. Yorio's remark that "it's not [Berling's] fault, it's an ailment: BPD . . . bad personality disorder . . . [I] can't blame him," with "[i]t [sic] like my kids [sic] Mom, [Berling] didn't choose to be like this." (Id.)

Further, immediately following the purportedly traumatic South by Southwest Music Festival, Johnson wrote to Mrs. Yorio on March 16 and stated: "Just got to the crib in Vegas. Thank you so much for everything Janine, I really enjoyed being around you and learning from you and working with you. Not to mention the immense amount of fun and laughter. I truly feel like I'm part of a tribe that is on a special journey during a special time. I AM ALL IN. Thanks again!" (Yorio Decl. at Exh. B (emphasis in original)).[14]

---

[14] "[South by Southwest] took place from March 11 through March 20, 2022." (See doc. 29 at ¶ 53).

In response to Mrs. Yorio's purported inappropriate inquiry into Johnson's sex life, Katherine Yost wrote to Mrs. Yorio: "Look at you blaming yourself for Teyo['s] misogyny like you encouraged [it]. All you did was engage about a friend he introduced. We've been gaslit to believe we bring this all on. And it's horseshit." (Yorio Decl. at Exh. C). Moreover, in another June 2 conversation, Yost and Mrs. Yorio discussed Teyo Johnson's inappropriate commentary via Everyrealm's Slack Instant Messenger. (Yorio Decl. Exh. D). In the messages, Yost wrote, "[Johnson] is a misogynist that's evident." (Id.) Mrs. Yorio responded by stating, "when [Johnson] told everybody in the office (with disgust) that the girl who he was crashing with had her period (insinuating that he couldn't sleep with her as a result) that really put me off . . .that's across the line . . . ." (Id.) Yost replied, "I would have walked him out into the hall and slammed him . . . I don't care how big anyone is." (Id.) Yorio then wrote, "maybe I started it . . . I was calling [Johnson's date] 'dog in a bag.'" (Id.) Yost then responded, "[j]oking about a dog in a purse is not asking for sexual updates . . . It's gross and most people (humans) know not to do this . . . ." (Id.) The Court should give no weight to Johnson's demonstrably false claims.

Lastly, as to these latest allegations relating to the South by Southwest music festival, the evidence will show that while attending the festival, Johnson brought a woman to various evening events with whom he was occupied during the times of the alleged conversations between Mrs. Yorio and Johnson; and, that the alleged "KYP" game is a total (and very recent) fabrication by Johnson – it is apparently an acronym used in football and one that is completely foreign to Mrs. Yorio.

The Court should ignore the newest purported sexual harassment allegations in Johnson's First Amended Complaint. Indeed, authority within the Second Circuit permits this Court to do so. These contradictory claims are refuted by Johnson's prior filings with this Court, his sworn Charge of Discrimination, and all available documentary evidence.

21

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiff's claims for purported "sexual harassment". Consequently, the Court should compel all remaining claims to arbitration.

Dated: New York, New York
   November 2, 2022

       PROSKAUER ROSE LLP

     By:  */s/ Lloyd B. Chinn*

       Lloyd B. Chinn, Esq.
       Eleven Times Square
       New York, New York 10036-8299
       Ph. (212) 969-3000
       Fax (212) 969-2900
       lchinn@proskauer.com
       *Attorney for Everyrealm Inc.*
       *(f/k/a Republic Realm Inc.),*
       *Julia Schwartz, William Kerr, and Janine Yorio*