**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TEYO JOHNSON,

                Plaintiff,

      v.

EVERYREALM INC., COMPOUND ASSET
MANAGEMENT LLC, REALM METAVERSE
REAL ESTATE INC., REPUBLIC, REPUBLIC
CRYPTO LLC, REPUBLIC REALM MANAGER
LLC, REPUBLIC REALM INC., REPUBLIC
OPERATIONS LLC, OPENDEAL INC.,
OPENDEAL PORTAL LLC, WILLIAM KERR in
his individual and professional capacities, JANINE
YORIO, in her individual and professional capacities,
and JULIA SCHWARTZ, in her individual and
professional capacities.

                Defendants.

Index No. 1:22-cv-06669(PAE)(GWG)

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIM FOR SEXUAL HARASSMENT

**SEPPINNI LLP**
Shane Seppinni
43 W. 43rd St., Suite 256
New York, NY 10036

*Counsel for Plaintiff*

## <u>CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................... 1

LEGAL STANDARD.......................................................................................................... 2

ARGUMENT ................................................................................................................... 3

**I.    TEYO PLAUSIBLY PLED CLAIMS FOR SEXUAL HARASSMENT UNDER NYCHRL, NYSHRL, TITLE VII, AND COMMON LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS................................................................. 3**

    A. The Amended Complaint Plausibly Alleges Sexual Harassment Under NYCHRL and NYSHRL ................................................................................................. 3

        1.    The Sexual Harassment had its Impact in New York City and State ............. 4

        2.    Teyo Adequately Plead a Sexual Harassment Dispute under NYCHRL and NYSHRL................................................................................................. 13

    B. The Amended Complaint Plausibly Alleges Severe and Pervasive Sexual Harassment Under Title VII ................................................................................. 19

    C. The Amended Complaint Plausibly Alleges Intentional Infliction of Emotional Distress ....................................................................................................... 21

**II.   TEYO'S CLAIMS ARE NON-CONTRADICTORY AND MUST BE ACCEPTED AS TRUE.................................................................................................... 24**

CONCLUSION................................................................................................................ 25

# TABLE OF AUTHORITIES

**CASES**

*McCall v. Pataki,*
    232 F.3d 321 (2d Cir. 2000)................................................................................... 2

*Ragin v. New York Times Co.,*
    923 F.2d 995 (2d Cir. 1991).................................................................................. 2

*N.C. ex rel. M.C. v. Bedford Cent. Sch. Dist.,*
    348 F. Supp. 2d 32 (S.D.N.Y. 2004)...................................................................... 2

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)............................................................................................. 2

*Koch v. Christie's Int'l PLC,*
    699 F.3d 141 (2d Cir. 2012).................................................................................. 2

*Linar v. EL Valle 794 Rest., Corp.,*
    22-CV-3102 (JMF) (S.D.N.Y. June 21, 2022) ...................................................... 2

*DiFolco v. MSNBC Cable L.L.C.,*
    622 F.3d 104 (2d Cir. 2010).................................................................................. 3

*Fowler v. Scores Holding Co.,*
    677 F. Supp. 2d 673 (S.D.N.Y. 2009).................................................................... 3

*Chen-Oster v. Goldman, Sachs & Co.,*
    251 F. Supp. 3d 579 (S.D.N.Y. 2017)................................................................... 4

*McLeod v. Jewish Guild for the Blind,*
    864 F.3d 154 (2d Cir. 2017).................................................................................. 4

*Hoffman v. Parade Publ'ns,*
    15 N.Y.3d 285; 907 N.Y.S.2d 145; 933 N.E.2d 744 (2010) ........................... 4, 7

*Kraiem v. Jonestrading Institutional Servs.,*
    492 F. Supp. 3d 184 (S.D.N.Y. 2020)............................................. 4, 5, 6, 7, 10

*Brandenburg v. Greek Orthodox Archdiocese of N. Am.,*
    20-CV-3809 (JMF) (S.D.N.Y. June 1, 2021) ...................................................... 8

*Lambui v. Collins,*
    No. 14-CV-6457, 2015 WL 5821589 (E.D.N.Y, Sept. 30, 2015) ........................ 8

*Germano v. Cornell Univ.*, No. 03 Civ. 9766,
    2005 WL 2030355 (S.D.N.Y. Aug. 17, 2005) ..................................................... 8

*Salvatore v. KLM Royal Dutch Airlines*, No. 98- CV-2450 (LAP),
    1999 U.S. Dist. LEXIS 15551 (S.D.N.Y. Sept. 30, 1999) .................................... 8

*Syeed v. Bloomberg L.P.*,
    568 F. Supp. 3d 314 (S.D.N.Y. 2021) ................................................................ 10

*Regarding Pakniat v. Moor*,
    145 N.Y.S.3d 30 (N.Y.App.Div. 2021) ............................................................... 11

*Hardwick v. Auriemma*,
    116 A.D.3d 465; 983 N.Y.S.2d 509 (2014) ........................................................ 11

*Vangas v. Montefiore Med. Ctr.*,
    823 F.3d 174 (2d Cir. 2016) ............................................................................... 12

*Fried v. LVI Services, Inc.*, No. 10 Civ. 9308 (JSR),
    2011 WL 4633985 (S.D.N.Y. Oct. 4, 2011) ....................................................... 12

*BOKF, N.A. v. Caesars Entertainment Corp.*,
    144 F. Supp. 3d 459 (S.D.N.Y. 2015) ............................................................... 12

*Lowe v. Feldman*,
    11 Misc. 2d 8 (N.Y. Sup. Ct. 1957) ................................................................... 12

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013) ................................................................... 13, 14, 15

*Hernandez v. Kaisman*,
    957 N.Y.S.2d 53 (N.Y. App. Div. 2012) ...................... **Error! Bookmark not defined.**, 15

*Erasmus v. Deutsche Bank Americas Holding Corp.*,
    2015 WL 7736554 (S.D.N.Y. Nov. 30, 2015) .............................................. 14, 17

*Williams v. N.Y. City Hous. Auth.*,
    61 A.D.3d 62 (1st Dep't 2009)) .......................................................................... 14

*Gallagher v. AEG Mgmt. Brooklyn, LLC*, No. 16 Civ. 4779,
    2017 WL 2345658 (E.D.N.Y. May 30, 2017) ..................................................... 14

*McHenry v. Fox News Network, LLC*,
    510 F. Supp. 3d 51 (S.D.N.Y. 2020) ...................................................... 14, 16, 17

*Redd v. N.Y. Div. of Parole,*
    678 F.3d 166 (2d Cir. 2012)........................................................................ 15

*Alfano v. Costello,*
    294 F.3d 365 (2d Cir. 2002)........................................................................ 15

*Flieger v. E. Suffolk BOCES,*
    693 F. App'x 14 (2d Cir. 2017).................................................................... 15

*Campbell v. N.Y. City Transit Auth.,*
    662 F. App'x 57 (2d Cir. 2016).................................................................... 15

*Iannone v. Frederic R. Harris, Inc.,*
    941 F. Supp. 403 (S.D.N.Y. 1996) .............................................................. 19

*Patane v. Clark,*
    508 F.3d 106 (2d Cir. 2007)........................................................................ 19

*Schwapp v. Town of Avon,*
    118 F.3d 106 (2d Cir. 1997)........................................................................ 19

*Whidbee v. Garzarelli Food Specialties, Inc.,*
    223 F.3d 62 (2d Cir. 2000).......................................................................... 19

*Terry v. Ashcroft,*
    336 F.3d 128 (2d Cir. 2003)........................................................................ 19

*Littlejohn v. City of New York,*
    795 F.3d 297 (2d Cir. 2015)........................................................................ 20

*Harris v. Forklift Sys., Inc.,*
    510 U.S. 17; 114 S.Ct. 367; 126 L.Ed.2d 295 (1993)................................ 20

*Howley v. Town of Stratford,*
    217 F.3d 141 (2d Cir. 2000)........................................................................ 21

*Ruiz v. City of New York,*
    No. 14-CV-5231, 2015 WL 5146629 (S.D.N.Y. Sept. 2, 2015)................. 21

*Doe v. Doe,*
    2017 WL 3025885 (S.D.N.Y. July 14, 2017) ............................................ 22

*Bonner v. Guccione,*
    916 F. Supp. 271 (S.D.N.Y. 1996) ....................................................... 22, 23

*Scotto v. City of New York*,
     2019 WL 6701919 (S.D.N.Y. Dec. 9, 2019) ...................................................... 22

*Nigro v. Pickett*,
     39 A.D.3d 720; 833 N.Y.S.2d 655 (2007)...................................................... 22, 23

*LaRocca v. Collen IP, Intell. Prop. Law, P.C.*,
     2009 WL 10435869 (S.D.N.Y. May 6, 2009) ...................................................... 23

*Shapiro v. AEO/Ricoh, Inc.*,
     1997 WL 452026 (S.D.N.Y. Aug. 7, 1997)...................................................... 23

*Nicosia v. Amazon.com, Inc.*,
     834 F.3d 220 (2d Cir. 2016)...................................................... 24

*Faulkner v. Beer*,
     463 F.3d 130 (2d Cir. 2006)...................................................... 25

*Krijn v. Pogue Simone Real Estate Co.*,
     896 F.2d 687 (2d Cir. 1990)...................................................... 25

**STATUTES**

New York
     N.Y. Exec. Law § 300...................................................... 14

**FEDERAL RULES**

Federal Rules of Civil Procedure
     Rule 12...................................................... 25
     Rule 15...................................................... 25

Plaintiff Teyo Johnson submits this brief in opposition to Defendants' Motion to Dismiss Plaintiff's Claim of Sexual Harassment (dkt. no. 33).

## PRELIMINARY STATEMENT

Defendants have not moved to dismiss Teyo's sexual harassment-based retaliation claims. Therefore, this brief does not address retaliation based on sexual harassment. Defendants' concession by omission moots whether Teyo has pled a Sexual Harassment Dispute under the EFA. It is well-settled that sexual harassment-based retaliation claims are non-derivative and stand as a separate cause of action in New York. Still, a Sexual Harassment Dispute has also been affirmatively plead under theories of hostile work environment and quid pro quo harassment.

Defendants do not dispute that Teyo Johnson was present in Everyrealm's New York City office when much of the worst sexual harassment against him occurred. Therefore, the sexual harassment he endured had its impact in New York City under both the New York City and New York State Human Rights Laws ("NYCHRL" and "NYSHRL").

Instead, Defendants muddy the waters by improperly relying on evidence outside of the pleadings. Specifically, Defendants rely on self-serving statements (scrounged from a one-sided discovery process) that lack context and were neither incorporated into nor relied on in the Amended Complaint ("AC"). Tellingly, Defendants do not try to justify their inclusion of documents outside of the pleadings.

Having failed to support their motion on the merits, Defendants insult Teyo for working a manual labor job over a decade ago (Defs.' Mot. at 2),[1] and now have twice divulged Plaintiff counsel's confidential settlement demand, which was made upon Defendants' request, in their bad faith attempt to discredit Teyo. Whether Teyo has plausibly alleged sexual harassment does not turn on his work history nor the parties' settlement negotiations.

The Court should deny Defendants' motion to dismiss, and this Sexual Harassment Dispute should proceed to discovery in the as required by the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFA").

## **LEGAL STANDARD**

The party moving for dismissal must show that no claim has been stated. *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000); *Ragin v. New York Times Co.*, 923 F.2d 995, 999 (2d Cir. 1991); *N.C. ex rel. M.C. v. Bedford Cent. Sch. Dist.*, 348 F. Supp. 2d 32, 4 (S.D.N.Y. 2004). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When determining if a claim is plausible, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). And the Court, "is limited to 'the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint,' as well as any documents which the complaint relies upon so heavily that they are 'integral to the complaint.'" *Linar v. EL Valle 794 Rest., Corp.*, 22-

---

[1] After ending his professional football career, Teyo, like many ex-professional athletes, worked different jobs as he found his footing in the world outside of sports. One of those jobs was in manual labor. Nearly a decade ago, Teyo worked in the logging industry to support his family. He is proud of this work and rejects Defendants' implication that engaging in under-paid manual labor somehow makes one less deserving of a workplace free from harassment and discrimination. Teyo has attached the resume he submitted to Everyrealm, which contradicts their telling. Ex. A.

CV-3102 (JMF), at *1 (S.D.N.Y. June 21, 2022) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).  Employment claims on a motion to dismiss "need not contain specific facts establishing a prima facie case of employment discrimination," rather, the complaint must only be "facially plausible, and must give fair notice to the defendants of the basis of the claim." *Fowler v. Scores Holding Co.*, 677 F. Supp. 2d 673, 679 (S.D.N.Y. 2009).

## ARGUMENT

The Court should deny Defendants' motion to dismiss Teyo Johnson's sexual harassment claims. Defendants have failed to meet their burden because Teyo plausibly plead that:

1. All the sexual harassment either occurred in, or deprived Teyo of his specific right to work in, New York City and therefore had its impact on him there;

2. The harassment Teyo suffered is self-evidently based on his gender and sex; and

3. The constant sexual harassment that occurred during just 13 weeks at Everyrealm is severe and pervasive, especially when considered with Defendants' inextricable racist misconduct.

I.      **TEYO PLAUSIBLY PLED CLAIMS FOR SEXUAL HARASSMENT UNDER NYCHRL, NYSHRL, TITLE VII, AND COMMON LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Everyrealm has not shown that no sexual harassment claim has been pled. Teyo's 37-page AC sets forth numerous facts plausibly pleading legally sufficient claims for a Sexual Harassment Dispute. *See* AC ¶¶ 1-2, 40-117.

A.      **The Amended Complaint Plausibly Alleges Sexual Harassment Under NYCHRL and NYSHRL**

Defendants wrongly argue that Teyo failed to state claims under the NYCHRL and NYSHRL. First, the sexual harassment in the AC had its impact in New York City and state.

3

Second, the misconduct described in the AC does plausibly alleges unwanted gender based sexual harassment under NYCHRL and NYSHRL.

### 1. The Sexual Harassment had its Impact in New York City and State

"To succeed on a motion to dismiss, a defendant must show that there is no possibility that there was an impact in New York. [Defendants] have not." *Chen-Oster v. Goldman, Sachs & Co.*, 251 F. Supp. 3d 579, 594 (S.D.N.Y. 2017) (internal citations and quotations omitted). "[T]he NYSHRL and NYCHRL [] afford protections unavailable under federal law to discrimination plaintiffs who can 'plead and prove that the alleged discriminatory conduct had an impact' within the state and city respectively." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017) (citing *Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 289, 907 N.Y.S.2d 145, 933 N.E.2d 744 (2010)). "New York State courts lack subject matter jurisdiction over claims brought under the NYCHRL and the NYSHRL by a non-resident plaintiff, when the alleged discriminatory conduct did not have an 'impact' on the plaintiff within New York City (regarding the NYCHRL) and within New York State (regarding the NYSHRL)." *Hoffman,*15 N.Y.3d 285 at 289, 907 N.Y.S.2d 145, 933 N.E.2d 744. However, where some of a non-resident's harassment claims occurred while plaintiff and defendants were in New York City, as here, the "discriminatory conduct had an impact" in New York, at least regarding the misconduct that occurred in New York City or state. *See Kraiem v. Jonestrading Institutional Servs.*, 492 F. Supp. 3d 184, 195 (S.D.N.Y. 2020).

#### a. *Overwhelming Sexual Harassment Occurred in NYC*

Defendants outright ignore or downplay that the vast majority, of the sexual harassment in the AC occurred while the Parties were in NYC. The AC alleges copious sexual harassment in NYC. *E.g.* (harassment that began in Austin, TX regarding the KYP game continued in NYC:

4

"To Mr. Johnson, he and Ms. Yorio were colleagues and nothing more. He was her subordinate.

And yet, late at night, Ms. Yorio came to Mr. Johnson at their hotel and insinuated in no

uncertain terms that she believed he would, and even encouraged him to, cheat on his significant

other to participate in the company's KYP game. Mr. Johnson declined to participate in the KYP

game. Once Mr. Johnson and the company were back from SXSW and in the [NYC] office, Ms.

Yorio repeatedly asked Mr. Johnson if he had 'done' or would do 'any KYP.' Mr. Johnson

repeatedly informed Ms. Yorio that he had no interest in having sexual relationships with his

coworkers nor Everyrealm's potential business partners." (*Id*. ¶¶ 63-66); also in NYC, "While

Mr. Johnson was in the Everyrealm's [NYC] office, he was subjected to yet another sexually

harassing conversation regarding the KYP game that occurred between Ms. Yorio and

Everyrealm's Head of Gaming, Zachary Hungate. . .. All Mr. Johnson wanted to do was his job,

but even in the conversations that occurred around his desk [in NYC] he could not escape the

sexual harassment-filled toxic hostile work environment . . .." (*id* ¶¶ 67, 71); also in NYC, "Ms.

Yorio and Ms. Schwartz refused to acknowledge Mr. Johnson and instead gave him and his guest

dirty looks" at the company party in NYC before spreading sexually demeaning rumors about

them in the office the next day (*id*. ¶¶ 72, 75); also in NYC, "[In Everyrealm's NYC Office," Ms.

Yorio and Ms. Schwartz "repeatedly [made] fun of Mr. Johnson's girlfriend to Mr. Johnson and

to other Everyrealm employees in bullying and sexually harassing ways[,]" including telling

coworkers that Teyo and she did not have sex because she was menstruating (*id*. ¶¶ 78, 87); also

in NYC, "Ms. Yorio approached Mr. Johnson's desk and asked if he was late because he

'hooked up with Dog in a Bag?'" (*id*. ¶ 82); also in NYC, Ms. Yorio asked Mr. Johnson at the

office in New York if he "'got laid' the night before . . ." (*id*. ¶ 83); also in NYC, "Ms. Yorio

pried and repeatedly asked why Mr. Johnson and 'Dog in a bag' did not 'hook up[]'" (*id*. ¶ 85);

also in NYC, while Teyo was in the office, "Ms. Yorio told multiple people in the [NYC] office that Mr. Johnson was 'walking around telling people that 'Dog in a Bag is on the rag.'" (*Id.* ¶ 87); also in NYC, "Mr. Kerr called Mr. Johnson over for a meeting in Everyrealm's [NYC] office . . .when Mr. Kerr referred to an Everyrealm investor as 'A Night in Paris'" a derogatory nickname from "the revenge pornography film that leaked online involving Ms. Hilton[,]" which "continued through until [Teyo] was terminated." (*Id.* ¶¶ 97-106); and, finally, also in NYC, during "a meeting that occurred in Everyrealm's [NYC] office . . . Mr. Johnson was taken aback by [CEO Yorio's] discussion of genital size in the workplace." (*Id.* ¶¶ 109-110).[2]

This cavalcade of sexual harassment in New York City suffices to plausibly plead sexual misconduct that survives a motion to dismiss under the *Hoffman* impact test. *See Kraiem v. Jonestrading Institutional Servs.*, 492 F. Supp. 3d 184, 200 (S.D.N.Y. 2020).

The *Kraiem* case shows that the conduct described above more than suffices to establish that the discrimination had its impact on Teyo in New York City. There, the plaintiff was "admittedly a non-New York resident" and French citizen living in London "during the relevant time" who successfully alleged sexual harassment under the NYCHRL and NYSHRL despite only being in New York City for seven days, roughly similar and perhaps fewer than the number of days Defendants claim Teyo was present in New York City. *Id.* at 199. Teyo is also "admittedly a non-New York resident." *Id.* He lives in Nevada (AC ¶ 14) but worked physically in New York City for part of the roughly three months he worked at Everyrealm (*id.*), and his employment agreement lists his "**Primary Place of Work[]**" as Everyrealm's NYC office. Ex. B ¶ 5 (emphasis in original). The plaintiff in *Kraiem* alleged sexual harassment, most of which

---

[2] Defendants' own improper evidence submitted with their motion confirms that CEO Yorio was, in fact, calling Teyo's girlfriend "Dog in a Bag" and was, in fact, discussing her menstruation as it related to Teyo with other Everyrealm employees in New York City. *See* Defs.' Mot. at 21 ("I was calling [Johnson's date] 'dog in a bag.'")

occurred outside of New York City and state, unlike here where most occurred in NYC. The offending conduct in *Kraiem* that occurred in NYC consisted only of "two incidents at client dinners" of crude, sex-related commentary, and insults—not unlike, and in some instances much less severe than, the misconduct alleged by Teyo—and did not consist of unwanted touching, as here. *Kraiem v. Jonestrading Institutional Servs.*, 492 F. Supp. 3d 184, 200 (S.D.N.Y. 2020) 184, 191-2. Yet the court found that the *Kraiem* plaintiff had rightly asserted wrongful termination and retaliation based on sexual harassment under the NYCHRL and NYSHRL because "to the degree incidents of harassment or retaliation occurred while [plaintiff] was in New York City, the Court sees no reason those claims cannot proceed. At that time[,] [plaintiff] was 'within the state' and among 'those who work in the city.'" *Id*. at 200 (quoting *Hoffman v. Parade Publ'ns*, 15 N.Y.3d at 291, 907 N.Y.S.2d 145, 933 N.E.2d 744.")). The Court should apply the same reasoning here.

  The cases in which Defendants contend (incorrectly for *Brandenburg*) that courts found that infrequent or sporadic allegations of harassment in New York City failed to show impact in the city all involve less severe, less numerous, and less concentrated instances of harassment than Teyo's case, or were decided prior to 2009, when the NYCHRL did away with the severe and pervasive standard. In *Brandenburg*, the plaintiff filed an amended complaint that did not allege *any* harassment in New York City; instead, the plaintiff amended his pleadings to allege that plaintiff performed "tasks and duties" in New York city like "[t]raveling to Queens, New York, every week to take lessons on liturgical music[,]" and that defendants had called plaintiff from their NYC HQ and had one conversation there. Pltf.'s Am. Compl. at ¶¶ 20, 45, 47-48, 50, *Brandenburg v. Greek Orthodox Archdiocese of N. Am.*, 1:20-cv-3809, ECF no. 18. *These* were the "allegations" that the *Brandenburg* court found insufficient to confer jurisdiction under

7

NYCHRL, *not* sexual harassment allegations in NYC as Defendants wrongly imply (Defs.' Mot. at 16). *See Brandenburg v. Greek Orthodox Archdiocese of N. Am.*, 20-CV-3809 (JMF), at *12 (S.D.N.Y. June 1, 2021) ("And although the Amended Complaint does include a handful of allegations regarding Plaintiffs' work-related trips to New York City, *see* [Pltf.'s Am. Compl.] ¶ 20, and Defendants' conduct at the Archdiocese headquarters in New York City, *see id.* ¶¶ 45, 47-48, 50, these allegations, even taken together, show no more than a tangential relationship between [NYC] and the actions of which [Plaintiffs] complain[].") (Some internal citations and quotations omitted for brevity). Teyo's NYC allegations amount to significantly more than the drives into Queens that the *Brandenburg* plaintiff alleged. The remainder of Defendants' cases on this issue are unpersuasive too. *See* Defs. Mot. at 14-17 (*e.g., Lambui v. Collins,* No. 14-CV-6457, 2015 WL 5821589, at *5 (E.D.N.Y, Sept. 30, 2015) (minimal sexual advances made in New York but "vast majority of [] discriminatory and harassing conduct occurred on Long Island[]" unlike in the instant case); *Germano v. Cornell Univ.*, No. 03 Civ. 9766, 2005 WL 2030355, at *5 (S.D.N.Y. Aug. 17, 2005) (Plaintiff who alleged he was "pressured to retire" from job in Long Island at dinners and meetings in New York City, court skeptical that "such conduct constitutes discrimination[,]" pressuring someone to retire art dinner is self-evidently less severe than here and decided prior to 2009 when NYCHRL was under the out-of-date severe and pervasive standard); *Salvatore v. KLM Royal Dutch Airlines*, No. 98- CV-2450 (LAP), 1999 U.S. Dist. LEXIS 15551, at **52-53 (S.D.N.Y. Sept. 30, 1999) (a 23-year-old decision where the "substantial" vast majority of allegations occurred outside New York City, and were assessed under the severe and pervasive standard under Title VII, not the current NYCHRL).

Therefore, at a minimum, the sexual harassment that occurred in New York City had an impact within NYC and state respectively, and Teyo has successfully alleged a "Sexual Harassment Dispute" under the EFA.

> b. *Defendants' Sexual Harassment Deprived Mr. Johnson of His Expressly Agreed Upon Right to Work in NYC*

Defendants' sexual harassment that occurred while Teyo was outside of New York City impacted Teyo therein as well because Everyrealm designated "Manhattan" as Teyo's "**Primary Place of Work.**" Ex. B, Employment Agreement ¶ 5 (emphasis in original). Defendants concede that "Johnson carefully alleges he was 'assigned to Everyrealm's New York, New York office for at least two weeks per month . . ..'" Defs.' Mot., FN 9. The very terms that Defendants required as a condition of Teyo's employment with Everyrealm contemplate with specificity that Teyo was employed in New York City and therefore Defendants' harassment had its impact in New York City. This is in line with *Shiber v. Centerview Partners LLC*, which granted a motion to dismiss NYCHRL claims because "Here, Shiber points to no facts showing-with any specificity-that she one day would have been able to work in Centerview's New York City offices or that she relied on some promise of eventual in-person work. Shiber's allegations that Centerview had plans to re-open its offices-at some point-are insufficient to prove that she would have been required to work in person and, in any event, do not show that Shiber suffered an impact in New York City or New York State." 21 Civ. 3649 (ER), at *7 (S.D.N.Y. Apr. 20, 2022). Contrast *Shiber* with Teyo's case, in which *he does* point to facts showing with specificity that his "**Primary Place of Work[]**" was Everyrealm's "Manhattan office location at 335 Madison Venue . . .." AC ¶ 14 ("At the times relevant herein he worked in New York, New York . . . and Mr. Johnson was assigned to Everyrealm's New York, New York office for at least two

9

weeks per month."); Ex. B, Employment Agreement ¶ 5 ("**<u>Primary Place of Work.</u>** You will work in our Manhattan office location at 335 Madison Avenue two weeks per month, or 50% of the time, or at such other location as the Company may designate by written notice from time to time.") (Emphases in original). Everyrealm has not offered and cannot offer evidence to show that Defendants "designate[d] by written notice" any "such other location." *Id.*

  *Kraiem* is instructive here again. There, the plaintiff failed to "plead[] impact in New York by alleging[,] [inter alia] . . . negative effects on her future career prospects in New York." *Kraiem v. Jonestrading Institutional Servs.,* 492 F. Supp. 3d 184, 199 (S.D.N.Y. 2020). The court found that "with *Hoffman* and *Vangas* in mind, the Court finds th[is] . . . category of allegations bear no weight for Kraiem[]" because "[p]leading impact in New York City by *unspecified* future career prospects would also represent a [] impermissible broadening of the scope of [the NYCHRL and the NYSHRL]." *Id* (emphasis added). Unlike the *Kraiem* plaintiff, Teyo pled *specific* negative current career outcomes in New York because Defendants designated his "**<u>Primary Place of Work[]</u>**" as "Manhattan" and required as a condition of his employment that he agree to spend "50% of the time" in New York City. Ex. A ¶ 5 (emphasis in original).

  *Syeed v. Bloomberg L.P.*, which Defendants use to argue that Teyo failed to plead that impact was felt by him in New York City, confirms that Teyo successfully pled that the harassment's impact was felt in New York City. *Syeed* stands for the narrow proposition that "Contrary [to] . . . *Anderson, Chau*, and *Scalerico-Isenberg* — . . . being denied a promotion to a position in New York is [insufficient] to state a claim under the NYCHRL and NYSHRL [] where the plaintiff does not live or work in New York City or State." *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021). Teyo does not allege he was denied a promotion to a

position in NYC, let alone as his sole basis for claiming protection under NYCHRL and NYSHRL. Instead, he alleges that he worked in New York City and that his employer designated Manhattan as his "**Primary Place of Work.**" AC ¶ 14; Ex. B ¶ 5. *Syeed* and the cases it distinguishes do not prevent this Court from finding that the harassment alleged by Teyo did not have its impact in New York City. Regarding *Hoffman*, the *Syeed* court wrote, "According to *Hoffman*, that requirement would properly 'confine[ ] the protections of the NYCHRL to those who are meant to be protected—those *who work in the city.*'" (Emphasis added by court). Teyo did "work in the city" and Defendants deemed it his "**Primary Place of Work.**" Of *Vangas*, the *Syeed* court wrote, "In *Vangas*, the Second Circuit examined *Hoffman* and reiterated that '[u]nder the NYCHRL the impact of the employment action must be felt by the plaintiff in NYC.' Accordingly, the Second Circuit held that a plaintiff terminated by a New York City-based company could not state a claim under the NYCHRL where she 'worked in Yonkers, was supervised in Yonkers, was terminated in Yonkers, and **d[id] not allege that she ever went to NYC for work**.'" (Emphasis added). Teyo does allege that he "went to NYC for work." Regarding *Pakniat v. Moor*, 145 N.Y.S.3d 30, 31 (N.Y.App.Div. 2021), the *Syeed* court wrote ". . . *Pakniat* , 145 N.Y.S. 3d at 31 (holding that the plaintiff failed to state claims under the NYCHRL and NYRHL where the she was 'living and working in Montreal, Canada, at the time of the alleged discriminatory conduct and she failed to allege that the conduct had any impact in either New York State or New York City'). Unlike in *Pakniat*, Teyo was in New York City during much of the harassment and he alleges the additional harassment necessarily had its impact in New York because he was deprived of the right to work there every month, as was promised in his Employment Agreement. The *Syeed* court wrote regarding *Hardwick v. Auriemma*, 116 A.D.3d 465, 983 N.Y.S.2d 509, 512 (2014), "holding that the plaintiff failed to

11

show defendant's actions had an impact in New York when the actions were committed while plaintiff was in London." Teyo alleges copious actions that occurred while the parties were in New York City unlike in *Hardwick*. The few state court decisions that take the Impact Test "a step further" are out of step with the widely accepted view that physical presence is but one important consideration. *See Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 183 (2d Cir. 2016) (holding that the "impact of the employment action must be felt *by the plaintiff* in NYC[,]" (emphasis in original) not that the action itself must occur in NYC); *see also Fried v. LVI Services, Inc.,* No. 10 Civ. 9308 (JSR), 2011 WL 4633985, at *13 (S.D.N.Y. Oct. 4, 2011) ("[Plaintiff] must prove that the decision to terminate his *employment impacted him in New York City.* "), *aff'd* 500 Fed. Appx. 39 (2d Cir.2012).

Finally, Defendants have argued throughout this litigation that this Court should interpret Teyo's Employment Agreement with Everyrealm "broadly" to restrict Teyo's rights. But Defendants Motion to Dismiss now takes a different tack and asks the Court to ignore the Employment Agreement's plain, bold, and underlined, language altogether to find that Teyo's employment with Everyrealm does not have its impact in New York City. The facts and pleadings show otherwise. This Court should not rescue Defendants from their own drafting, nor from the well pleaded facts. *See BOKF, N.A. v. Caesars Entertainment Corp.*, 144 F. Supp. 3d 459, 470 (S.D.N.Y. 2015) ("[W]here the language of an agreement is unambiguous, courts must enforce the agreement according to the agreement's plain language: [I]f the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity. Here, the language of the [Employment Agreement] is clear, unequivocal and unambiguous and therefore must be enforced according to its terms.") (Internal quotations omitted); *see also, Lowe v. Feldman*, 11 Misc. 2d 8, 17-18 (N.Y. Sup. Ct.

1957) ("If the parties to a contract adopt a provision which contravenes no principle of public policy and contains no element of ambiguity, the courts have no right to relieve one of them from disadvantageous terms which he has actually made, by a process of interpretation.")

The fact that Teyo actually worked in New York City and his Employment Agreement specifically lists NYC as his "**Primary Place of Work[]**" are both irrebuttable proof that all of Defendants' sexual harassment had its impact on Teyo in New York City and state. Defendants proffered evidence that Teyo did not spend half of the mere 13 weeks he spent with Everyrealm is similarly unconvincing. It would be an untenable outcome indeed if New York employers could opt out of employment agreements and New York City and state law by simply by failing to live up to the agreements that they drafted.

### 2. Teyo Adequately Plead a Sexual Harassment Dispute under NYCHRL and NYSHRL

Prior to this dispute, Defendants agreed that all the conduct described in the AC constitutes sexual harassment. *See* AC ¶ 52 (Defendants' employee handbook sexual harassment definition). The New York City Commission on Human Rights' Notice of Employee Rights under NYCHRL poster concurs. *See* Exs. C ("sexual harassment, a form of gender-based discrimination, is unwelcome verbal or physical behavior based on a person's gender."). Now, facing liability for their misconduct, Defendants argue the conduct herein is petty and trivial. "As with most affirmative defenses, the employer has the burden of proving the conduct's triviality under the NYCHRL." *Mihalik*, 715 F.3d at 111. And in weighing both "the plaintiff's claim and the defendant's affirmative defense, courts must consider the 'totality of the circumstances'" without ignoring the "overall context in which [the challenged conduct occurs]." Id. (alteration in original) (quoting *Hernandez v. Kaisman*, 103 A.D.3d 106, 115 (N.Y. App. Div. 2012)). Indeed,

under the NYCHRL "even a single comment may be actionable in the proper context." Id. at 113

(citing *Williams v. N.Y. City Hous.* Auth., 61 A.D.3d 62, 78 & n. 30 (1st Dep't 2009).

As this Court wrote in *McHenry v. Fox News Network, LLC*, "The NYCHRL's standards

for liability for sexual harassment are more permissive than those of . . . Title VII. Unlike Title

VII . . ., the NYCHRL does not require a plaintiff claiming sexual harassment to prove that the

conduct was severe and pervasive, requiring only that the plaintiff demonstrate she was subjected

to "unwanted gender-based conduct." *Erasmus v. Deutsche Bank Americas Holding Corp.*, No.

15 Civ. 1398, 2015 WL 7736554, at *7 (S.D.N.Y. Nov. 30, 2015) (Engelmayer, J.) (quoting

*Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 76, 872 N.Y.S.2d 27 (1st Dep't 2009)); *see*

*Gallagher v. AEG Mgmt. Brooklyn, LLC*, No. 16 Civ. 4779, 2017 WL 2345658, at *7 (E.D.N.Y.

May 30, 2017) (at the motion to dismiss stage, a plaintiff need only proffer evidence of unwanted

gender-based conduct). The plaintiff need only demonstrate by a preponderance of the evidence

that [he] has been treated less well than other employees because of [his] gender. However,

district courts must be mindful that the NYCHRL is not a general civility code. *McHenry v. Fox*

*News Network, LLC*, 510 F. Supp. 3d 51, 65-66 (S.D.N.Y. 2020) (some internal citations and

quotations omitted for brevity). "In August 2019, the NYSHRL was amended to direct courts to

construe the NYSHRL, like the NYCHRL, 'liberally for the accomplishment of the remedial

purposes thereof, regardless of whether federal civil rights laws including those laws with

provisions worded comparably to the provisions of [the NYSHRL] have been so construed.' *Id*.

(quoting N.Y. Exec. Law § 300). at 68. So, this opposition analyzes the NYCHRL and NYSHRL

claims at once.

Other Hostile work environment claims have been held to meet the pleadings standard

not only of the NYCHRL and NYSHRL, but in some instances the more demanding Title VII.

14

*See Corradino v. Liquidnet Holdings, Inc.*, 19 Civ. 10434 (LGS), at *10 (S.D.N.Y. July 8, 2021) ("The Complaint alleges more than a few isolated, off-color comments," including asking plaintiff to engage in sex and/or a relationship despite Plaintiff's refusals to do so, looking at Plaintiff in a sexual manner, and during corporate lunches and parties he **discussed his sex life** and used lewd language in front of Plaintiff . . ." and other similar interactions with other employees); *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 105 (2d Cir. 2013) (on Sum. Judg., "[A]lleging that her supervisor ran the office like a "boys' club," subjecting her to sexually suggestive comments and twice propositioning her for sex. She alleges that when she refused his sexual advances, he retaliated by berating her in front of other employees and ultimately firing her. . .. [T]he district court erred in its application of the NYCHRL. Because Mihalik presented sufficient evidence to show there are genuine disputes of material fact regarding both her claims. . .;" *Hernandez v. Kaisman*, 103 A.D.3d 106, 115 (N.Y. App. Div. 2012) (isolated mildly offensive emails deemed sufficient within context of other sexual comments regarding gender).

Similarly, Teyo's allegations are pled with enough specificity, numerosity, and clarity to plausibly plead hostile work environment under NYCHRL where other plaintiffs have fallen short. *See Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 175-76 (2d Cir. 2012) ("Isolated incidents usually will not suffice to establish a hostile work environment.") (internal quotation marks omitted); *Alfano v. Costello*, 294 F.3d 365, 378-79 (2d Cir. 2002) (five incidents of harassment over four years were insufficient to support a hostile work environment claim); *Flieger v. E. Suffolk BOCES*, 693 F. App'x 14, 19 (2d Cir. 2017) (summary order) (holding that a "single comment" was not so severe as to support a claim for hostile work environment); *Campbell v.*

*N.Y. City Transit Auth.*, 662 F. App'x 57, 60 (2d Cir. 2016) (summary order) (holding that two isolated incidents of harassment were insufficient to establish a hostile work environment).

Attempting to minimize their misconduct, Defendants argue that Teyo does not "allege any facts to indicate that Mrs. Yorio's or Mr. Kerr's comments were made because of Johnson's gender." Defs. Mot. Dis. at 7. But all of Teyo's sexual harassment allegations at the least contain "an implicit reference to gender." *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 70 (S.D.N.Y. 2020). For example, CEO Yorio told Teyo that "she 'know[s]' that he is in a relationship 'right now' but that she thought he 'would cheat on [his girlfriend] if the opportunity arises,' insinuating that she believed, without evidence, that Mr. Johnson was promiscuous" (AC ¶ 61)—it is a stereotypical prejudice to presume that Black *men* are promiscuous. *See* Davis, Gary L.; Cross, Herbert J. (1979). *"Sexual stereotyping of Black males in interracial sex".* Archives of Sexual Behavior. 8 (3): 269–279. Ms. Yorio's repeated aggressive use and discussion of "Big Swinging Dick" and "dick" is also in plain reference to the male sexual organ. *See* AC ¶¶ 2, 109, 112.

Next, Defendants baldly state, "Nor does [Teyo] allege Mrs. Yorio, Ms. Schwartz, or Mr. Kerr ever propositioned him for sexual or otherwise inappropriate encounters." This is easily disproved. Teyo alleges that CEO Yorio "was inappropriately 'testing the waters' with him" and that when Ms. Yorio confronted him at his hotel, she "told him that she 'know[s]' that he is in a relationship 'right now' but that she thought he 'would cheat on [his girlfriend] if the opportunity arises[.]" AC ¶¶ 61-62. Teyo further pleads that "**To Mr. Johnson, he and Ms. Yorio were colleagues and nothing more**. He was her subordinate. **And yet**, late at night, **Ms. Yorio came to Mr. Johnson at their hotel** and insinuated in no uncertain terms that she believed he would, and even encouraged him to, cheat on his significant other to participate in the company's KYP

16

game." *Id.* ¶¶ 63 (emphasis added). Teyo's "communications, as pled, are readily construed to reflect sexual advances and propositions, albeit unusually crude and clumsy ones, towards [him]." *Id.* Regardless, the NYCHRL and NYSHRL "do not require that the defendant have had a romantic interest in the plaintiff, but only that [they] subjected [him] to 'unwanted gender-based conduct." *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 70 (S.D.N.Y. 2020) (Engelmayer, J.) (quoting *Erasmus*, 2015 WL 7736554, at *7). The AC makes clear that all the sexual harassment Teyo endured was unwanted and gender based. Defendants "will be at liberty to defend against these claims at summary judgement and/or trial by demonstrating, if true, that [they]" bullied, harassed, and "and made similar sexual advances to their [women and non-binary] colleagues. But neither the AC nor the materials cognizable on [Defendants'] motion to dismiss so establish." *Id.* at 70-71. Defendants do not, for example, argue that CEO Yorio "tested the waters" with women at Everyrealm. *Id.* ¶ 62.

Defendants also wrongly contend that this Court's decision in *Erasmus* dooms Teyo's claims of unwanted gender-based misconduct. This Court addressed a nearly identical misapplication of *Erasmus* by defendants in *Cano v. SEIU Local 32BJ.* 19 Civ. 8810 (S.D.N.Y. Sep. 30, 2021) (Engelmayer, J.). The "substantial doubts" this Court expressed in *Erasmus* over whether the "the Co-worker's behavior, as alleged, would qualify as 'unwanted gender-based conduct[]'" under the NYCHRL were not, as Defendants misrepresent, simply because the comments might have been insufficiently severe. *Erasmus v. Deutsche Bank Americas Holding Corp.*, 15 Civ. 1398, at *14 (S.D.N.Y. Nov. 30, 2015) (Engelmayer, J.). In "[*Erasmus*], comments and gestures made by the plaintiff's co-worker were 'crude,' but not as severe as the overtly racist ones Cano alleges here; the incidents were dispersed over a four-year period in contrast to the compact few-months period here; and the plaintiff failed to allege that the

17

coworker's conduct was imputable to the employer defendant. Here, by contrast, Cano alleges that his superiors both knew about his coworker's, and participated in their own, racially motivated harassment." *Cano v. SEIU Local 32BJ*, 19 Civ. 8810, at *12 (S.D.N.Y. Sep. 30, 2021) (Engelmayer, J.) (internal citations to the record omitted). Teyo's facts are more analogous to the facts in *Cano* than *Erasmus.* Here, CEO Yorio spread sexually vulgar workplace rumor's about Teyo's sex life and his girlfriend's menstrual cycle (AC ¶¶ 51-88), the CEO of Everyrealm told Teyo she believed he would cheat on his girlfriend if given the opportunity—a clear nod to racist beliefs about the "promiscu[ity]" of Black men (*Id*. ¶ 61), and Everyrealm's General Counsel exclusively referred to Teyo's client with him by the name of a derogatory pornography film (*id*. ¶¶ 97-106), all of which is much more severe than the sporadic comments and gestures alleged in *Erasmus*. This is but a small sample of the harassment alleged in the AC. The harassment here occurred over a "compact few-months" like in *Cano* rather than "over [the] four-year period" in *Erasmus*. Teyo also alleges that the harassment was at the hands of the CEO, General Counsel, and his manager (i.e., his superiors) like the plaintiff in *Cano* rather than only by a co-worker like the plaintiff in *Erasmus*. And this Court explicitly did not analyze the facts of *Erasmus* using the NYCHRL standard.  This Court makes clear in *Erasmus* that the plaintiff merely listed isolated "crude" incidents and made numerous other "conclusory an unspecific" allegations. *Erasmus v. Deutsche Bank Americas Holding Corp.*, 15 Civ. 1398, at *11-12 (S.D.N.Y. Nov. 30, 2015) (Engelmayer, J.). Teyo, by contrast, pleads many detailed instances of sexual harassment over just a 13-week period by CEO Yorio, General Counsel Kerr, and Board Member/manager Schwartz. *See, e.g.,* AC ¶¶ 1-2, 40-117, 91-92 ("Mr. Johnson sat in silence during this sexually harassing commentary and hoped it was a one-off event and that Ms.

18

Yorio would stop. Ms. Yorio did not stop.") The allegations in *Erasmus* therefore pale in comparison to the detailed and near-constant instances of sexual harassment described in the AC.

Teyo has plausibly pled both hostile work environment and quid pro quo sexual harassment under the NYCHRL and the NYSHRL.

**B.** **The Amended Complaint Plausibly Alleges Severe and Pervasive Sexual Harassment Under Title VII**

Defendants would have this Court believe that short of a violent sexual assault, there is no basis for plausibly pleading a hostile work environment claim under Title VII's "severe and pervasive" standard. This ignores the longstanding law in this district. *See Iannone v. Frederic R. Harris, Inc.*, 941 F. Supp. 403, 410–11 (S.D.N.Y. 1996) ("[S]exual harassment is not limited to unwanted physical touching; it can also consist of the display of obscene visual representations or the communication of sexually offensive remarks.").

To survive a Rule 12(b)(6) motion on a Title VII claim of Hostile Work Environment, a "plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse,' and 'we have repeatedly cautioned against setting the bar too high' in this context. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (citations omitted). Notably, while a few isolated slurs may not suffice, *see Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997), the repeated use of certain clearly offensive and abusive language can create a hostile work environment, *see Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000). "The environment need not be unendurable or intolerable"" to be a hostile work environment. *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (citation and quotation marks omitted). "To establish a hostile work environment . . ., a plaintiff must show

19

that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

Defendants claim that Teyo was only subject to isolated incidents of sexual harassment, and they downplay and elide their severity and numerosity. Defendants misrepresent the facts as plead. Teyo pleads that from his preemployment interview through to when he was fired, he was subject to harassing comments from CEO Yorio and others (*See* AC ¶¶ 2, 40-117), questioned by CEO Yorio about whether he had had sex the night before upon arriving in the NYC office (*id*. ¶¶ 72-88), repeatedly questioned by CEO Yorio about why he had not had sex that was unrelenting until he gave in and answered (*id*. ¶¶ 82-87), confronted by CEO Yorio and told that she believed he would cheat on his significant other (*id*. ¶ 61), that rumors were spread about Teyo's sex life at work that included using bullying nicknames to describe his girlfriend and her menstrual cycle (*id*. ¶¶ 87-88), that he was pressured repeatedly to participate in two different sex-games with the CEO, colleagues, and clients (*id*. ¶¶ 55-71), he had to listen while CEO Yorio theorized about her co-founders and other colleagues' sexual preferences and behaviors at work events (*id*. ¶¶ 89-96), he was made to be the butt of harmful racist stereotypes about Black men during this harassment including being wrongfully accused of being late and promiscuous (*id*. ¶¶ 61, 82), he was compelled to conduct his work in the face of the repeated sexually derogatory slurs used by the General Counsel Kerr (*id*. ¶¶ 97-106), CEO Yorio admits that she revels in her use of "vulgar" language at work and that "it won't be the last time" she refers to men in the office repeatedly and unabashedly by the sexually derogatory term "pussy," (*id*. ¶ 2),

20

and that CEO Yorio "test[ed] the waters" with Teyo to determine if he would have intercourse with her (*id*. ¶ 62). This is on top of all the racist commentary that closely followed Teyo's refusal to play the KYP sex game and cheat on his girlfriend with CEO Yorio, including comments by Ms. Yorio threatening to "trade" him and that he was "expensive" implying that Ms. Yorio thought she owned Teyo (*id*. ¶¶ 2, 145-147, 159), and multiple instances of Ms. Yorio referring to Teyo as "stupid" or "a stupid Black person." (*Id*. ¶¶ 2, 155-157). Teyo was also made to endure at least ten instances of CEO Yorio referring to men by "dick," "fucking dick," or "Big Swinging Dick" at work and was then forced to apologize on CEO Yorio's behalf. I*d*. ¶¶ 2, 107-117. The idea that this full page of harassment allegations is not severe and pervasive is preposterous. And, again, this all occurred over just 13 weeks. Cases with less severe and less numerous allegations have survived a motion to dismiss. *See, e.g., Corradino v. Liquidnet Holdings, Inc.*, 19 Civ. 10434 (LGS), at *10 (S.D.N.Y. July 8, 2021) (discussed *supra* at 16-17); *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (finding a valid Title VII hostile-work-environment claim based on one incident in which the plaintiff's supervisor made a long, sexually explicit tirade against the plaintiff in front of a group); *Ruiz v. City of New York* , No. 14-CV-5231, 2015 WL 5146629, at *9 (S.D.N.Y. Sept. 2, 2015) (holding that Title VII hostile work environment claim survived motion to dismiss where the plaintiffs alleged that they were not allowed to speak Spanish, received more discipline than non-minority colleagues, and were the subject of an offensive text and graffiti.)

### C. The Amended Complaint Plausibly Alleges Intentional Infliction of Emotional Distress

Defendants address Plaintiff's sexual harassment claim of Intentional Infliction of Emotional Distress in Footnote 5 of their brief. After a review of the record and Defendants'

arguments, Teyo will pursue IIED claims only against Defendants CEO Yorio and Everyrealm. To prevail under the tort of intentional infliction of emotional distress ("IIED"), a plaintiff must prove four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress."  Doe v. Doe, 16-cv-0332, 2017 WL 3025885, at *4 (S.D.N.Y. July 14, 2017) (internal citations omitted). The conduct proscribed by IIED is "as limitless as the human capacity for cruelty."  Id. at *4.  A plaintiff can prevail on an IIED claim by showing she was "the target of a planned program of harassment or threats, accompanied by vindictiveness, taunting or derision."  *Bonner v. Guccione*, 916 F. Supp. 271, 277 (S.D.N.Y. 1996) (internal quotations omitted).

Defendants only dispute the first element of "extreme and outrageous conduct." Defs.' Mot. at FN 5. Teyo has sufficiently pled extreme and outrageous conduct sufficient to survive a motion to dismiss on his IIED claim, the facts of which are in detail *supra* at 20-21.  He alleges that Defendants verbally humiliated him, subjected him to months of lewd and harassing conversations and accusations, and distributed rumors to Teyo's colleagues about his sex life and his girlfriend's menstruation. *See* AC ¶¶ 2, 40-117, 201-205. Spreading false allegations about a coworker to damage his career meets the extreme and outrageous element at the motion to dismiss stage.  *See Scotto v. City of New York*, 18-cv-04228, 2019 WL 6701919, at *8 (S.D.N.Y. Dec. 9, 2019) (complaint alleged that defendant made false statements that the plaintiff was medically unfit to perform his job); *see also Nigro v. Pickett*, 39 A.D.3d 720, 721–22, 833 N.Y.S.2d 655, 656 (2d Dept. 2007) (reversing summary judgment for defendant on IIED claim as plaintiffs alleged that defendant threatened to publicize a false sexual harassment allegation). Moreover, "when the actor's conduct is extraordinarily vindictive, it may be regarded as so

extreme and so outrageous as to give rise to a cause of action for emotional distress." Id. at *5.

Defendants circulated false and sexually explicit rumors regarding Teyo vindictively, to punish

him for rejecting Ms. Yorio's racist, vulgar, and albeit clumsy unwanted sexual advances that

contribute to the plausibility of this claim. *E.g.*, AC ¶ 62 ("Mr. Johnson was mortified and

dismayed. It was apparent to him that Ms. Yorio, the CEO of his new employer who had told

him during his interview that "he was more than just a pretty face," was inappropriately "testing

the waters" with him[]"); ¶ 2 ("Spreading sexually harassing rumors through Everyrealm about

Mr. Johnson's sex life and his then-girlfriend's menstruation").

Moreover, contrary to Defendant's contention, sexual advances and verbal harassment

can meet the first element of an IIED claim.  "There is no question that in New York sexual

harassment can give rise to a claim for intentional infliction of emotional distress." *Bonner*, 916

F. Supp. at 276.  In *Bonner*, the district court held that the plaintiff had stated an IIED claim

sufficient to survive a motion to dismiss after she alleged Defendant berated her at the office

including calling her "incompetent" and "weird," and referring to her work as "pieces of shit."

*See id*. at 277-278. This conduct pales in comparison to CEO Yorio referring to Teyo as "a

stupid Black person," and "not smart" on at least two occasions and telling others in the office

that he and his girlfriend did not have sex because "Dog in a Bag is on the rag[,]" let alone the

additional misconduct in the AC. AC ¶¶ 2, 155-161, 79-88. Other cases in this district have also

found that claims of sexual advances were enough to survive an IIED dispositive motion. *See,*

*e.g., LaRocca v. Collen IP, Intell. Prop. Law, P.C.*, 08-cv-6274, 2009 WL 10435869, at *3

(S.D.N.Y. May 6, 2009) (holding that allegations that the defendant made sexual comments

towards her, asked her about her sex life, and attempted to kiss her were sufficient to survive

defendants' motion to dismiss plaintiff's IIED claim); *Shapiro v. AEO/Ricoh, Inc.*, 96-cv-7274,

1997 WL 452026, at *5 (S.D.N.Y. Aug. 7, 1997) (holding that "in light of the allegations of sexually explicit remarks, looks and innuendoes, touching and a purported effort to persuade [plaintiff] to resign, there exists a genuine issue of material fact as to whether the alleged statements and behavior directed toward Shapiro rise to the level of being extreme and outrageous."). It is impossible to determine whether IIED has been plausibly pled in this case without also considering Defendants' "repeated references at work in front of others to the odious idea that [CEO Yorio] own[ed] Mr. Johnson on account of his race." AC ¶ 202. Viewing all the allegations together, Defendants Yorio and Everyrealm campaign to sexually harass and then vindictively punish Teyo for opposing her advances and cruel statements about owning him states a cause of action for IIED sufficient to survive the motion to dismiss stage.

## II.       TEYO'S CLAIMS ARE NON-CONTRADICTORY AND MUST BE ACCEPTED AS TRUE

Everyrealm improperly relies on extrinsic materials throughout its brief. These extrinsic materials are not part of the complaint nor subject to judicial notice and therefore cannot be considered on a Rule 12(b)(6) motion. In deciding whether to dismiss a claim under Rule 12(b)(6), the court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which the judge may take judicial notice. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 234 (2d Cir. 2016). This is not the first time that Defendants have ignored the rules and brought improper and untimely evidence or arguments before this Court. *See* dkt. 18 (requesting surreply to address new arguments Defendants raised on Reply). Factually disputed documents cannot be used in connection with a Rule 12(b)(6) motion. A document that is referenced in the complaint but not attached to it may be considered on a motion to dismiss under Rule 12(b)(6) if the authenticity of the document is

not disputed. *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). Defendants' reliance on disputed documents that were not integral to nor attached to the AC is therefore improper and should be ignored.

A review of the complete record—the facts alleged in the complaint, the documents attached to the complaint, and the records subject to judicial notice—establishes that Teyo has stated plausible claims for relief.[3] These materials are all properly considered by the court on a Rule 12(b)(6) motion.

Finally, Defendant alleges that Teyo pleads contradictory facts but offers no support from the operative AC to support this contention. Instead, Defendants sneakily cite to the Complaint in this case, not the operative *Amended* Complaint that contains no such language, to claim that Teyo alleges he was "discharged 'solely on account of his race.'" While Defendants might disagree with this Court's decision to order leave for Teyo to amend his Complaint and with FRCP 15(a), they cannot pretend that anything besides the Amended Complaint is the operative Complaint for their motion to dismiss. *See* dkt. no 28 (Order setting deadlines for amended sexual harassment allegations and this briefing).

## CONCLUSION

The Court should therefore deny Defendants' motion to dismiss the sexual harassment claims and move promptly to begin discovery in this matter.

---

[3] This motion can be decided without relying on Defendants improper extrinsic materials, but to the extent that the Court determines otherwise, when a court converts a Rule 12(b)(6) motion to dismiss into a motion for summary judgment, the court must make sure that all parties are given a reasonable opportunity to present materials that are pertinent to a summary judgment motion. Fed. R. Civ. P. 12(d); *Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 689 (2d Cir. 1990) (explaining that all parties must be provided a reasonable opportunity to provide facts outside of the pleadings when a Rule 12(b)(6) motion is converted to summary judgment). Teyo must therefore be provided notice, discovery, and a reasonable opportunity to respond to a summary judgment motion.

**Dated:** November 16, 2022
New York, New York

Respectfully submitted,

_/s/ Shane Seppinni_

Shane Seppinni
Seppinni LLP
43 W 43rd St., Suite 256
New York, NY 10036
212-849-7000
shane@seppinnilaw.com

_Counsel for Plaintiff_