**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TEYO JOHNSON,<br><br>                          Plaintiff,<br><br>          v.<br><br>EVERYREALM INC., COMPOUND ASSET<br>MANAGEMENT LLC, REALM METAVERSE<br>REAL ESTATE INC., REPUBLIC, REPUBLIC<br>CRYPTO LLC, REPUBLIC REALM MANAGER<br>LLC, REPUBLIC REALM INC., REPUBLIC<br>OPERATIONS LLC, OPENDEAL INC.,<br>OPENDEAL PORTAL LLC, JULIA SCHWARTZ,<br>in her individual and professional capacities,<br>WILLIAM KERR, in his individual and professional<br>capacities, and JANINE YORIO, in her individual<br>and professional capacities,<br><br>                          Defendants. | Index No. 1:22-cv-006669(PAE) |

**BRIEF OF AMICI CURIAE PUBLIC JUSTICE, AMERICAN
ASSOCIATION FOR JUSTICE, NATIONAL WOMEN'S LAW
CENTER, NATIONAL EMPLOYMENT LAWYERS ASSOCIATION,
RAINN, RISE, AND LIFT OUR VOICES IN SUPPORT OF PLAINTIFF**

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 7.1, amici curiae Public Justice, American Association for Justice, National Women's Law Center, National Employment Lawyers Association, RAINN, Rise, and Lift Our Voices are all non-profit entities that have no parent corporation. No publicly held corporation holds 10% or more of any stake or stock in amici curiae.

Dated: December 7, 2022

/s/ Shelby Leighton
Shelby Leighton
Public Justice
*Counsel for Amici Curiae*

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................................... i

TABLE OF AUTHORITIES ................................................................................. iii

INTERESTS OF AMICI CURIAE .......................................................................... 1

INTRODUCTION ............................................................................................. 3

ARGUMENT .................................................................................................. 5

I.      Whether EFASASHA Applies Is Determined from the Face of the Complaint ................ 5

II.     The Phrase "Sexual Harassment Dispute" in EFASASHA Was Intended to Have a Broad
        Scope ............................................................................................... 9

III.    "Sexual Harassment" Is Not Limited to Harassment Based on Sexual Desire ................ 11

IV.     Entire Cases—Not Just Individual Claims—That Relate to Sexual Harassment Are
        Exempt from Arbitration Under EFASASHA ................................................... 13

CONCLUSION ............................................................................................. 18

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Amaya v. Ballyshear LLC,*
   295 F. Supp. 3d 204 (E.D.N.Y. 2018) ...................................................................13

*AmBase Corp. v. City Investing Co. Liquidating Trust,*
   326 F.3d 63 (2d Cir. 2003)...................................................................................17

*Bostock v. Clayton Cnty., Ga.,*
   140 S. Ct. 1731 (2020).................................................................................12, 13

*Burke v. Lash Work Environs, Inc.,*
   408 F. App'x 438 (2d Cir. 2011) ..........................................................................8

*Caterpillar Inc. v. Williams,*
   482 U.S. 386 (1987)..............................................................................................6

*Coleman v. Estes Exp. Lines, Inc.,*
   631 F.3d 1010 (9th Cir. 2011) ..........................................................................6, 7

*Crawford v. ExlSAervice.com, LLC,*
   No. 16 Civ. 9137(LAP), 2019 WL 5887214 (S.D.N.Y. Nov. 12, 2019) ...........9-10

*DeGraffenreid v. General Motors,*
   413 F. Supp. 142 (E.D. Mo. 1976)......................................................................16

*Kaytor v. Electric Boat Corp.,*
   609 F.3d 537 (2d Cir. 2010).................................................................................12

*Moore v. Hughes Helicopter,*
   708 F2d 475 (9th Cir. 1983) ................................................................................16

*Morgan v. Sundance,*
   142 S. Ct. 1708 (2022)............................................................................................1

*Oncale v. Sundowner Offshore Servs., Inc.,*
   523 U.S. 75 (1998)..........................................................................................12-13

*Payne v. Travenol,*
   673 F.2d. 798 (5th Cir. 1982) ..............................................................................16

*Simmons v. Himmelreich,*
   578 U.S. 621 (2016)..............................................................................................14

*Tyler v. Uber Techs., Inc.,*
   No. CV 19-3492 (ABJ), 2020 WL 5569948 (D.D.C. Sept. 17, 2020)....................17

**Statutes**

9 U.S.C. § 401(4) ..................................................................................................4, 6, 9, 12

9 U.S.C. § 402 .................................................................................................................4

9 U.S.C. § 402(a) .................................................................................................4, 6, 13

28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb) ...............................................................................6

Pub. L. No. 117-90, 136 Stat. 26, 9 U.S.C. §§ 401-402 ...........................................4, 13

**Legislative Materials**

Carrie's Law, H.R. 2906, 117th Cong. § 402(b)(2)(A) (Apr. 30, 2021) ..........................7

Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021,
     H.R. 4445, 117th Cong. § 401(4) (July 16, 2021) ............................................. 11-12

Resolving Sexual Assault and Harassment Disputes Act of 2021,
     S.3143, 117th Cong. (2021) ........................................................................................15

168 Cong. Rec. H991 (daily ed. Feb. 7, 2022) (statement of Rep. David Scott)............12

168 Cong. Rec. H992 (daily ed. Feb. 7, 2022) (statement of Rep. Jerrold Nadler)........9

168 Cong. Rec. S625 (daily ed. Feb. 10, 2022) (statement of Sen. Joni Ernst)............15

168 Cong. Rec. S626 (daily ed. Feb. 10, 2022) (statement of Sen. Richard Durbin)........6, 7, 8, 15

168 Cong. Rec. S627 (daily ed. Feb. 10, 2022) (statement of Sen. Kirsten
     Gillibrand)....................................................................................................7, 14

168 Cong. Rec. S627 (daily ed. Feb. 10, 2022) ...........................................................16

**Other Authorities**

Kimberlé Crenshaw, *Demarginalizing the Intersection of Race and Sex: A Black
     Feminist Critique of Antidiscrimination Doctrine, Feminist Theory and
     Antiracist Politics*, 1989 U. CHI. LEGAL F. 139 (1989) ..........................................15

Press Release, Sen. Kirsten Gillibrand, *Gillibrand, Graham Celebrate Senate
     Passage of Landmark Bill to Void and Prevent Forced Arbitration
     Agreements for Sexual Harassment and Sexual Assault* (Feb. 10, 2022),
     https://www.gillibrand.senate.gov/news/press/release/gillibrand-graham-
     celebrate-senate-passage-of-landmark-bill-to-void-and-prevent-forced-
     arbitration-agreements-for-sexual-harassment-and-sexual-assault.............................4

iv

1 Barbara Lindemann and Paul Grossman, Employment Discrimination Law 781
(3d ed.1996) ......................................................................................................................13

## INTERESTS OF AMICI CURIAE

Amici are nonprofit organizations committed to ensuring access to justice.[1] Public Justice is a national public interest advocacy organization that fights against abusive corporate power and predatory practices, the assault on civil rights and liberties, and the destruction of the earth's sustainability. The organization maintains an Access to Justice Project that pursues high-impact litigation and advocacy efforts to remove procedural obstacles that unduly restrict the ability of workers, consumers, and people whose civil rights have been violated to seek redress in the civil court system. Towards that end, Public Justice has a longstanding practice of fighting against the unlawful use of mandatory arbitration clauses that deny workers their day in court. Indeed, just this past spring Public Justice won a unanimous Supreme Court victory in *Morgan v. Sundance*, 142 S. Ct. 1708 (2022), in which Taco Bell workers challenged the enforcement of a mandatory arbitration agreement.

The American Association for Justice ("AAJ") is a national, voluntary bar association established in 1946 to strengthen the civil justice system, preserve the right to trial by jury, and protect access to the courts for those who have been wrongfully injured. With members in the United States, Canada, and abroad, AAJ is the world's largest plaintiff trial bar. AAJ's members primarily represent plaintiffs in personal injury actions, employment rights cases, consumer cases, and other civil actions, including cases involving forced arbitration, sexual harassment, and sexual assault. Throughout its more than 75-year history, AAJ has served as a leading advocate for the right of all Americans to seek legal recourse for wrongful conduct.

The National Women's Law Center (NWLC) is a nonprofit legal organization dedicated to the advancement and protection of women's legal rights and the right of all persons to be free

---

[1] No party or party's counsel authored this brief in whole or in part. No person, other than amicus curiae, its members, and its counsel, contributed money that was intended to fund the preparation or submission of this brief.

from sex discrimination. Since 1972, the Center has worked to secure equal opportunity in education for women and girls through enforcement of Title IX, the Constitution, and other laws prohibiting sex discrimination. The Center has participated in numerous workplace civil rights cases in the state and federal courts including through filing amicus briefs that highlight the critical importance of retaining litigation in court as an option for survivors seeking justice. In our briefs, we have emphasized the myriad ways that forced arbitration hinders the broader mission of civil rights laws to create a more just workplace and society.

Founded in 1985, the National Employment Lawyers Association (NELA) is the largest bar association in the country focused on empowering workers' rights attorneys. NELA and its 69 circuit, state, and local affiliates have a membership of over 4,000 attorneys who are committed to protecting the rights of workers, in discrimination, harassment, wage and hour, labor, and civil rights cases. NELA attorneys litigate daily in every circuit and regularly represent workers in arbitration, giving NELA a unique perspective on how legislation and principles announced by courts in employment cases actually play out on the ground. As such, NELA has a particular interest in ensuring that workers are able to vindicate their rights in court, an opportunity often denied to them by the inclusion of forced arbitration clauses in employment contracts.

RAINN is the nation's largest anti-sexual violence organization, whose purpose is to provide services to victims of sexual violence and advocate for improvements to the justice system's response to sexual violence. RAINN founded and operates the National Sexual Assault Hotline, and in its more than 25 years of operation has helped more than 4 million survivors of sexual assault and their loved ones. RAINN is a leader in public education on sexual violence, provides consulting services to various industries on best practices for prevention of and

response to sexual assault and harassment, and advocates on the state and federal levels to improve legislation on sexual violence.

Rise is a national organization that fights for sexual violence survivor rights. Many of the survivors Rise works with have experienced abuse in the workplace. Ending forced arbitration is a priority for Rise, not only so survivors can have their "day in court," but to ensure that companies will prioritize addressing sexual assault or harassment claims and holding perpetrators accountable.

Lift Our Voices (LOV), a fiscally sponsored project of Panorama Global, is the leading organization fighting to eradicate workplace toxicity. Following their own experiences, Gretchen Carlson and Julie Roginsky heard heartbreaking stories from thousands of women and men across the country who also faced workplace toxicity. They quickly realized there were two epidemics facing the American workplace: toxic environments were still in existence in many places of employment that were left unaddressed and the pervasive use of silencing mechanisms ensuring toxic behavior would be kept secret. LOV works to transform the American workplace, making it safer and more equitable for everyone and ensuring every worker has a voice. Lift Our Voice's efforts includes advocating for survivors, conducting research and promoting education and awareness for a safer and more inclusive workplace environment. Gretchen and Julie have been instrumental leaders in helping realize the passing of two landmark bipartisan bills: the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act & the Speak Out Act, hailed as, "…an historic victory for justice and dignity: empowering survivors and building safer workplaces for all" and "the biggest labor law change in the last 100 years."

## INTRODUCTION

On March 3, 2022, President Biden signed into law the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFASASHA" or "the Act"), Pub. L. No.

3

117-90, 136 Stat. 26, 9 U.S.C. §§ 401-402. The law, passed with bipartisan support, gives plaintiffs with cases related to sexual assault or sexual harassment the right to pursue their claims in court instead of being forced into secretive, unfair arbitration procedures. Specifically, the law says that "no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which . . . relates to [a] sexual assault dispute or [a] sexual harassment dispute." 9 U.S.C. § 402(a). The new law, heralded as "one of the most significant workplace reforms in the last 50 years," ensures that survivors of sexual assault or sexual harassment have access to their choice of forum for seeking justice, and that employers and other businesses cannot continue to sweep sexual misconduct under the rug.[2]

Now that this historic law has been enacted, the meaning of its text is being addressed in the courts for the first time. These related cases[3] are some of the first to decide several important questions about the meaning of EFASASHA's language. Under the Act, a plaintiff cannot be forced to arbitrate any "case which . . . relates to" a "sexual harassment dispute." 9 U.S.C. § 402. The statute in turn defines "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). Thus, to determine whether Plaintiffs' claims here are subject to arbitration, the Court will need to first decide whether there is a "sexual harassment dispute" in each case and, if there is, whether the "case" "relates to" the dispute. Even under the narrowest interpretation, it is clear that at least some of Plaintiffs' claims would fall under EFASASHA's protections. But the text

---

[2] Press Release, Sen. Kirsten Gillibrand, *Gillibrand, Graham Celebrate Senate Passage of Landmark Bill to Void and Prevent Forced Arbitration Agreements for Sexual Harassment And Sexual Assault* (Feb. 10, 2022), https://www.gillibrand.senate.gov/news/press/release/gillibrand-graham-celebrate-senate-passage-of-landmark-bill-to-void-and-prevent-forced-arbitration-agreements-for-sexual-harassment-and-sexual-assault.
[3] An identical brief was filed in *Yost v. Everyrealm, Inc.*, No. 1:22-cv-06549(PAE), which involves claims against the same Defendants.

and legislative history show that the Act was intended to have a broad scope, covering any case related to conduct that is alleged to constitute sexual harassment.

First, the text of the Act makes clear that the determination of whether there is a "sexual harassment dispute" is based solely on the four corners of the complaint, and not on any extrinsic evidence or affirmative defenses that Defendants may raise. And once it is determined from the allegations in the complaint that there is a "sexual harassment dispute" and EFASASHA applies to the case, it does not matter whether the claims underlying the "sexual harassment dispute" are ultimately dismissed. The case remains in court. Second, the phrase "sexual harassment dispute" encompasses not only claims for sexual harassment themselves but also related claims for retaliation, disparate treatment, and unequal pay that are tied to conduct that is alleged to constitute sexual harassment. Third, "sexual harassment dispute" incorporates the full scope of state and federal law, so it includes any sex-based harassment that would violate the law, regardless of whether the harassment is motivated by sexual desire. Fourth, because Congress intentionally exempted from arbitration any "case" "that relates to" a "sexual harassment dispute," if the Court finds that there is a "sexual harassment dispute" here, the entirety of Plaintiffs' case, not just their hostile work environment claims, must be litigated in court because the entire case "relates to" the sexual harassment dispute.

## ARGUMENT

### I.   Whether EFASASHA Applies Is Determined from the Face of the Complaint

The plain language and legislative history of the Act demonstrate that Congress intended the application of EFASASHA to be based solely on the allegations in the complaint. The Act uses the phrase "**conduct that is alleged to constitute** sexual harassment," rather than referring only to a **successful claim** for sexual harassment. 9 U.S.C. § 401(4) (emphasis added). And the definition of "sexual harassment dispute" is not the only place that language is used. The Act's

substantive provisions also repeatedly frame the application of the Act in terms of the allegations in the complaint. *See* 9 U.S.C. § 402(a) (arbitration agreement is unenforceable "at the election of the person **alleging conduct constituting** a sexual harassment dispute . . . or the named representative of a class or in a collective action **alleging such conduct**") (emphasis added). The Act's focus on allegations shows that "sexual harassment dispute" was intended to encompass allegations of sexual harassment, without regard to whether those allegations are ultimately proved or there is at the end, a successful claim. As Senator Durbin, Chair of the Judiciary Committee, the Senate committee with jurisdiction over the Act, explained on the Senate floor, "the bill text does not require … that victims have to prove a sexual assault or harassment claim before the rest of their related case can proceed in court." 168 Cong. Rec. S626 (daily ed. Feb. 10, 2022) (statement of Sen. Richard Durbin).

Looking only to the four corners of the complaint is in line with other determinations routinely made by courts about where a case can be brought, including federal jurisdiction. *See, e.g.*, *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint"). Indeed, the Ninth Circuit has interpreted the nearly identical phrase "conduct alleged" in the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb), as a directive to look at "what is alleged in the complaint rather than . . . what may or may not be proved by evidence." *Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010, 1015 (9th Cir. 2011). Here, as in *Coleman*, "nothing in [the Act] indicates a congressional intention to turn a jurisdictional determination concerning the . . . defendant's 'alleged conduct' into a mini-trial on the merits of the plaintiff's claims." *Id.* Thus, the Court here should not consider Defendants' affirmative defenses or

extrinsic evidence when deciding whether the Complaint alleges conduct that constitutes sexual harassment for the purposes of EFASASHA.

This interpretation of the "conduct that is alleged" language in EFASASHA is further bolstered by the fact that a competing bill to EFASASHA introduced in the House of Representatives specifically provided that, if a plaintiff's sexual assault claim were dismissed at any time during the case, all other claims would also be dismissed and sent to arbitration. *See* Carrie's Law, H.R. 2906, 117th Cong. § 402(b)(2)(A) (Apr. 30, 2021). That bill never gained traction, and the dismissal mechanism it proposed was not added to EFASASHA, thus demonstrating that Congress did not intend to require a plaintiff's sexual harassment claim to survive a motion to dismiss before the rest of the claims in the case can proceed in court, rather than arbitration. *See* 168 Cong. Rec. S626 (daily ed. Feb. 10, 2022) (statement of Sen. Richard Durbin). Instead, the Court must determine from the face of the complaint whether EFASASHA applies and, once it applies, the case remains in court regardless of whether the plaintiffs' claims for sexual harassment are ultimately successful.

Defendants contend that interpreting the Act in this manner will result in plaintiffs rushing to add frivolous sexual harassment claims to their other employment claims to invoke EFASASHA. However, this concern is misplaced given that Federal Rule of Civil Procedure 11 and other ethical restraints on lawyers' practice will serve to strongly discourage those who are so inclined from adding frivolous allegations to a complaint. *See* 168 Cong. Rec. S627 (daily ed. Feb. 10, 2022) (statement of Sen. Kirsten Gillibrand) ("Victims here must follow the rules and plead a case correctly, and then they must also affirm to the Court that they have a good-faith basis for doing so. Attorneys must do the same thing. If victims and attorneys break those rules, they can be sanctioned in court . . . ."). And as described above, looking solely to the allegations

7

in the complaint to determine the forum or jurisdiction for a suit is standard practice. There is no reason to assume that lawyers will violate their ethical obligations by adding frivolous allegations of sexual harassment just so that a case can fall under EFASASHA's protections.[4]

Here, the parties are currently briefing whether Plaintiffs' claims for hostile work environment under New York and federal law should be dismissed under Fed. R. Civ. P. 12(b)(6). But the text and legislative history of EFASASHA make clear that a Rule 12(b)(6) analysis is not necessary to determine application of the Act because whether the Act applies should be determined by solely reviewing the allegations in Plaintiffs' operative complaints. Because the allegations in Plaintiffs' complaints include "conduct that is alleged to constitute sexual harassment," including numerous instances of inappropriate sexual comments, jokes, and messages, use of sex-based derogatory language, and singling Plaintiffs out for comments or unequal treatment based on their sex or sexual orientation,[5] EFASASHA prohibits Defendants from forcing them to arbitrate their claims. And that is so even if the hostile work environment claims themselves are ultimately dismissed. *See* 168 Cong. Rec. S626 (daily ed. Feb. 10, 2022) (statement of Sen. Richard Durbin) (describing how, even without a sexual assault or sexual harassment claim, related claims can and should still proceed, and explaining that, to provide otherwise "would have the undesirable effect of hiding corporate behavior such as retaliation and discrimination against women who report assaults and harassment").

---

[4] Courts concerned about lawyers filing obviously frivolous claims could adopt a rule similar to that for federal question jurisdiction and hold that EFASASHA does not apply only if the purported sexual harassment allegations were "immaterial and made solely for the purpose of obtaining jurisdiction" or were "wholly insubstantial and frivolous." *Burke v. Lash Work Environs, Inc.*, 408 F. App'x 438, 440 (2d Cir. 2011). But because the allegations here far exceed that standard, there is no need for the Court to reach that issue in this case.

[5] *See* First Amended Complaint, *Johnson v. Everyrealm Inc.*, No. 1:22-cv-06669, Dkt. 29 ("Johnson FAC") ¶¶ 2, 47-48, 51-112, 174-79; Second Amended Complaint, *Yost v. Everyrealm Inc.*, No. 1:22-cv-06549, Dkt. 35 ("Yost SAC") ¶¶ 4, 59-90.

## II.    The Phrase "Sexual Harassment Dispute" in EFASASHA Was Intended to Have a Broad Scope

The plain language of EFASASHA, particularly when combined with its legislative history, demonstrates that the phrase "sexual harassment dispute" was intended to have a more expansive meaning than simply a claim for sexual harassment. The definition of "sexual harassment dispute" in EFASASHA includes any "dispute **relating to** conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4) (emphasis added). As Representative Nadler, Chair of the House Judiciary Committee, the House committee with jurisdiction over the Act, explained during debate over the language of this definition, it "mak[es] clear that anything related to sexual harassment or assault as currently defined by law is covered by this bill. This would include retaliation or any other misconduct that gives rise to the underlying claim alleging a violation of these laws." 168 Cong. Rec. H992 (daily ed. Feb. 7, 2022) (statement of Rep. Jerrold Nadler).

For example, EFASASHA's definition of "sexual harassment dispute" would encompass a standalone retaliation claim that is based on an employee's report of conduct that could be actionable under an applicable sexual harassment law. In that scenario, the retaliation claim **relates to** conduct that is alleged to constitute sexual harassment, even though it is not itself a claim for sexual harassment. *See* 168 Cong. Rec. H992 (daily ed. Feb. 7, 2022) (statement of Rep. Jerrold Nadler). To take another common example, an employee may allege a sex-based hostile work environment that includes adverse actions by the employer like denials of promotion or a pay disparity with their coworkers. *See, e.g.*, *Crawford v. ExlSAervice.com, LLC*, 16 Civ. 9137 (LAP), 2019 WL 5887214, at *2 n.1 (S.D.N.Y. Nov. 12, 2019) ("[T]he case law is clear that disparate treatment 'may be considered as part of the totality of the circumstances creating a hostile work environment."). That employee's separate disparate treatment or equal

pay claim would meet the definition of a "sexual harassment dispute" under the Act because it would relate to conduct (i.e., unequal treatment on the basis of sex) "that is alleged to constitute sexual harassment."

Those examples of related conduct are reflected in the allegations in the operative complaints here. Both Plaintiffs allege that they were terminated in part for opposing or reporting sexual harassment in the workplace, including sexual harassment of other employees. Johnson FAC ¶¶ 13, 182, 187; Yost FAC ¶¶ 137-151, 175-186, 11-216, 256-60. And Ms. Yost contends that, as part of the sex-based hostile work environment she experienced, she was denied equal pay and promotions. Yost FAC ¶¶ 82-90, 129, 192-204. Thus, not only do Plaintiffs' allegations of a hostile work environment constitute a "sexual harassment dispute," but their claims for retaliation, sex-based disparate treatment, and equal pay do as well.

Defining "sexual harassment dispute" to include claims like retaliation that are related to allegations of sexual harassment also advances one of the primary purposes of the Act, which is to prevent the silencing of people who speak up about sexual harassment, including assault, and ensure that perpetrators and the corporations who have hidden and enabled sexual misconduct are held accountable for their actions. *See, e.g.*, H.R. Rep. No. 117-234, at 3-4 (2022). As the Report from the Judiciary Committee in the House of Representatives explained, "[t]he secretive nature of arbitration also prevents victims from sharing their stories," which "allows for the growth of office cultures that ignore harassment and retaliate against those who report it, prevent future victims from being warned about dangerous companies and individuals, and create incentives for the corporate protection of rapists and other serial harassers." *Id.* at 4. There are many brave survivors of sexual harassment who come forward despite the very real threat of harmful consequences for their career and their personal health and safety. There are also

situations in which sexual harassment in the workplace is brought to light by a colleague who witnessed it or learned about it. When someone who observes or learns of sexual harassment but does not face it directly reports the conduct and then endures retaliation for speaking up, allowing their claims to proceed in court serves a similar purpose as when the survivor brings the claim. It prevents allegations of sexual harassment from being swept under the rug and ensures that the employer is held accountable for its efforts to silence those who report sexual harassment.

### III.    "Sexual Harassment" Is Not Limited to Harassment Based on Sexual Desire

Defendants incorrectly assert that Plaintiffs' lack of allegations of sexual propositions or sexual assault are fatal to their sexual harassment claims, and thus there is no "sexual harassment dispute." Mot. to Dismiss (Johnson), at 11. Not only does the definition of "sexual harassment dispute" include claims other than those for sexual harassment, *see supra* Section II, it also broadly defines what constitutes sexual harassment by incorporating "applicable Federal, Tribal, or State law" and the decades of precedent regarding the scope of conduct prohibited by those laws. Thus, it includes not only allegations of conduct motivated by sexual desire, but the full range of conduct that has been held to constitute a sex-based hostile work environment under applicable law.

Notably, the definition of "sexual harassment dispute" in the Act originally would have been limited largely to conduct such as sexual advances, physical contact, sexual attention, or quid pro quo harassment. *See* Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, H.R. 4445, 117th Cong. § 401(4) (July 16, 2021). But the definition was amended, and now "encompasses a broader array of harassing conduct" than originally included in the bill because it incorporates the full scope of conduct that constitutes sexual

harassment under state and federal law. 168 Cong. Rec. H991 (daily ed. Feb. 7, 2022) (statement of Rep. David Scott).

Specifically, it is well-established under federal law that "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). For example, sex-based harassment can be "motivated by general hostility to the presence of women in the workplace." *Id.* at 80. And it can include conduct motivated by gender identity or sexual orientation. *See Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1743 (2020) ("For an employer to discriminate against employees for being homosexual or transgender, the employer must intentionally discriminate against individual men and women in part because of sex. That has always been prohibited by Title VII's plain terms . . . ."). Additionally, harassing conduct—whether motivated by sexual desire or not—need not be directed at the plaintiff to be part of an actionable hostile work environment. *See Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010) ("a plaintiff who herself experiences discriminatory harassment *need not be the target of other instances of hostility in order for those incidents to support her claim*") (emphasis in original).

Here, both Plaintiffs allege a pattern of inappropriate sexual comments and jokes directed at them as well as other employees in the workplace in their presence. Johnson FAC ¶¶ 2, 47-48, 51-112; Yost SAC ¶¶ 4, 59-90. Those allegations on the face of the complaint[6] are sufficient to constitute a "sexual harassment dispute" regardless of whether the harassment was motivated by sexual desire. *See Oncale*, 523 U.S. at 80; 1 Barbara Lindemann and Paul Grossman, Employment Discrimination Law 781 (3d ed.1996) ("[A] hostile environment is not limited to sexual advances or even to sexual behavior targeted at the complainant."). And because an

---

[6] As described in Section I above, the Court should not consider Defendants' affirmative defenses or extrinsic evidence when deciding whether Plaintiffs' complaints present a "sexual harassment dispute" under EFASASHA.

environment of harassment need not be motivated by sexual desire or directed at the plaintiff specifically, Defendants are wrong to suggest that the fact that one plaintiff is a man and one plaintiff is a woman undermines their claims. *See, e.g.*, *Bostock*, 140 S. Ct. at 1741 (explaining that, because Title VII protects **individuals** from sex-based discrimination, an employer who fires a male employee for being insufficiently masculine and a female employee for being insufficiently feminine violates Title VII even though they fired both a man and a woman).[7]

## IV.   Entire Cases—Not Just Individual Claims—That Relate to Sexual Harassment Are Exempt from Arbitration Under EFASASHA

Once the Court determines that there is a "sexual harassment dispute," the next question is whether this is a "case" that "relates to" the "sexual harassment dispute." 9 U.S.C. § 402(a). By the plain meaning of those words, it is. Defendants' argument to the contrary is based on an erroneous reading of the Act's language, ignores the Act's legislative history, and would lead to inefficient litigation and wasted resources.

Congress clearly and intentionally used the words "case" and "relates to" to expand the scope of the statute beyond just claims of sexual harassment. *Id.* Indeed, had the Act been intended to encompass only the sexual harassment dispute and not other claims in the case, it could have omitted the mention of a "case" altogether, and simply prohibited arbitration "with respect to the sexual harassment dispute." Congress should be taken at its word that "case"

---

[7] Defendants initially argued that EFASASHA does not apply because some of the allegations in the complaint concern events that occurred before the law was enacted. Johnson Def's Reply in Support of Mot. to Compel Arb. at 4-7. The operative complaints now make clear that the vast majority of the sex-based harassment occurred after the enactment of the law. But, in any event, EFASASHA applies to "any dispute or claim that arises or accrues on or after the date of enactment of this Act." Pub. L. No. 117-90, § 3, 136 Stat 26, 28 (2022). And a hostile work environment claim continues to accrue so long as the wrongful acts contributing to the claim continue to occur. *See Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 218 (E.D.N.Y. 2018). Moreover, Plaintiffs' other claims that meet the definition of a "sexual harassment dispute," such as their retaliation and disparate treatment claims, clearly did not accrue until they were terminated well after the enactment date of EFASASHA. As a result, this argument has no merit.

means the entire "case," not just the allegations that constitute the "sexual harassment dispute." *See Simmons v. Himmelreich*, 578 U.S. 621, 627 (2016) ("Congress says what it means and means what it says.").

Additionally, the legislative history shows the drafters' deliberate intent not to divide cases by sending some claims from the same case to arbitration. Several senators, including a lead sponsor of the Act, expressly addressed this issue during debates, stating that keeping cases whole "is exactly what we intended the bill to do." 168 Cong. Rec. S627 (daily ed. Feb. 10, 2022) (statement of Sen. Kirsten Gillibrand). Senator Gillibrand explained that the bill included the "relates to" language to keep cases covered by EFASASHA together throughout litigation. "When a sexual assault or sexual harassment survivor files a court case in order to seek accountability, her single case may include multiple claims," the Senator explained. *Id.* "[I]t is essential that all the claims related to the sexual assault or harassment can be adjudicated at one time" to ensure that a victim need not "relive that experience in multiple jurisdictions." *Id.* Stating the intent of the Act again for the record, she concluded, "To ensure that a victim is able to realize the rights and protections intended to be restored to her by this legislation, all of the related claims will proceed together." *Id.* Senator Durbin, Chair of the Judiciary Committee, echoed that intent: "So to clarify, for cases which involve conduct that is related to a sexual harassment dispute or sexual assault dispute, survivors should be allowed to proceed with their full case in court regardless of which claims are ultimately proven. I am glad that is what this bill provides." 168 Cong. Rec. S626 (daily ed. Feb. 10, 2022) (statement of Sen. Richard Durbin).

If there were any remaining ambiguity as to congressional intent, another bill that Congress rejected during the same session demonstrates that Congress intended to exempt entire cases, and not just individual claims, from arbitration. That bill would have limited the

legislation to "claim[s]" of sexual harassment or sexual assault between employees and employers, while allowing for arbitration for other claims in a case. Resolving Sexual Assault and Harassment Disputes Act of 2021, S.3143, 117th Cong. (2021). It also lacked the "relates to" language that further underscores the intent to remove whole cases from arbitration, rather than split claims between differing proceedings. The lead sponsor of the bill, Senator Ernst, even spoke to those differences for the record, highlighting the known effect of the language in the bills. 168 Cong. Rec. S625 (daily ed. Feb. 10, 2022) (statement of Sen. Joni Ernst). Congress declined to move that bill along, instead moving forward with the more comprehensive bill that is now law.

That Congress selected the whole-case approach over parsing individual claims makes sense because drawing a bright line between a claim of sexual harassment and a claim of another type of discrimination or retaliation does not fit with the reality of survivors' on-the-ground experiences of sexual harassment. An employee with intersectional identities (i.e., who is a member of multiple protected classes) may be subject to a hostile work environment that is based on several of those identities at the same time. For example, a Black woman may experience forms of sexual or racial harassment that a white woman or a Black man would not experience; harassment that is due to her race **and** her gender. *See e.g.*, Kimberlé Crenshaw, *Demarginalizing the Intersection of Race and Sex: A Black Feminist Critique of Antidiscrimination Doctrine, Feminist Theory and Antiracist Politics*, 1989 U. CHI. LEGAL F. 139 (1989) (discussing *DeGraffenreid v. General Motors*, 413 F. Supp. 142 (E.D. Mo. 1976); *Moore v. Hughes Helicopter*, 708 F2d 475 (9th Cir. 1983); and *Payne v. Travenol*, 673 F.2d. 798 (5th Cir. 1982), in which workers experienced discrimination specifically because they were Black women, not because of their gender or race separately). Thus, for women of color and others at

the intersection of two or more protected identities, it is critical that these kinds of interrelated sexual harassment claims be brought together in one forum, as it is not always possible to neatly divide claims of sexual harassment from other types of claims.

In the cases of Mr. Johnson and Ms. Yost, each alleges that their harassment was based on their intersectional identities, not their sex alone. Mr. Johnson alleges both race-based discrimination and sexual harassment, including several instances of sexually harassing conduct that targeted him because of his race. Johnson FAC ¶ 2. Similarly, Ms. Yost alleges harassment that was based on her sex, including her sexual orientation and caregiver status, and on her disability status, which together created a hostile work environment. Yost SAC ¶¶ 3-4, 205-206, 218, 252. Specifically, Ms. Yost was subjected to sexually explicit discussions in the office based on her known disability status and sexual orientation, and the suspected disabilities and orientations of others. Yost SAC ¶¶ 21, 79-80, 93-94. As it cannot be parsed out which instances of harassment were due to which one or more of Plaintiffs' intersectional identities, should their claims for sex-based hostile work environment go to court and their other claims of discrimination go to arbitration, Mr. Johnson and Ms. Yost would need to "relive that experience in multiple jurisdictions," as Senator Gillibrand put it. 168 Cong. Rec. S627 (daily ed. Feb. 10, 2022).

Splitting Plaintiffs' claims would create inefficiencies that would make both Plaintiffs' and Defendants' cases more expensive and difficult to litigate. For example, to prove his sexual harassment claim in court, Mr. Johnson would need similar discovery, evidence, and witnesses to those he would use to prove his racial harassment claim in arbitration. And the arbitrator in one proceeding may reach a decision that conflicts with that of the judge in the other proceeding. This duplication would waste time and judicial resources, force Defendants to defend against the

same allegations in two different fora, and burden third parties who would potentially have to appear to testify multiple times. Indeed, as a practical matter, these inefficiencies would likely force the party with fewer resources—typically the employee—to choose between litigating one claim or the other. For precisely those reasons, courts have long recognized a rule against "claim splitting." *See AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 73 (2d Cir. 2003) (explaining that rule against claim splitting is motivated by belief that it is "fairer to require a plaintiff to present in one action all of his theories of recovery relating to a transaction, and all of the evidence relating to those theories, than to permit him to prosecute overlapping or repetitive actions in different courts or at different times").

In short, forcing Plaintiffs and future sexual harassment survivors who, like Plaintiffs, have intersectional identities to split their cases between arbitration and litigation would be impractical and a waste of judicial resources. And even worse than splitting the case would be adopting Defendants' suggestion that the sexual harassment "claims should be stayed pending the outcome of the arbitration." Def. Mot. to Compel Arb. (Johnson), at 14. While Defendants cite situations in which courts have decided to allow arbitration before litigation, they ignore that the decision is fact-specific and discretionary. *See, e.g.*, *Tyler v. Uber Techs., Inc.*, No. CV 19-3492 (ABJ), 2020 WL 5569948, at *6 (D.D.C. Sept. 17, 2020) (allowing parties to either stay or dismiss the arbitrable claims while the litigated claims progressed). Here, forcing a sexual harassment survivor into arbitration—which can take years—for their related claims before they can litigate their claims for sexual harassment would lead to the silencing of survivors that EFASASHA was designed to prevent. Congress intentionally provided that an entire "case" related to sexual harassment be exempt from arbitration, not just individual claims, to avoid this harmful, unjust, and ineffective approach.

In sum, the text and legislative history of EFASASHA make clear that, when a lawsuit "relates to" a "sexual assault dispute," the entire "case" cannot be forced into arbitration. And the practical realities of workplace discrimination and litigation underscore why Congress made that choice. Therefore, once the Court finds that the allegations in Mr. Johnson's and Ms. Yost's cases are related to a "sexual harassment dispute" as broadly defined in EFASASHA, their claims cannot be separated, and the entire cases must be litigated in court if Plaintiffs elect to do so.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Compel Arbitration and grant Plaintiff's Motion for a Temporary Restraining Order.

Dated: December 7, 2022

<div style="margin-left:50%">

Respectfully submitted,

/s/ Shelby Leighton
Shelby Leighton
(Pro Hac Vice motion pending)
Karla Gilbride
PUBLIC JUSTICE
1620 L Street, NW, Suite 630
Washington, D.C. 20036
(202) 797-8600
sleighton@publicjustice.net
ayandle@publicjustice.net
kgilbride@publicjustice.net

*Counsel for Amici Curiae*

</div>

## CERTIFICATE OF SERVICE

I certify that on December 7, 2022, this amicus brief in support of Plaintiff was served on all parties or their counsel through the CM/ECF system.


Dated: December 7, 2022

/s/ Shelby Leighton
Shelby Leighton

*Counsel for Amici Curiae*