UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

TEYO JOHNSON,                                         :
                                                      :
                          Plaintiff,                  :
                                                      :
          -against-                                   :   Case No. 1:22-cv-06669(PAE)(GWG)
                                                      :
EVERYREALM INC., COMPOUND ASSET                       :
MANAGEMENT LLC, REALM METAVERSE                       :   **ORAL ARGUMENT REQUESTED**
REAL ESTATE INC., REPUBLIC, REPUBLIC                  :
CRYPTO LLC, REPUBLIC REALM MANAGER                    :
LLC, REPUBLIC REALM INC., REPUBLIC                    :
OPERATIONS LLC, OPENDEAL INC.,                        :
OPENDEAL PORTAL LLC, JULIA                            :
SCHWARTZ in her individual and professional           :
capacities, WILLIAM KERR in his individual and        :
professional capacities, and JANINE YORIO in          :
her individual and professional capacities.           :
                                                      :
                                                      :
                          Defendants.                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## REPLY MEMORANDUM IN SUPPORT OF EVERYREALM INC., JULIA SCHWARTZ, WILLIAM KERR, AND JANINE YORIO'S MOTION TO DISMISS PLAINTIFF'S CLAIM FOR SEXUAL HARASSMENT

PROSKAUER ROSE LLP

Lloyd B. Chinn, Esq.
Eleven Times Square
New York, NY 10036
(212) 969-3000
(212) 969-2900 (Fax)
lchinn@proskauer.com
*Attorneys for Everyrealm Inc.
(f/k/a Republic Realm Inc.), Julia
Schwartz, William Kerr, and
Janine Yorio*

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ......................................................................................................... 3

A. Johnson Does Not Assert That He Was Harassed "Because Of" His Sex. ............. 3

B. Johnson's Harassment Allegations Constitute, At Most, Petty Slights And Trivial Inconveniences. ........................................................................................ 5

C. The Alleged "Harassment" Had No Impact In New York. .................................... 8

D. The Court Should Reject Johnson's Contradictory Assertions. ............................ 11

ARGUMENTS RAISED BY PUBLIC JUSTICE *ET AL.* .......................................... 13

A. The *Amici*'s Tardy, Misguided Arguments Should Be Rejected As A Matter Of Course ..................................................................................................... 14

B. The EFA Was Designed To Encompass "Claims" Of Sexual Harassment, And, Should Any Claim Subject To The Legislation Survive A Rule 12 Motion, All Unrelated Claims Should Be Severed And Compelled To Arbitration. ............... 16

C. A "Sexual Harassment Dispute" Does Not Encompass Every Claim Based On Gender Or Sex. ............................................................................................. 17

D. Once The Sexual Harassment Claim Is Dismissed, The Action Should Be Compelled To Arbitration. ............................................................................. 18

E. The Court Should Consider Any Materials Admissible Under Rule 12 Of The Federal Rules Of Civil Procedure When Addressing The Adequacy Of A Sexual Harassment Claim Under the EFA. ...................................................... 20

CONCLUSION .................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Brandenberg v. Greek Orthodox Archdiocese of N. Am.*,
No. 20-CV-3809 (JMF), 2021 U.S. Dist. LEXIS 102800 (S.D.N.Y. June 1, 2021)............ 8, 9

*Brennan v. Metro. Opera Ass'n*,
192 F.3d 310 (2d Cir. 1999) ................................................................................................ 15

*Cano v. SEIU Local 32BJ*,
No. 19 Civ. 8810 (PAE)(KHP), 2021 U.S. Dist. LEXIS 188634
(S.D.N.Y. Sept. 30, 2021) ......................................................................................... 5, 6, 13

*Corradino v. Liquidnet Holdings Inc.*,
No. 19 Civ. 10434 (LGS), 2021 U.S. Dist. LEXIS 127469
(S.D.N.Y. July 8, 2021) .......................................................................................... 6, 7, 8

*Dellefave v. Access Temps., Inc.*,
No. 99 CIV. 6098 RWS, 2001 U.S. Dist. LEXIS 97 (S.D.N.Y. Jan. 10, 2001) ...................... 4

*Erasmus v. Deutsche Bank Ams. Holding Corp.*,
No. 15 CIV. 1398, 2015 U.S. Dist. LEXIS 160351 (S.D.N.Y. Nov. 30, 2015)................ 3, 5, 6

*Germano v. Cornell Univ.*,
No. 03 Civ. 9766, 2005 U.S. Dist. LEXIS 17759 (S.D.N.Y. Aug. 17, 2005).................... 9, 11

*Hayes v. N.Y.C. Dep't of Corrs.*,
84 F.3d 614 (2d Cir. 1996) ................................................................................................ 13

*Hernandez v. Coca Cola Refreshments USA, Inc.*,
No. 12 Civ. 234 (BMC), 2013 U.S. Dist. LEXIS 172400 (E.D.N.Y. Dec. 6, 2013) ............... 9

*Hernandez v. Kaisman*,
103 A.D.3d 106 (1st Dep't 2012)..................................................................................... 6, 7

*Howley v. Town of Stratford*,
217 F.3d 141 (2d. Cir. 2000)............................................................................................ 7, 8

*Iowa Pub. Emps.' Ret. Sys. V. MF Global, Ltd.*,
620 F.3d 137 (2d Cir. 2010).............................................................................................. 20

*Kirk v. Heppt*,
532 F. Supp. 2d 586 (S.D.N.Y. 2008) .................................................................................. 9

*Kraiem v. Jonestrading Inst. Svcs. LLC*,
492 F. Supp. 3d 184 (S.D.N.Y. 2020) ......................................................................... 8, 9, 10

*Lambui v. Collins*,
No. 14-CV-6457, 2015 U.S. Dist. LEXIS 136329 (E.D.N.Y., Sept. 30, 2015)................. 9, 11

*Marcus v. AT&T Corp.*,
    138 F.3d 46 (2d Cir. 1998) ............................................................................................... 19

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013) ......................................................................................... 6, 7

*Nachmany v. FXCM, Inc.*,
    No. 91 Civ. 1235 (MJL), 2020 U.S. Dist. LEXIS 7161 (S.D.N.Y. Jan. 9, 2020) ..................... 4

*Olaechea v. City of N.Y.*,
    No. 17-CV-4797 (RA), 2019 U.S. Dist. LEXIS 169760 (S.D.N.Y. Sept. 30, 2019) .......... 4

*Orrego v. Knipfing*,
    564 F. Supp. 3d 273 (E.D.N.Y. 2021) ............................................................................... 9

*Pedroza v. Ralph Lauren Corp.*,
    No. 19-cv-08639 (ER), 2020 U.S. Dist. LEXIS 131504 (S.D.N.Y. July 24, 2020) ................ 8

*Ramirez v. Temin & Co.*,
    No. 20 Civ. 6258 (ER), 2021 U.S. Dist. LEXIS 183760 (S.D.N.Y. Sept. 24, 2021) ............... 1

*Ruiz v. City of N.Y.*,
    No. 14-CV-5231 (VEC), 2015 U.S. Dist. LEXIS 117947 (S.D.N.Y. Sept. 2, 2015) ........... 7, 8

*Salvatore v. KLM Royal Dutch Airlines*,
    No. 98-CV2450 (LAP), 1999 U.S. Dist. LEXIS 15551 (S.D.N.Y. Sept. 30, 1999) ........... 9, 11

*SEC v. Ripple Labs, Inc.*,
    No. 20 Civ. 10832 (AT), 2021 U.S. Dist. LEXIS 190855 (S.D.N.Y. Oct. 4, 2021) ......... 15, 16

*Strasser v. Doorley*,
    432 F.2d 567 (1st Cir. 1970) ......................................................................................... 16

*Vails v. Police Dep't*,
    54 F. Supp. 2d 367 (S.D.N.Y. 1999) ............................................................................... 17

*Vandeventer v. Wabash Nat'l Corp.*,
    887 F. Supp. 1178 (N.D. Ind. 1995) ................................................................................. 5

*Vangas v. Montefiore Med. Ctr.*,
    823 F.3d 174 (2d Cir. 2016) ........................................................................................... 10

*Vasquez v. Reilly*,
    No. 15-CV-9528 (KMK), 2017 U.S. Dist. LEXIS 33968 (S.D.N.Y. Mar. 9, 2017) ............. 13

*Williams v. N.Y.C. Hous. Auth.*,
    61 A.D.3d 62 (1st Dep't 2009) ....................................................................................... 17

**STATUTES**

9 U.S.C. § 401(4) ................................................................................................................. 17

Carrie's Law, H.R. 2906, 117th Cong. § 402(b)(2)(A)(Apr. 30, 2021) ......................................... 18

EFASASH Act ...................................................................................................... passim

FAIR Act ................................................................................................................. 19

NYCHRL ............................................................................................................... passim

NYSHRL ............................................................................................................... passim

**OTHER AUTHORITIES**

2 Moore's Federal Practice – Civil § 12.34 .................................................................. 9

168 Cong. Rec. S625 (daily ed. Feb. 10, 2022) ........................................................ 16

168 Cong. Rec. S626 (daily ed. Feb. 10, 2022) (statement of Sen. Richard Durbin) .................. 17

168 Cong. Rec. S626 (daily ed. Feb. 10, 2022) (statement of Sen. Joni Ernst) ........................... 19

168 Cong. Rec. S626-S627 (daily ed. Feb. 10, 2022) (statement of Sen. Richard Durbin) ... 17, 19

Fed. R. Civ. P. 11 ................................................................................................... 19

Fed. R. Civ. P. 12 ................................................................................................. passim

## PRELIMINARY STATEMENT

In July 2022, Plaintiff Teyo Johnson ("Johnson") joined three other former employees in a coordinated effort to shake down Everyrealm for a multimillion dollar settlement; making a demand of $1.9 million (the aggregate demand of the four being $7.4 million). While all of Johnson's claims are premised on outright fabrications, his purported "sexual harassment" claim is particularly galling. Upon realizing that he would be forced to arbitrate all of his claims unless he presents a claim for sexual harassment, Johnson has set about to invent a claim out of whole cloth to fit this purpose.  But as set forth in the Everyrealm Defendants' Motion to Dismiss and below, that effort falls flat for several reasons.

Johnson fundamentally has not and cannot overcome the overwhelming legal authority mandating the dismissal of his claim. Indeed, Johnson cites only to readily distinguishable cases, or instances in which hostile work environment claims were dismissed for the same reasons that they should be dismissed here.

Johnson fails to state a claim of sexual harassment under state, city, or federal law.  His restatement of the allegations in his First Amended Complaint ("FAC") side-steps the unavoidable conclusion – his allegations, even if true, amount to nothing more than petty slights or trivial inconveniences. The few cases cited scattered throughout the Opposition lead to no different conclusion.  And Johnson's latest concoction, that he was subjected to "sexual harassment-based retaliation" is pleaded nowhere in his FAC and should be ignored by the Court.[1] As Johnson's FAC

---

[1] Johnson merely - and falsely - claims "[r]etaliation after Mr. Johnson reported that a proposed crypto gambling business initiative would violate multiple laws." (See Doc. 29 at ¶ 2).  Nowhere does Johnson assert that he complained about (or objected to) purported sexual harassment. Nor does he claim he was retaliated against in response to such protected activity. Johnson himself understandably cannot cite to a single reference in his FAC to any such assertion. To the extent Johnson rests his argument on vague or ambiguous references in the FAC, they do not suffice. *See Ramirez v. Temin & Co.*, No. 20 Civ. 6258 (ER), 2021 U.S. Dist. LEXIS 183760, at *31 (S.D.N.Y. Sept. 24, 2021) ("Where a plaintiff's complaint is 'vague or ambiguous and does not sufficiently articulate the nature of the harassment, courts hold that a plaintiff has not engaged in protected activity.'").

was his final opportunity to amend any assertions of sexual harassment, his unpleaded "sexual harassment-based retaliation" claim should be disregarded.

Johnson fares no better in addressing whether he has asserted a causal relationship between the purported harassment and his sex. Indeed, Johnson's allegations that he was subjected to facially-neutral discussions regarding certain co-workers' sex lives are mirrored in his counter-part Katherine Yost's Second Amended Complaint. If Mrs. Yorio made these same facially-neutral remarks to both men and women, regardless of their sex, there can be no inference that these comments were "because of" his sex.  Merely asserting that his own sex is somehow implied is insufficient.

Johnson's only argument that the alleged harassment somehow "impacted" him in New York relies upon a contractual provision regarding his place of employment that he admittedly did not follow – and, notwithstanding the contract, it is undisputed that Johnson spent virtually no time working for Everyrealm in New York. Contrary to Johnson's mischaracterization, much of the purported harassment occurred in Austin, Texas or while Johnson worked remotely from Nevada, and these allegations must be excluded from the impact analysis.  Indeed, the Everyrealm Defendants cited to numerous cases where harassment of greater alleged severity occurred in New York City, and courts held those assertions amounted to only a "tangential" connection to the forum, insufficient for jurisdiction.

Finally, Johnson tries to avoid any consequence for his multiple contradictory filings and writings – many of which are referenced in his FAC and/or are otherwise on record with this Court. However, he does not provide any legal argument on point.

The Court should dismiss Johnson's sexual harassment claim, and compel the remainder of this Action to Arbitration.[2]

_____

[2] In their Motion to Dismiss, the Everyrealm Defendants addressed Johnson's Intentional Infliction of Emotional Distress

## <u>ARGUMENT</u>

The Court should grant the Everyrealm Defendants' Motion to Dismiss.  First, Johnson now attempts to establish that he was purportedly harassed based on his sex by seeking to recast the facially neutral allegations in his Complaint, which is plainly insufficient in the face of substantial legal authority squarely on point. Second, of the overwhelming weight of legal authority set out in the Everyrealm Defendants' Motion to Dismiss on the petty slights and trivial inconveniences point, Johnson addresses only the *Erasmus* case (and even there, his analysis is faulty). Johnson has instead oddly sought to rely heavily on cases granting motions to dismiss under circumstances involving far more substantial allegations of "harassment" than present here.  Third, relying on a single case, Johnson argues that the alleged harassment had an impact in New York where the plaintiff there claimed she had endured overt sexual overtures and retaliation for objecting to the harassment in New York City – none of which is present here – while disregarding all of the legal authority on all fours with this case holding that there was no "impact" in New York.

**A.      <u>Johnson Does Not Assert That He Was Harassed "Because Of" His Sex.</u>**

Johnson does not plausibly raise any inference that the purported harassment was "because of" his gender or sex.  Indeed, Johnson's FAC does not include a single allegation of harassment "because of" his gender or sex.[3]

---

claim only as it pertained to purported sexual harassment. He falls well short of establishing "extreme and outrageous" conduct in that regard (and all others). (See doc. 34 at n. 5). Johnson attempts to analogize his claims to those with highly distinguishable facts, and as it pertains to an IIED claim supported by purported sexual harassment - cases where there were alleged physical acts of sexual harassment and overt sexual overtures (See doc. 39 at pp. 29–30), none of which are present here. Johnson's reliance on allegations unrelated to sexual harassment (e.g. his race), were not addressed given this Court's October 14 Order and are nevertheless misplaced. (See docs. 28 & 29).

[3] Johnson's conclusory assertion that Mrs. Yorio "tested the waters" with him (while in Texas), but not with women, is a strawman. "Testing the waters" is not a discernible action sufficient to state a claim for harassment under any relevant law.

As described in their Motion to Dismiss, there is not a single factual allegation that would connect the alleged comments by Mrs. Yorio or Mr. Kerr to Johnson's gender or sex.[4] Indeed, as described by Johnson the comments were both about women and men. And Johnson has made no claim that Mrs. Yorio or Mr. Kerr made the alleged comments to him because he is a man.  Amongst a litany of legal authority, the Everyrealm Defendants cited two cases particularly on point wherein hostile work environment claims were dismissed on these grounds. (See doc. 34 at p. 14) (citing *Olaechea v. City of N.Y.*, No. 17-CV-4797 (RA), 2019 U.S. Dist. LEXIS 169760, at *17 (S.D.N.Y. Sept. 30, 2019); *Dellefave v. Access Temps., Inc.*, No. 99 CIV. 6098 RWS, 2001 U.S. Dist. LEXIS 97, at *20 (S.D.N.Y. Jan. 10, 2001)).  Johnson does not address either of these cases, or any of the other authority cited on point.

Instead, Johnson merely claims without any supporting factual allegations that "all of [his] sexual harassment allegations at the least contain 'an implicit reference to gender.'" (See doc. 39 at p. 22). Indeed, he now claims (only in his brief, nowhere in the FAC) that Mrs. Yorio insinuated he was promiscuous, because that "is a stereotypical prejudice to presume that Black men are promiscuous." (Id.)  Johnson also claims that Mrs. Yorio's "use and discussion of 'Big Swinging Dick' and 'dick'" support a causal inference; they do not. Johnson does not cite to a single case supporting his proposition, does not allege these terms were even about him, nor is there any proffered basis to infer these comments were made "because of" Johnson's gender. (See doc. 34 at p. 14 (citing *Nachmany v. FXCM, Inc.*, No. 91 Civ. 1235 (MJL), 2020 U.S. Dist. LEXIS 7161, at *12 (S.D.N.Y. Jan. 9, 2020)). As alleged, these comments are not about Johnson's sex.  Mrs. Yorio allegedly referred to a third party potential business partner as a "dick" when he asked a question that she allegedly found to be

---

[4] Johnson's continued reference to comments regarding, and actions directed at, his "girlfriend" have no bearing on whether Johnson was purportedly harassed "because of" his sex, nor do they amount to sexual harassment.

4

offensive.[5]  And the phrase "big swinging dick" was popularized by Michael Lewis in the book *Liar's Poker* to refer to rainmakers in a business setting – plainly, the alleged usage here.[6]

The Court should dismiss Johnson's sexual harassment claim on this ground alone.

**B.**     **Johnson's Harassment Allegations Constitute, At Most, Petty Slights And Trivial Inconveniences.**

To try to stave off dismissal, Johnson has merely copied and pasted the allegations from his FAC into the Opposition, and cited a handful of easily distinguishable cases (as well as several cases supportive of Everyrealm's position, as the motions to dismiss in those cases were granted).

The Everyrealm Defendants addressed each of Johnson's assertions of purported sexual harassment in their Motion to Dismiss, and provided nineteen case cites wherein far more egregious allegations of sexual harassment were dismissed under state, city and federal law. (See doc. 34 at pp. 16–20). Johnson addressed only a single case relied upon for this point in the Motion to Dismiss, and his analysis of that case was fundamentally flawed.

Johnson attempts to distinguish this Court's decision in *Erasmus* by reference to *Cano v. SEIU Local 32BJ*, but that case is inapposite in the extreme.  In *Cano* the plaintiff alleged, among other claims, a national origin hostile work environment claim under Title VII, the NYSHRL (pre-2019) and the NYCHRL. No. 19 Civ. 8810 (PAE)(KHP), 2021 U.S. Dist. LEXIS 188634, at *7 (S.D.N.Y. Sept. 30, 2021). There, the plaintiff pleaded "facially discriminatory" comments by three individuals directed squarely at the plaintiff's own race and national origin; a co-worker (Ball), the plaintiff's supervisor

---

[5] *See Vandeventer v. Wabash Nat'l Corp.*, 887 F. Supp. 1178, at *1181 n. 2 (N.D. Ind. 1995) (coworker called plaintiff a "dick sucker" and the court commented that "while the epithet used and the taunting had a 'sexual' component, as do most expletives, the crucial point is that the 'harasser' was not aiming expletives at the victim *because of the victim's maleness*. He was taunting the victim because he did not like him. [The plaintiff's] gender was irrelevant. There was no evidence that the abuse was based on the 'harasser's' disdain for the victim's gender.") (emphasis in original).

[6] "If he could make millions of dollars come out of those phones, he became the most revered of all species: a Big Swinging Dick . . . But everyone wanted to be a Big Swinging Dick, even the women. Big Swinging Dickettes."  Lewis, Michael, *Liars Poker* at p. 46.

(Mehmedovic) and his manager (Price). Cano's coworker, Ball, allegedly called Cano a "fucking Columbian [sic], motherfucker, faggot, fucking Colombian, fucking Spanish." *Id* at *3.  Cano's supervisor, Mehmedovic, delivered Cano a suspension letter and stated, "you don't belong here, fucking Colombian, you don't even deserve[] to live in this country, and I will get you fired soon." *Id.* at **3–4. Mehmedovic also allegedly told Cano that he was a "slave for working in the building and had to take all verbal abuse from tenant[s]." *Id.* at *4.  Later, the property manager, Price, told Cano, "I don't like fucking Spanish people, you don't even deserve[] to work here and you should go looking for a new job as[s]hole, you should continue drug trafficking in Colombia and stop wasting my fucking time." *Id.* at *5.

The Court emphasized several aspects of the race and national origin harassment claims warranting denial of the Rule 12(b)(6) motion in *Cano* that are not present here.  First, the Court noted that Cano had alleged "severe remarks that are facially discriminatory" – indeed, Cano had asserted multiple discriminatory statements that had plainly been directed specifically at him and his own race and national origin.  There is not a single allegation directed at Johnson's sex or gender, nor is there any alleged discriminatory statement about gender or sex generally. The Court also distinguished the allegations in *Cano* from *Erasmus* in part because the "comments and gestures made by the plaintiff's co-worker [in *Erasmus*] were 'crude,' but not as severe as the overtly racist ones Cano alleges here . . . ." *Id.* at *16. The allegations present here are far more akin to those in *Erasmus* than *Cano* in terms of severity; there is simply no comparison between the allegations in *Cano* and those present here.  Also, the Court noted Cano was a *pro se* plaintiff – which was not the case in *Erasmus* – requiring a liberal construction of his pleadings.

Johnson's likening of his claims to those in *Corradino*, *Mihalik* and *Hernandez* is equally unpersuasive. In *Corradino*, the plaintiff alleged she was subjected to multiple, explicit sexual

overtures by the defendant's CEO, the COO suggested that he and the plaintiff should engage in an affair, the Head of Member services asked plaintiff out and to come to his beach house, another supervisor repeatedly asked plaintiff out and propositioned her for sex, a second COO asked plaintiff to take him home, and others referred to plaintiff as "sexy" and told her she would "enjoy a nice big fat Cuban." *Corradino v. Liquidnet Holdings Inc.*, No. 19 Civ. 10434 (LGS), 2021 U.S. Dist. LEXIS 127469, at **2–5 (S.D.N.Y. July 8, 2021). In *Mihalik*, the plaintiff's supervisor subjected her to sexual comments, twice propositioned her for sex, and retaliated against her by ultimately discharging her for refusing his sexual advances. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 105 (2d Cir. 2013).

*Hernandez* involved numerous instances of purportedly harassing conduct, both in writing and in person – and several of which plainly involved statements directed at the plaintiff's own gender or sex. There, the defendant sent the plaintiffs five sexually explicit emails. *Hernandez v. Kaisman*, 103 A.D.3d 106, 108–109 (1st Dep't 2012).  In addition, *Hernandez* also included allegations, *inter alia*, that Kaisman allegedly referred to himself as "pimp Kaisman," on several occasions walked around the office in his underwear, put photos on the office computer of patients dressed as playboy bunnies, took women into his office for an extended period of time, and left condoms in a publicly accessible office drawer. *Id.*

In contrast to his cited cases, Johnson does not allege any inappropriate touching, comments regarding his own gender or sex, or explicit sexual overtures – let alone multiple aggressive sexual propositions.

Johnson's arguments also fall short in the Title VII context. There, Johnson likened his claims to *Corradino* (again), *Howley* and *Ruiz*.  Johnson fares no better with these cases. In *Howley*, the plaintiff was a female firefighter and subjected to a tirade by her supervisor in front of the otherwise

entirely male fire station when he declared that Howley had only been promoted to lieutenant because she "perform[ed] felatio." *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d. Cir. 2000). There, the Second Circuit premised its holding on the fact that plaintiff's job as a lieutenant firefighter required that her reports listen to her commands in life saving scenarios, and her supervisor's proclamation that she was only a lieutenant because she had "perform[ed] felatio" could have rendered her incapable of performing her job duties. *Id.* at 154-55.[7] In *Ruiz*, the plaintiffs alleged that Ruiz's face was "photoshopped" onto a naked woman's body and circulated amongst her coworkers, and she was "approached and threatened." *Ruiz v. City of N.Y.*, No. 14-CV-5231 (VEC), 2015 U.S. Dist. LEXIS 117947, at *23 (S.D.N.Y. Sept. 2, 2015). Later, the plaintiffs were the subject of multiple instances of sexually-explicit graffiti using their names. *Id.* Johnson was not subject to any – let alone multiple – overt sexual overtures like *Corradino*, harassed sufficiently to render him incapable of carrying out his job duties as in *Howley*, or made the sexual object of the entire workplace and "approached and threatened" akin to *Ruiz*. Johnson's attempt to legitimize his claims by reference to these cases fails.

Johnson has failed to plausibly allege he was subjected to anything more than petty slights and trivial inconveniences. The Court should dismiss his sexual harassment claims once more.

## C.   The Alleged "Harassment" Had No Impact In New York.

The burden to establish subject matter jurisdiction under the NYCHRL and NYSHRL lies with the plaintiff, and Johnson's argument falls well short.[8]   *See Brandenberg v. Greek Orthodox*

---

[7] Moreover, there was evidence that her supervisor perpetrated "repeated acts of harassment" to further undermine her. *Id.* at 155.

[8] More recent cases have rejected the approach taken in the cases cited by Johnson. *Pedroza v. Ralph Lauren Corp.*, No. 19-cv-08639 (ER), 2020 U.S. Dist. LEXIS 131504, at *3 (S.D.N.Y. July 24, 2020). Indeed a case relied upon heavily by Johnson, albeit in a slightly different context, makes this clear. *Kraiem v. Jonestrading Inst. Servs. LLC*, 492 F. Supp. 3d, 184, 195 (S.D.N.Y. 2020) ("[A] plaintiff must 'plead and prove that the alleged discriminatory conduct had an impact' within the state and city respectively to receive the protections of the NYSHRL and NYCHRL.").

*Archdiocese of N. Am.*, No. 20-CV-3809 (JMF), 2021 U.S. Dist. LEXIS 102800, at *21–22 (S.D.N.Y. June 1, 2021). Indeed, in each instance where Johnson failed to allege that an act of purported harassment occurred in New York City, the Court should consider it as having occurred elsewhere.[9] The Everyrealm Defendants cited three cases where far more serious misconduct allegedly occurred in New York wherein the courts nonetheless found that the alleged harassment was only tangentially related to the jurisdiction and thus dismissed those claims. Johnson cites to one inapplicable case.[10] As such, the Court should dismiss Johnson's city and state sexual harassment claims.[11]

   *Kraiem v. Jonestrading Institutional Services LLC* – the sole case cited affirmatively by Johnson on this point – is readily distinguishable and offers no support for his position. In *Kraiem*, the plaintiff alleged that she had been subject to allegedly harassing conduct in London, England; Dallas, Texas; Greenwich, Connecticut and New York City.  As to the alleged conduct in New York City, the plaintiff alleged far more occurring in New York than does Johnson. 492 F. Supp. 3d 184, 190–192 (S.D.N.Y. 2020).  Kraiem alleged she was ostracized and gossiped about while in New York by co-

---

[9] Johnson has sought to re-write his FAC by adding the words "in New York" to various of his allegations.  This, he cannot do.  *See Kirk v. Heppt*, 532 F. Supp. 2d 586, 590 (S.D.N.Y.) ("The 'duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it.'") (quoting 2 Moore's Federal Practice § 12.34[1][b], at 12-61) (alterations in original). In Johnson's Opposition – so as to exaggerate Johnson's presence in New York – Johnson has improperly appended "[in NYC]" or "[NYC]" when describing certain of the allegations from his complaint in his brief.  (See doc. 39 at p. 11). When describing the allegations from his complaint, Johnson is not permitted to re-cast them in this manner to try to rescue his claims from dismissal.

[10] Johnson argues that two of the three cases cited by the Everyrealm Defendants are dated, bad law. However, *Salvatore* and *Germano* have been cited multiple times since the amendment to the NYCHRL for the very propositions advanced by the Everyrealm Defendants. *See, e.g., Orrego v. Knipfing*, 564 F. Supp. 3d 273, 283 (E.D.N.Y. 2021) (citing *Salvatore*); *Brandenberg v. Greek Orthodox Archdiocese of N. Am.*, No. 20-CV-3809 (JMF), 2021 U.S. Dist. LEXIS 102800, at *20 (S.D.N.Y. June 1, 2021) (citing *Salvatore*); *Hernandez v. Coca Cola Refreshments USA, Inc.*, No. 12 Civ. 234 (BMC), 2013 U.S. Dist. LEXIS 172400, at *3 (E.D.N.Y. Dec. 6, 2013) (citing *Germano*).  And, *Lambui*, relied on by the Everyrealm Defendants, is indisputably both recent and on point. No. 14-CV-6457, 2015 U.S. Dist. LEXIS 136329 (E.D.N.Y., Sept. 30, 2015).

[11] Johnson misleadingly states in his Opposition that, "Teyo was in New York City during much of the harassment and he alleges the additional harassment necessarily had its impact in New York because he was deprived of the right to work there every month, as was promised in his employment agreement." (See doc. 39 at p. 17). Once more, at no point in his FAC Complaint does Johnson allege he was prohibited from working in New York because of purported sexual harassment. The Court should reject his continued attempts to amend yet again his sexual harassment claim.

workers because of her prior-relationship with a coworker (*Id.* at 191), and that: (i) co-workers "ogled photos of her"; (ii) her supervisor invited her to a client dinner only to retract the invitation because "the dress code was 'cool and sexy.' So you better not come", and when she attended the dinner her boss introduced her as the head of fashion, asked her if her dress was lingerie, told her he didn't know how she could "wear underwear under that [dress]", and took a photo of plaintiff with the client to suggest the client would change accounts because of how she looked; (iii) she complained to her supervisor that he made her look bad in front of clients, picked on her and used her as a punching bag, and the supervisor apologized; (iv) shortly after the dinner, the plaintiff agreed to have drinks with a client and another supervisor, where the client propositioned the plaintiff by saying "come with me to the toilet and I'll go down on you", and when plaintiff reported the statement to her supervisor – he apologized but made light of the situation by suggesting he would request a big check from the client the following Monday; and, (v) the next day, the supervisor joked about the client's remark at the office and took no further steps. *Id.* at 191–192.  Based on that alleged conduct within New York City, the court permitted the plaintiff to proceed with NYSHRL and NYCHRL claims.  The court "dismisse[d] the NYSHRL and NYCHRL claims based on conduct outside of New York." *Id.*  Here, no one allegedly propositioned Johnson for sexual encounters, made light of such conduct in the workplace, "ogled" him, or made sexually inappropriate commentary regarding his clothing/appearance.  Moreover, under *Kraiem*, Johnson cannot rely on the false allegations of harassing conduct allegedly occurring outside New York to support his NYSHRL or NYCHRL claims.

Johnson's recitation of the allegations in his FAC and citation to his Employment Agreement do not alter the analysis. As the Second Circuit has held, the relevant test is whether the alleged discriminatory acts were "felt by the plaintiff" within the geographic boundaries of New York City or State. *See Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 183 (2d Cir. 2016).  Johnson does not even

address that he lived and worked in Nevada and only physically worked in New York City for approximately one week. (See doc. 34 at p. 9).  Moreover, in his Opposition, Johnson admittedly relies in substantial part on alleged harassment that occurred outside of New York. (See doc. 39 at p. 10–11 ("harassment that began in Austin TX")). The minimal alleged conduct within New York falls squarely within the analysis in *Salvatore*, and Johnson's claim must be dismissed.  (See doc. 34 at pp. 23–24).[12]

Indeed, Johnson attempts to dispel the directly applicable holdings in *Lambui*, *Germano*, and *Salvatore* with mischaracterizations. Although he asserts that "substantial" portions of the harassment in those cases occurred outside of New York, that does not change their collective holding that isolated incidents of purported harassment in New York, like those here, are insufficient to invoke the NYSHRL and NYCHRL.

**D.      The Court Should Reject Johnson's Contradictory Assertions.**

Johnson unsurprisingly urges the Court to ignore what is plain for all to see; that he has manufactured a sex harassment claim solely in response to the Everyrealm Defendants' assertion of their rights to proceed in an arbitral forum.  In this regard, his assertions have dribbled out over a series of filings – presenting a constantly shifting moving target – all with the aim of evading arbitration.

On May 31, 2022, Johnson was terminated by Everyrealm, some ninety-two days after his first day on the job with a three-month old start-up. (See doc. 41 at p. 8). During his short tenure, Johnson was placed on a performance improvement plan after he visibly fell asleep as his desk in the company's open pit-style office, failed to meet his business goals and violated the company's expense policy by

---

[12] Johnson's false assertion that Mrs. Yorio approached him in Austin, Texas and suggested he was promiscuous does not plausibly assert that Mrs. Yorio propositioned him for sex. As described *supra*, this Court unequivocally held Johnson's FAC was his final opportunity to amend his assertions of sexual harassment. His tardy, fabricated, and conclusory assertion that this was a proposition for sex should be rejected.  In any event, this bogus assertion purportedly occurred at a hotel in Austin, Texas and must be accordingly disregarded under New York state and city law.

using his corporate credit card to pay for personal expenses and business expenses that were never approved. (See doc. 9 at p. 9). All of these issues are well-documented.

At no point during his employment or in his subsequent correspondence with the company did Johnson ever complain of any sexual harassment, or any of the claims he now purports to be true. Specifically, he made no allegation of discrimination in his exit interview with then-HR Director Katherine Yost, who is also represented by Johnson's counsel and who could easily prepare a declaration in support of the allegations if he had. Notably, Plaintiff does not point to the existence of any documentary evidence (or witness declaration) – nothing – that would support any of his fabricated allegations.

Johnson has presented an ever-evolving series of allegations fabricated to avoid arbitration – apparently as his counsel educated himself about the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("the EFA Act") – as follows:

- On July 11, 2022, Counsel for Johnson sent a letter to Everyrealm referring to "roughly ten former and current employees . . . [who] have confirmed with data, screenshots, documents, and anecdotes that a toxic work environment exists at Everyrealm." Yet, Johnson points to no such evidence that would support his FAC. Moreover, in this letter, Johnson failed to assert any purported allegations of sexual harassment. (See doc. 36-2).

- On August 9, 2022, with his Charge of Discrimination, Johnson included a copy of his Complaint, stating under oath nothing further than that Mrs. Yorio allegedly called the president of a cannabis company a "dick" and a "fucking dick" and told Johnson he was "not just a pretty face." (See doc. 1 at ¶¶ 2, 43 & 74).

- On September 9, 2022, in his opposition to the Everyrealm Defendants' Motion to Compel Arbitration, Johnson argued that Mrs. Yorio sexually harassed him and others because they are black, but he did not include such an allegation in his FAC. (See doc 13 at p. 15).

- On September 26, 2022, in Johnson's Motion for Leave to file a Sur-reply, there is only one mention of sexual harassment alleged in Johnson's complaint, that in a meeting with Mrs. Yorio, Parking Berling and Teyo Johnson, Mrs. Yorio called Berling a "dick" and a "fucking dick." (See doc. 18).

12

- On October 4 – after five prior submissions and only in response to the Court's directive that he file an amended pleading – Johnson alleged for the first time that he was pressured by Mrs. Yorio and other board members and executives to play sexual "games" that included having intercourse with coworkers and clients during a company trip to Texas; that there was questioning regarding Johnson's sex life; that there had been rumors through Everyrealm about Johnson's sex life and his then-girlfriend's menstruation; and that there had been sexual "slurs" in conversations with Everyrealm employees by Mrs. Yorio to describe subordinates. (See doc. 29 at ¶¶ 2, 51, 54, 56–62, 65, 67 & 89–96). And, for the first time, Johnson included claims against William Kerr alleging that he directed Johnson to refer to an investor by the name of a sex tape. (See id. at ¶¶ 97–104).[13]

Johnson – who worked remotely for the company from Las Vegas and only visited the company's headquarters in New York City on one occasion – notably first alleged that many of these new allegations transpired in Texas at the South by Southwest conference. (See doc. 29 at ¶¶ 53–54)  And only when his jurisdictional shortcomings were pointed out (see doc. 34 at pp. 13 & 18), did he change his story yet again to state that most of the claims had an impact in New York. (See doc. 39 at pp. 10–11).

The Court thus need not accept these latest allegations as true. (See doc. 34 at p. 11). Indeed, Johnson originally and contradictorily claimed, "Everyrealm terminated Mr. Johnson solely on account of his race." (See doc. 1 at ¶ 71). *See Vasquez v. Reilly*, No. 15-CV-9528 (KMK), 2017 U.S. Dist. LEXIS 33968, at *11 (S.D.N.Y. Mar. 9, 2017). That Johnson now disavows these prior judicial admissions is inconsequential.

Moreover, as Johnson relies almost exclusively on alleged communications between himself, Mr. Kerr and Mrs. Yorio to support his sexual harassment claim, he cannot, in turn, assert that communications between them (as to which he raises no question of authenticity) demonstrating the falsity of his assertions are not "integral" to his claim. While the Court need not refer to this factual

---

[13] A party cannot contradict a prior sworn statement "that by omission or addition," contradicts the affiant's prior testimony. *See Hayes v. N.Y.C. Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

record to decide this motion, it can certainly be informed by it.  *See Cano*, 2021 U.S. Dist. LEXIS

188634 at *2 n. 2.  The Court should thus reject Johnson's contradictory assertions.

<u>**ARGUMENTS RAISED BY PUBLIC JUSTICE *ET AL.***</u>

The Court should reject the belated, misguided arguments raised by Public Justice *et al.* ("the

*Amici*"). Their tardy assertions should not change this Court's prior decisions and directives to the

parties, much less the text of the legislation. Indeed, the *Amici*'s central argument that the EFA Act

prohibits arbitration for once and for all the moment a plaintiff merely utters the phrase "sexual

harassment" – regardless of whether such a claim is even plausible, much less capable of surviving

summary judgment – is nowhere in the text of the legislation and bereft of any legal support (let alone

common sense).[14]  Under the EFA, once there is no "sexual harassment dispute," all remaining

arbitrable claims belong in arbitration. Any suggestion otherwise is absurd. And that is not the only

completely unsupportable position advanced by the *Amici*.  Although the EFA expressly preserves the

definitions of sexual harassment under federal, tribal and state law, the *Amici* interpret the legislation to

include disputes regarding gender/sex-based pay discrimination, denied promotions, and disparate

treatment – regardless of whether these claims are tied to a claim of "sexual harassment." This

preposterous assertion far exceeds the plain scope of the statute. And, the *Amici* omit any reference to

the extensive legislative history indicating that the statute is to be narrowly construed, making it clear

that it applies *only* to claims of sexual harassment and any related claims – and not to the entire "case."

A.     <u>**The *Amici*'s Tardy, Misguided Arguments Should Be Rejected As A Matter Of Course.**</u>

On November 22, 2022, *Amicus* Public Justice sought leave to file briefing in the context of the

briefing of a Rule 12(b)(6) motion addressing Johnson's sexual harassment claim. As the Court alluded

to in its Order permitting the *Amicus* filing, Public Justice's brief arrives after the issues that it stated it

---

[14] As this Court has previously noted, the Second Circuit addresses motions to compel arbitration under a summary judgment-like standard.

14

was going to address have already been examined at length by the Court.  Indeed, the arguments in their papers have been briefed extensively, and the Court should give no weight to their views at this late stage. (See doc. 16 at pp. 8–11).

Collectively six briefs have been filed by the parties in this matter alone on the propriety of arbitration, dating back five months ago to the August 19, 2022 Everyrealm Defendants' Motion to Compel Arbitration.  (See docs. 9, 12, 16, 20, 25 & 26).  The Court resolved to provide Johnson a final opportunity to amend his Complaint regarding sexual harassment (which he has since done) and the Everyrealm Defendants a chance to move to dismiss Johnson's sexual harassment claims under the *Iqbal/Twombly* plausibility standard. And, if the Motion to Dismiss was granted, this Action would be compelled to arbitration – if not, the *status quo* would remain.[15]

Timing aside, although the *Amici* sought leave only to brief issues limited to the EFA Act,[16] they instead also addressed whether sexual harassment claims been asserted – and mischaracterized the Everyrealm Defendants' position on that subject along the way.[17]  (See doc. 54 at pp. 18–19). The Court should not entertain the *Amici*'s arguments as to the merits of the sexual harassment claims. *See SEC v. Ripple Labs, Inc.*, No. 20 Civ. 10832 (AT), 2021 U.S. Dist. LEXIS 190855, at *15 (S.D.N.Y.

---

[15] The Court stated, "I think the next move . . . is for you to amend your complaint if you intend to try to augment those [sexual harassment] allegations. . . . If you have anything more to say in support of your sexual harassment claims, factually or legally, this is the time to amend to say it. And I would then propose to give the defense an opportunity to move against it, for you to oppose, and for the defense to reply, and I will then, once and for all, resolve, based on that set of submissions, whether your complaint plausibly pleads a sexual harassment dispute within the meaning of EFA and, on the basis of that determination, make a judgment about arbitrability." (See doc. 61 in Yost v. Everyrealm et al.)

[16] The *Amici* sought briefing because, "this case raises consequential questions of first impression and because Public Justice and other organizations involved in advocating for EFASASHA can provide important context for answering those questions." (See doc. 46 at p. 2).

[17] The Everyrealm Defendants' argument is not (as suggested by *Amici*) that one plaintiff here is a man and one  is a woman, but that facially neutral comments were made to both plaintiffs – one of whom is a man and the other a woman, and therefore neither plaintiff can establish they were purportedly harassed "because of" their sex. *See Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999) ("A plaintiff must demonstrate that she was subjected to the hostility because of her membership in a protected class. In other words, an environment which is equally harsh for both men and women . . . does not constitute a hostile working environment under the civil rights statutes.")

Oct. 4, 2021) (quoting *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970) ("An amicus who argues facts should rarely be welcomed.")).

**B.**   **The EFA Was Designed To Encompass "Claims" Of Sexual Harassment, And, Should Any Claim Subject To The Legislation Survive A Rule 12 Motion, All Unrelated Claims Should Be Severed And Compelled To Arbitration.**

*Amici* selectively quote from the EFA's legislative history to support their assertion that once the words "sexual harassment" have been uttered by a plaintiff, the plaintiff's entire case must generally remain for all time in court (notwithstanding a binding arbitration provision).  But comments by certain Senators key to passing the EFA expressed the opposing view. For example, Senator Ernst stated, "[W]e agreed that harassment or assault claims should not be joined to an employment claim without a key nexus. Harassment and assault allegations are very serious and should stand on their own. The language of this bill should be narrowly interpreted. It should not be used as a mechanism to move employment claims that are unrelated to these important issues out of the current system . . . it is also very important to me that those claims stand separate from any other kind of claim."[18]  Senator Graham likewise stated, "We do not intend to take unrelated claims out of the contract" and warned lawyers of trying to game the system (as has been the case here), "if lawyers try to game the system, they are acting in bad faith. They could be subject to disciplinary proceedings by courts. What we are not going to do is take unrelated claims out of the arbitration contract. So if you have got an hour-and-wage dispute with the employer, you make a sexual harassment, sexual assault claim, the hour-and-wage dispute stays under arbitration unless it is related." *Id.*  Important Democrats (Senators Durbin and Gillibrand) made it clear that they understood and agreed with these concerns. *Id.* at S626-627. Despite the appearance of the word "case" once the statute, the legislation was very clearly meant to

---

[18] 168 Cong. Rec. S625 (daily ed. Feb. 10, 2022).

encompass only "claims" related to sexual harassment or sexual assault.[19] And, as has been addressed previously, there are no "related" claims in this lawsuit. (See doc. 16 at pp. 8–11). Despite the *Amici*'s (and Johnson's) conclusory statements that Johnson was harassed because of his sex and race, there is not a single factual assertion in his FAC to substantiate this outrageous allegation.

The *Amici*'s argument does not hold water, and should be rejected.

**C.    A "Sexual Harassment Dispute" Does Not Encompass Every Claim Based On Gender Or Sex.**

A "Sexual Harassment Dispute" does not include any claim for "unequal treatment on the basis of sex", or any claim "related" to such unequal treatment.[20] The Court should reject this overbroad assertion.

The EFA Act provides that, "[t]he term `sexual harassment dispute' means a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). In discussing this sub-section, Senator Durbin stated, "[The EFA] will not change the law around what constitutes sexual harassment or assault." 168 Cong. Rec. S626 (daily ed. Feb. 10, 2022) (statement of Sen. Richard Durbin). Under New York City law, the most broadly and remedially purposed at issue in this litigation, "'[sexual harassment] is one species of sex- or gender – based discrimination.'" *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 75 (1st Dep't 2009). The same is also true under federal law. *See Vails v. Police Dep't*, 54 F. Supp. 2d 367, 375 (S.D.N.Y. 1999) ("Sexual harassment is a form of gender discrimination . . . ."). All sexual harassment is sex

---

[19] While the Everyrealm Defendants acknowledge the Court's observations regarding the meaning of "case" during the October 6 conference, they do not concede that the use of the word "case" mandates the litigation of claims unrelated to sexual harassment in court in the face of an arbitration agreement.

[20] The *Amici* cite to a number of paragraphs in Johnson's FAC as evidence of "related" claims ("Both Plaintiffs allege they were terminated in part for opposing or reporting sexual harassment. . . . "), but such an argument fails for a number of reasons, including that Johnson does not assert he complained regarding, or objected to, purported sexual harassment. Nor does he claim he was retaliated against in response to such protected activity.

discrimination, but not all sex discrimination is sexual harassment. Public Justice *et al.* falsely equate the two as identical.

Indeed, the *Amici* devoted almost three pages mischaracterizing the Everyrealm Defendants' argument. (See doc. 71 at p. 17.)  It is true that Johnson fails to state a claim for sexual harassment under state, city and federal law because he does not allege any sexual propositions or physical acts against the Everyrealm Defendants. But Johnson's claims also fall short because he does not allege any, let alone legally sufficient, assertions regarding inappropriate comments or remarks concerning his own gender or sex. Even accepting his false allegations as true, Johnson was subject to, at worst, petty slights and trivial inconveniences. The *Amici* would have it that any and all assertions of purported sex discrimination and claims stemming therefrom (or even in the same legal/factual stratosphere) constitute a "Sexual Harassment Dispute", but that is not the law.  The Court should reject this argument.

**D.**      **<u>Once The Sexual Harassment Claim Is Dismissed, The Action Should Be Compelled To Arbitration.</u>**

As decided by the Court, once/if the sexual harassment claim is dismissed, this Action should be compelled to arbitration. Even ignoring this fatal flaw, the *Amici*'s argument that this case must stay with the Court notwithstanding the potential dismissal of the sexual harassment claim fails.

The *Amici*'s citation to Carrie's Law as evidence of legislative intent should be ignored. Carrie's Law was drafted only to encompass claims of sexual assault – not harassment – and it was introduced by a single Republican House Representative with no co-sponsors, never made it out of subcommittee, and was never introduced in the Senate. Carrie's Law, H.R. 2906, 117th Cong. § 402(b)(2)(A) (Apr. 30, 2021). What it said (or didn't say) is of no consequence here.  Nevertheless, had Congress intended the result urged by the *Amici*, it would have so written. Accepting the *Amici*'s interpretation *arguendo* – cases in which sexual harassment claims had long since been dismissed

would have to proceed to trial – the EFA would thus be warped into the FAIR Act, and prohibit arbitration of any employment based dispute so long as the words "sexual harassment" appear on the complaint. Indeed, Senator Ernst expressly rejected the *Amici*'s position on the Senate floor: "If an employment agreement contains a predispute arbitration clause and a sexual assault or harassment claim is brought forward in conjunction with another employment claim and the assault or harassment claim is later dismissed, a court should remand the other claim back to the arbitration system under this bill." 168 Cong. Rec. S626 (daily ed. Feb. 10, 2022) (statement of Sen. Joni Ernst).  As discussed throughout, there are no "related" claims here, and once Johnson's sexual harassment claim is dismissed – the remainder of this action is arbitrable. The only concrete example discussed in the legislative history of a related claim is retaliation following an employee's complaint about sexual assault (or harassment). *Id.* at S626-S627 (statement of Sen. Richard Durbin). As set forth above, such a claim has not been pleaded here.

The *Amici*'s reliance on Rule 11 as a preventative measure for bad faith invocations of the EFA is hollow.  From the *Amici*'s perspective, even if a party violates Rule 11 in pleading frivolous sexual harassment claims, the entire case must remain in court, *unless* courts adopt an EFA-specific rule as to frivolity. (See doc. 8 at n. 4). To be clear, the EFA specifies no such test.  The *Amici* liken application of the EFA to federal question jurisdiction, however, they fail to acknowledge that in matters where federal jurisdiction is invoked on this ground, and the federal claims are dismissed, generally the case is either remanded to state court (here, arbitration) or dismissed entirely (*i.e.*, the parties would then initiate arbitration).[21] Once the Court dismisses Johnson's sexual harassment claim, this Action should be compelled to arbitration.

---

[21] *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

**E.     The Court Should Consider Any Materials Admissible Under Rule 12 Of The Federal Rules Of Civil Procedure When Addressing The Adequacy Of A Sexual Harassment Claim Under The EFA.**

An argument that affirmative defenses and extrinsic evidence may not be considered at the Motion to Dismiss stage is not based in reality.  Apparently concerned that Johnson's claims are indeed nothing more than "petty slights and trivial inconveniences," Public Justice suggests that the Court is somehow precluded from relying upon this legal standard in deciding this motion.[22] This argument is faulty on a number of grounds.

First, as set forth in the Everyrealm Defendants' moving brief, courts in New York and within the Second Circuit routinely accept argument on the "petty slights and trivial inconveniences" point at the pleadings stage, even though the language is derived from an affirmative defense. (See doc. 34 at pp. 16–17). While Public Justice *et al.* suggest that the Court must only consider the "four corners" of the Complaint (and no affirmative defenses), courts regularly consider affirmative defenses asserted in a Rule 12 Motion. *Iowa Pub. Emps.' Retsen. Sys. V. MF Global, Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010) ("'An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint.'").

Second, as described thoroughly in the Everyrealm Defendants' Motion to Dismiss and *supra*, courts need not accept as true conflicting or incoherent pleadings. Despite the *Amici*'s wishes, the EFA Act did not amend the Federal Rules of Civil Procedure to allow a plaintiff to submit contradictory and false allegations, and merely by uttering the words "sexual harassment", avoid arbitration of their claims.

The Court should decline to adopt the *Amici*'s argument.

---

[22] Notably, Johnson himself has not taken the position that the Everyrealm Defendants' "petty slights and trivial inconveniences" argument should not be considered at the Motion to Dismiss stage.

**<u>CONCLUSION</u>**

The Court should dismiss Johnson's sexual harassment claim, and compel the remainder of this Action to arbitration.

Dated: New York, New York
        December 16, 2022

PROSKAUER ROSE LLP

By:      <u>/s/ Lloyd B. Chinn          </u>

Lloyd B. Chinn, Esq.
Eleven Times Square
New York, New York 10036-8299
Ph. (212) 969-3000
Fax (212) 969-2900
lchinn@proskauer.com
*Attorney for Everyrealm Inc.*
*(f/k/a Republic Realm Inc.),*
*Julia Schwartz, William Kerr, and Janine Yorio*