UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

TEYO JOHNSON, :
:
Plaintiff, :
:
-against- : Case No. 1:22-cv-06669(PAE)(GWG)
:
EVERYREALM INC., :
JULIA SCHWARTZ in her individual and :
professional capacities, WILLIAM KERR in his :
individual and professional capacities, and :
JANINE YORIO in her individual and :
professional capacities. :
:
Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS EVERYREALM INC.,
JULIA SCHWARTZ, WILLIAM KERR, AND JANINE YORIO'S RULE 11
MOTION FOR SANCTIONS AGAINST
PLAINTIFF TEYO JOHNSON AND SEPPINNI, LLP**

February 14, 2023

Lloyd B. Chinn, Esq.
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036-8299
Tel. (212) 969-3000
Fax. (212) 969-2900
E-mail: lchinn@proskauer.com

*Attorneys for Defendants Everyrealm Inc.,
Julia Schwartz, William Kerr, and
Janine Yorio*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND .............................................................................................................. 3

I.    Johnson's Initial Demand Letter Setting Forth His Claims Against the Everyrealm Defendants And His Sworn Allegations Against Them Did Not Involve Sexual Harassment. ......................................................................................................... 3

II.   Johnson's Claim Of Sexual Harassment First Appeared After the Everyrealm Defendants Notified His Counsel Of Their Intent To Compel Arbitration. ......................... 5

III.  Johnson's Claims Of Sexual Harassment Are Contradicted By His Own Contemporaneous Writings. ........................................................................................ 6

IV.  Johnson's Counsel Publicized Frivolous Claims With TechCrunch. .................................. 8

ARGUMENT .................................................................................................................. 8

I.    Johnson's Claims Are Factually Frivolous. .................................................................. 9

II.   Johnson's Claims Are Legally Frivolous........................................................................ 12

III.  Johnson And His Counsel Asserted His Claims For An Improper Purpose...................... 14

IV.  Dismissal and Monetary Sanctions Are Appropriate....................................................... 18

CONCLUSION................................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abner Realty, Inc. v. Adm'r of GSA*,
  No. 97 CIV. 3075 (RWS), 1998 WL 410958 (S.D.N.Y. July 22, 1998) ...........................15, 16

*Amorosa v. Ernst & Young LLP*,
  No. 03 Civ. 3902(CM), 2010 WL 245553 (S.D.N.Y. Jan. 20, 2010) .......................................9

*Brown v. Maxwell*,
  929 F.3d 41 (2d Cir. 2019) ...................................................................................................15

*Cameau v. Nat'l Recovery Agency*,
  No. 15-CV-2861, 2018 WL 4853050 (E.D.N.Y. Sept. 28, 2018) ..........................................10

*Carlton Grp., Ltd. v. Tobin*,
  No. 02-CV-5065 (SAS), 2003 WL 21782650 (S.D.N.Y. July 31, 2003) ...............................11

*Colon v. Fashion Inst. of Tech. (State Univ. of N.Y.)*,
  983 F. Supp. 2d 277 (S.D.N.Y. 2013) ..................................................................................14

*Duff v. Pristine Servs., Inc.*,
  No. 19-CV-10423 (RA), 2021 WL 663981 (S.D.N.Y. Feb. 19, 2021) ...................................13

*Four Keys Leasing & Maint. Corp. v. Simithis*,
  849 F.2d 770 (2d Cir. 1988) ..................................................................................................12

*Galin v. Hamada*,
  283 F. Supp. 3d 189 (S.D.N.Y. 2017) ...................................................................................18

*Galonsky v. Williams*,
  No. 96 CIV. 6207 (JSM), 1997 WL 759445 (S.D.N.Y. Dec. 10, 1997) ....................15, 16, 17

*Gelfman Int'l Enters. v. Miami Sun Int'l Corp.*,
  No. 05-CV-3826, 2009 WL 2957849 (E.D.N.Y. Sept. 10, 2009) ..........................................10

*Goodwine v. City of N.Y.*,
  No. 15-CV-2868 (JMF), 2016 WL 3017398 (S.D.N.Y. May 23, 2016) ..................................14

*Gutierrez v. Fox*,
  141 F.3d 425 (2d Cir. 1998) ..................................................................................................10

*Healey v. Chelsea Res., Ltd.*,
  947 F.2d 611 (2d Cir. 1991) ..................................................................................................12

*Kearse v. ATC Healthcare Servs.*,
No. 12 Civ. 233 (NRB), 2013 WL 1496951 (S.D.N.Y. Apr. 8, 2013) ...................................14

*LaVigna v. WABC Television, Inc.*,
159 F.R.D. 432 (S.D.N.Y. 1995) .........................................................................................13

*Maines v. Last Chance Funding, Inc.*,
No. 2:17-CV-05453 (ADS)(ARL), 2018 WL 4558408 (E.D.N.Y. Sept. 21,
2018) .......................................................................................................................................14

*Morley v. Ciba-Geigy Corp.*,
66 F.3d 21 (2d Cir. 1995).....................................................................................................15

*Murray v. Dominick Corp. of Can., Ltd.*,
117 F.R.D. 512 (S.D.N.Y. 1987) ........................................................................................18

*Pedroza v. Ralph Lauren Corp.*,
No. 19-cv-08639 (ER), 2020 WL 4273988 (S.D.N.Y. July 24, 2020) ...................................13

*Pereira v. 3072541 Can. Inc.*,
No. 17-CV-6945, 2018 WL 5999636 (S.D.N.Y. Nov. 15, 2018).........................................10

*Regents of the Univ. of Cal., ex rel. UC Davis Health Sys. v. Stidham Trucking
Inc.*,
No. 16-cv-02835, 2017 WL 3840259 (E.D. Cal. Aug. 31, 2017)..........................................10

*Robles v. Cox & Co.*,
841 F. Supp. 2d 615 (E.D.N.Y. 2012) ..................................................................................14

*Safe-Strap Co. v. Koala Corp.*,
270 F. Supp. 2d 407 (S.D.N.Y. 2003)...................................................................................18

*Salovaara v. Eckert*,
222 F.3d 19 (2d Cir. 2000).....................................................................................................10

*Sosa v. Medstaff, Inc.*,
No. 12 Civ. 8926 (NRB), 2013 WL 6569913 (S.D.N.Y. Dec. 13, 2013)..............................13

*Sussman ex rel. Guilden v. Bank of Isr.*,
56 F.3d 450 (2d Cir. 1995).....................................................................................................16

*Syeed v. Bloomberg*,
568 F. Supp. 3d 314 (S.D.N.Y. 2021)....................................................................................13

*Watkins v. Smith*,
No. 12 CIV. 4635 DLC, 2013 WL 655085 (S.D.N.Y. Feb. 22, 2013)...................................11

*Williamson v. Recovery L.P.*,
    542 F.3d 43 (2d Cir. 2008)..................................................................................................9

**STATUTES**

Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act,
    9 U.S.C. §§ 401, 402........................................................................................... passim

Fair Labor Standards Act, 29 U.S.C. §§ 201–09 .........................................................12

New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 ......................................13, 14

New York State Human Rights Law, N.Y. EXEC. LAW § 296.................................................13, 14

**OTHER AUTHORITIES**

168 Cong. Rec. S627 (daily ed. Feb. 10, 2022) (statement of Sen. Kirsten
    Gillibrand)..................................................................................................................3

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure, Civil
    Procedure* § 1337.1 (4th ed. 2018) .........................................................................11

Fed. R. Civ. P. 11 ....................................................................................................... passim

Fed. R. Civ. P. 11(b) ...........................................................................................9, 12, 14, 15

Fed. R. Civ. P. 11(c) ...................................................................................................11, 18

Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 17(A)(2)(a)
    (3d ed. 2000) .............................................................................................................11

## PRELIMINARY STATEMENT

Plaintiff Teyo Johnson's sexual harassment claim rests on a series of fabrications designed to coerce a multi-million-dollar-settlement out of Everyrealm Inc. ("Everyrealm" or the "Company") and individually-named defendants Julia Schwartz, William Kerr and Janine Yorio (collectively "the Everyrealm Defendants").  To that end, he has now pressed demonstrably false charges of sexual harassment in his Second Amended Complaint (the "SAC")[1] to inflict maximum damage on the reputation of a nascent company, heedless of the organizational and human cost.  Setting aside their gross insufficiency as a matter of law, his newest, contrived allegations of sexual harassment are demonstrably false and flatly contradicted by his own words, as documented in incontrovertible evidence.  Without question, Johnson knew that his claims of sexual harassment were false at the time he made them, and his counsel either knew or should have known through the most basic investigation that such claims were false.

It defies the simplest of logic that the "sexual" harassment Johnson experienced while at Everyrealm was somehow so hostile, but yet he didn't mention that issue in his July 11, 2022 demand letter and only came up with the most serious (among largely banal) allegations months later.  The malicious intent behind Johnson's allegations of sexual harassment is manifest: it was only after the Everyrealm Defendants provided Johnson with notice of his obligation to arbitrate that—out of whole cloth—he fabricated a new narrative involving allegations of sexual harassment and publicly filed those allegations before this Court. Indeed, he originally alleged that he was discharged "solely on account of his race." (See doc. 1 at ¶ 71.) Now, Johnson's Action has morphed into a case focused on sexual harassment. Notwithstanding this absurd

---

[1] When the Everyrealm Defendants served their safe harbor letter, it was focused on Johnson's First Amended Complaint. The Second Amended Complaint, filed on January 18, 2023, did not eliminate any of the frivolous allegations or assert any new. (See docs. 59–62.)

deviation, the documentary evidence contradicts Johnson's claims that he was offended by the slanderous assertions advanced regarding Mrs. Yorio and others.

On January 11, 2023, the Everyrealm Defendants notified Johnson of their intent to seek Rule 11 sanctions for his actions, and described for him the array of evidence showing the falsity of his sexual harassment claim and his fraudulent attempt to avail himself of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("the EFA Act") – but to date he has refused to withdraw this action. Johnson and his counsel had, in fact, been placed on notice of the documentary evidence revealing their lies long before. Throughout the Everyrealm Defendants' Motion to Compel Arbitration filings, the Everyrealm Defendants made the falsity of these assertions clear, but Johnson and his counsel nonetheless pressed forward with his malicious campaign to publicly smear the Everyrealm Defendants and fraudulently invoke the newly-passed EFA Act.

Johnson's SAC is nothing more than a web of fabricated allegations of inconsequential sexual chatter that either never occurred at all or that have been distorted beyond recognition. And these lies have been leveled only for the purposes of trying to avoid arbitration and extort a wholly unwarranted multi-million-dollar-settlement. Johnson and his counsel violated Rule 11 by filing knowingly frivolous and false claims for an improper, malicious purpose.  Indeed, Johnson's counsel is especially culpable because he knew that he had no basis to file Johnson's contrived claims, but he did so anyway in order to stir up media attention[2] and to pressure Everyrealm into paying a large sum in settlement.

---

[2] In fact, Counsel for Johnson has spoken to the press approximately 10 times since his original filing, including eliciting two feature-length articles in industry publications.  *See* https://seppinnilaw.com/#press. The reputational damage caused by these fabrications now lives forever on the internet and has had an impact on Everyrealm's business and future prospects.

Rule 11 was designed for exactly this type of case. Instead of asserting good-faith claims, Johnson and his counsel have abused the court system in an attempt to coerce a settlement and to smear a young company on the forefront of groundbreaking technology with false and frivolous claims under the cloak of litigation privilege. Sanctions are particularly appropriate here given Johnson and his counsel's manipulation of the EFA Act. Indeed, *Amicus Curiae* Public Justice – a self-described expert in the passage and application of the legislation – stated that Rule 11 sanctions are the appropriate remedy for a plaintiff's attempted misapplication of the legislation.[3] To address this misconduct and deter it in the future, sanctions are appropriate.

## BACKGROUND

I. **Johnson's Initial Demand Letter Setting Forth His Claims Against the Everyrealm Defendants And His Sworn Allegations Against Them Did Not Involve Sexual Harassment.**

Everyrealm hired Johnson as a Director of Strategic Partnerships on March 1, 2022, transferred him to an Asset Management position roughly 30 days later, and discharged him on May 31, 2022.  During his three months of employment, Everyrealm paid Johnson approximately $31,000. At no point during his employment did Johnson make a complaint regarding purported sexual harassment or any other form of alleged misconduct.

On July 11, 2022, Johnson (through counsel) served Everyrealm with a Demand Letter setting forth his claims against the Company.[4] (See doc. 36-2). In the Demand Letter, Johnson

---

[3] (See doc. 71 at p. 13 in *Yost v. Everyrealm et al.* ("Defendants contend that interpreting the Act in this manner will result in plaintiffs rushing to add frivolous sexual harassment claims to their other employment claims to invoke EFASASHA. However, this concern is misplaced given that Federal Rule of Civil Procedure 11 and other ethical restraints on lawyers' practice will serve to strongly discourage those who are so inclined from adding frivolous allegations to a complaint. *See* 168 Cong. Rec. S627 (daily ed. Feb. 10, 2022) (statement of Sen. Kirsten Gillibrand) ("Victims here must follow the rules and plead a case correctly, and then they must also affirm to the Court that they have a good-faith basis for doing so. Attorneys must do the same thing. If victims and attorneys break those rules, they can be sanctioned in court . . . .")).

[4] In response to the Everyrealm Defendants' Motion to Compel Arbitration, Johnson referenced a "confidential letter to Defendants" in which he falsely stated he had "inform[ed] them **in detail of well-founded allegations of sexual**

said not a single word about sexual harassment. (Id.)  In response to the Demand Letter, Everyrealm, via counsel, notified Johnson's counsel of his obligation to arbitrate and even produced Johnson's employment agreement (which contained an arbitration provision).[5] (See doc. 10-1).

Nevertheless, Johnson filed his initial Complaint with this Court less than a month later on August 5, 2022. (See doc. 1). In his Complaint, as to any possible sexual harassment claim, Johnson merely asserted that Mrs. Yorio: 1. told him he was "not just a pretty face" during his remote, video interview; and, 2. called a third-party potential customer a "dick" and a "fucking dick", and "used the word 'dick' at least nine times." (Id. at ¶¶ 43 &74). On August 9, 2022, Johnson submitted his sworn Charge of Discrimination to the Equal Employment Opportunity Commission. (See doc. 36-1).[6]  In his Charge, Johnson "sw[ore] or affirm[ed] that [he] [] read the above charge and that it is true to the best of [his] knowledge, information and belief." Johnson's sworn Charge mirrored his initial Complaint. At that time, Johnson's frivolous sexual harassment claim rested principally on a facially-neutral compliment – allegedly being told he was "not just a pretty face" – during his pre-hire video interview by Mrs. Yorio, along with comments directed to third-parties. (See doc. 62-3 at ¶ 48.)  As is discussed below, these assertions on their face do not constitute sexual harassment and when considered in conjunction with contemporaneous writings by Johnson plainly were not viewed as such.

---

**harassment** and other misconduct." (See doc. 13 at p. 8) (emphasis added). That letter does not contain a single allegation of sexual harassment in reference to Mr. Johnson. (See doc. 36-2).

[5] More recently, the Everyrealm Defendants located a second arbitration agreement, and produced it to this Court. (See docs. 64–65).

[6] Johnson filed a Second Amended Complaint, including his purported claims under Title VII, on January 18, 2023. (See docs. 59–62).

Notwithstanding the foregoing, on September 1, 2022 Johnson demanded Everyrealm pay him $1.95 million dollars to settle this action, which amounts to over $20,000.00 in damages for each day of his relationship with Everyrealm.

## II.     Johnson's Claim Of Sexual Harassment First Appeared After the Everyrealm Defendants Notified His Counsel Of Their Intent To Compel Arbitration.

As explained above, it was not until after Everyrealm notified Johnson of its intent to enforce its right to arbitrate that Johnson first asserted he had been subjected to purported sexual harassment in a transparent attempt to fraudulently avail himself of the protections of the EFA Act. Moreover, the most recent allegations of sexual harassment appearing in Johnson's FAC were not alleged until ninety-six (96) days after his first iteration of his claims. Indeed, they were glaringly absent from Johnson's Demand Letter, Complaint, sworn Charge of Discrimination, Opposition to the Defendants' Motion to Compel Arbitration, Declaration in Support of his Opposition to the Defendants' Motion to Compel Arbitration, Sur-reply to the Defendants' Reply in Support of its Motion to Compel Arbitration, Declaration in Support of his Sur-reply to the Defendants' Reply in Support of its Motion to Compel Arbitration or Motion for a Temporary Restraining Order and Preliminary Injunction.[7] This is so, even though: (i) the Defendants made it plain from their earliest filing that they challenged the sufficiency of any purported sexual harassment claim (See Doc. 9 at n. 2), (ii) the Court itself issued a September 16, 2022 Order providing in relevant part that, "it will evaluate the motion to compel arbitration under similar standards to a motion for summary judgment . . . and that Plaintiff should attach such materials as are necessary for the Court to resolve the Motion."  (See doc. 22); and (iii) Johnson utilized these prior filings to assert and continually expand on his allegations, going as far as to allege he

---

[7] All told, the allegations were absent from Johnson's initial eleven filings and correspondence.

was somehow subjected to "improper fetishization of Black men."[8] (See doc. 14 at ¶ 6).  Johnson

even discussed the South by Southwest Music Festival in a prior declaration, but never alleged

he was subjected to sexual harassment while there. (*See* Doc. 27 at ¶ 3).

Indeed, Johnson's original concoction – that he was discharged "solely on account of his

race" (See doc. 1 at ¶ 71) – has been cast aside in an attempt to avoid arbitration.  Now, the claim

is that Johnson was sexually harassed, and that all of his claims should be exempt from

arbitration.

### III.   Johnson's Claims Of Sexual Harassment Are Contradicted By His Own Contemporaneous Writings.

In addition to the foregoing, Johnson's claims are contradicted by his own

contemporaneous writings.  Just as the alleged "sexual harassment" was supposedly occurring

during his remote, pre-hire interview (See doc. 62-3 at ¶ 48), Johnson wrote to Mrs. Yorio that

their meeting was a "sincere pleasure," and stated that Mrs. Yorio was a "leader that [he] can

follow" and that "[he] would love to be a part of [her] team." (See doc. 17-1).  Thus Johnson's

very praise of Mrs. Yorio confirms that he did not suffer from any sexual harassment during his

interview.  Moreover, in his FAC, Johnson attempts to up the ante purely for shock value,

claiming he was also subjected to thinly veiled sex games, discussions regarding genital size,

accusations of promiscuity, and conversations regarding his coworkers' sex lives, but these are

patently false allegations.

In describing the alleged "dick" incident between Mrs. Yorio and the third-party potential

customer, Johnson endorsed Mrs. Yorio's purported description of the potential customer's

representative. Indeed, Johnson wrote:"[By the way] Janine[] [Yorio's] spidey senses were right

---

[8] That allegation is nowhere to be found in his FAC or SAC.

about [the representative]. A reliable source just told me [he] is being pushed out by their silent partner(s)." (See doc. 38-1). Johnson went so far as to state he would "never question Janine's spidey senses." (Id.) Johnson even sent an unsolicited message to Mrs. Yorio and Ms. Schwartz stating that the potential customer was "in love" with Mrs. Yorio, and Mrs. Yorio stated the individual had a "bad personality disorder." (See doc. 37-1). In agreement, Johnson replied, "I doubt anyone has ever called him out like that in front of his people before . . . It like my kids Mom, [the potential customer's representative] didn't choose to be like this[.]" (Id.) And, immediately following the purportedly traumatic South by Southwest Music Festival, Johnson wrote to Mrs. Yorio on March 16, 2022 and stated: "Just got to the crib in Vegas. Thank you so much for everything Janine, I really enjoyed being around you and learning from you and working with you. Not to mention the immense amount of fun and laughter. I truly feel like I'm part of a tribe that is on a special journey during a special time. I AM ALL IN. Thanks again!" (See doc. 37-2 (emphasis in original)).

Moreover, on April 19, 2022, Johnson sent a picture of a female in a hat to Mr. Kerr, and when Mr. Kerr inquired who she was, Johnson wrote: "21 year old smoke show, her [boyfriend] is older than me . . . Gonna snatch it up when they part ways . . . Catch and release [Mr. Kerr]!!"[9] (See doc. 35-1).

Finally, in response to Mrs. Yorio's purported inappropriate inquiry into Johnson's sex life, former Human Resources Director Katherine Yost wrote to Mrs. Yorio: "Look at you blaming yourself for Teyo['s] misogyny like you encouraged [it]. All you did was engage about a friend he introduced. We've been gaslit to believe we bring this all on. And it's horseshit." (See

---

[9] "Catch and release" presumably meaning that Johnson would engage in sexual relations with this woman, and then never see her again.

doc. 37-3); and, "[Johnson] is a misogynist that's evident[.] No[,] [Johnson] lives in a world where that's part of the persona . . . Joking about a dog in a purse is not asking for sexual updates . . . It's gross and most people (humans) know not to do this." (See doc. 37-4). When Mrs. Yorio stated "nobody else on the team would do this", Yost stated "No one else has." (Id.).

There can be no question, Johnson's assertions of sexual harassment are nothing more than fabrications and lies.

## IV.   Johnson's Counsel Publicized Frivolous Claims With TechCrunch.

On the same day Johnson's counsel filed the FAC, he sat for an interview with the publication TechCrunch and specifically discussed, notwithstanding the facts and history of the litigation, the "several new allegations of sexual harassment." Johnson's counsel knew, from his prior appearance before this Court, that depending upon the merits of the purported sexual harassment claim, this case could be compelled to arbitration.  In an effort to stoke the flames of publicity for (possibly) the final time, he sought to publicize patently false allegations (that were created to avoid arbitration in the first instance) and thereby assert pressure on the Everyrealm Defendants to settle.  And he even went as far as to attach to the FAC anonymous, irrelevant, and incomplete screenshots that were purposefully prepared to generate attention. (See doc. 29 at p. 2).

## ARGUMENT

Rule 11 prohibits pleadings that are factually frivolous, legally frivolous, or submitted for an improper purpose.  Here, Johnson and his counsel violated all three rules.

First, Johnson asserted claims based on knowingly false factual allegations that were directly contradicted by his own words. After the Everyrealm Defendants served Johnson with their draft Rule 11 memorandum of law, he failed to cure the violation and refused to withdraw his claims of sexual harassment.

Second, Johnson also violated Rule 11 by asserting legally frivolous claims.  The sexually-tepid statements allegedly made in no way come close to amounting to sexual harassment; even if the conversations had happened in the manner alleged (which they did not), they amount to nothing more than petty slights and trivial inconveniences.

Third, Johnson's FAC was plainly calculated to serve improper purposes: to avoid arbitration, generate publicity, defame Defendants, and coerce a settlement. This is clear not only from the contortions undertaken to attempt to improperly invoke the EFA Act, but also from the timeline of the evolution of his claims.[10]

These circumstances make clear that his frivolous claims were a calculated move to use false statements as a litigation and publicity ploy and to coerce Defendants into acceding to multimillion-dollar settlement demands. The Court should impose sanctions.

## I.      Johnson's Claims Are Factually Frivolous.

Under Rule 11(b)(3), all "factual contentions" in a pleading must "have evidentiary support" or be "likely [to] have evidentiary support after a reasonable opportunity for further investigation or discovery." This prohibits parties and their counsel from making "false, misleading, improper, or frivolous representations to the court." *Williamson v. Recovery L.P.*, 542 F.3d 43, 51 (2d Cir. 2008). As this Court has recognized, "both a represented party and his attorney can be sanctioned under Rule 11(b)(3) for the factual insufficiency of a complaint." *Amorosa v. Ernst & Young LLP*, No. 03 Civ. 3902(CM), 2010 WL 245553, at *4 (S.D.N.Y. Jan. 20, 2010). Sanctions are especially appropriate when a party has "actual knowledge" of the

---

[10] Manipulations and mischaracterizations are not limited to Johnson. Indeed, on November 23, 2022, Johnson's counsel attempted to mislead the Court by arguing the Everyrealm Employee Handbook suggested employees could file and be awarded remedies in federal court. (See doc. 49). When, in fact, the language suggests that the EEOC may do so. (Id.).

"wrongful conduct," including when the party knows that the pleading contains "false statements." *Salovaara v. Eckert*, 222 F.3d 19, 33 (2d Cir. 2000).

Accordingly, courts award sanctions when a plaintiff's allegations are contradicted by publicly available evidence or evidence in the plaintiff's own possession. *See, e.g.*, *Cameau v. Nat'l Recovery Agency*, No. 15-CV-2861, 2018 WL 4853050, at *3 (E.D.N.Y. Sept. 28, 2018) (imposing sanctions where a call transcript in plaintiff's possession contradicted "key factual allegations in the Complaint"); *Regents of the Univ. of Cal., ex rel. UC Davis Health Sys. v. Stidham Trucking Inc.*, No. 16-cv-02835, 2017 WL 3840259, at *2, 7-9 (E.D. Cal. Aug. 31, 2017) (imposing Rule 11 sanctions where "allegations in Plaintiff's complaint [were] directly contradicted by email evidence in Plaintiff's possession"). And in applying Rule 11, this Court has found it "particularly concerning" when a plaintiff "take[s] unreasonable positions," "omit[s] crucial facts," and "make outright misrepresentations," especially for the purpose of "extort[ing] unwarranted settlements." *Pereira v. 3072541 Can. Inc.*, No. 17-CV-6945, 2018 WL 5999636, at *3 (S.D.N.Y. Nov. 15, 2018)

Aside from knowing falsehoods, attorneys have an "affirmative duty . . . to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Gelfman Int'l Enters. v. Miami Sun Int'l Corp.*, No. 05-CV-3826, 2009 WL 2957849, at *4 (E.D.N.Y. Sept. 10, 2009) (quoting *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998)). The inquiry must be "objective[ly]" reasonable. *Id*. Indeed, even after the pleading is filed, if a party is provided evidence establishing the frivolity of their claim(s) and nonetheless refuses to withdraw them, they may be subject to sanctions. *See Carlton Grp., Ltd. v. Tobin*, No. 02-CV-5065 (SAS), 2003 WL 21782650, at *6 (S.D.N.Y. July 31, 2003) ("Rule 11 sanctions are appropriate where an

attorney or party declines to withdraw a claim 'upon an express request by his or her adversary after learning that [the claim] was groundless.'").

A Rule 11 violation is typically complete at the time when the frivolous claim or allegation is filed. *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure, Civil Procedure* § 1337.1 (4th ed. 2018). After a violation occurs, the responsible party may be sanctioned if the offending claim or allegation is not "withdrawn or appropriately corrected" within the safe-harbor period. Fed. R. Civ. P. 11(c)(2). If the offending party files an amended complaint that fails to cure the original violation, then sanctions may be sought and imposed without starting a new safe-harbor period. *See Watkins v. Smith*, No. 12 CIV. 4635 DLC, 2013 WL 655085, at *7 (S.D.N.Y. Feb. 22, 2013); Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 17(A)(2)(a) (3d ed. 2000).

Here, Johnson and his counsel violated Rule 11 by making patently false and frivolous factual allegations in the FAC. Johnson not only knew his allegations were false when he made them, but they are squarely refuted by statements that he made about/to Mrs. Yorio.  In his Complaint, Johnson claims that Mrs. Yorio told him he was "not just a pretty face" during his pre-hire video interview, which was attended by Mrs. Yorio, Johnson and another male Everyrealm employee, but at the same time, he undisputedly praised Mrs. Yorio for the "sincere pleasure" of speaking with her and that she was a "leader that [he] can follow."  (*See supra* at p. 6).  It simply cannot be that Johnson had been harassingly told he was "not just a pretty face" when he praised Mrs. Yorio for her conduct during the interview. Concerning the alleged "dick" remarks, Johnson agreed with Mrs. Yorio that the representative of the potential customer had a "bad personality disorder," and stated "I doubt anyone has ever called him out like that in front of his people before . . . It like my kids Mom, [the potential customer] didn't choose to be like

this[.]" (See doc. 37–1). And, immediately following the purportedly traumatic South by Southwest Music Festival, Johnson wrote to Mrs. Yorio and stated: "Just got to the crib in Vegas. Thank you so much for everything Janine, I really enjoyed being around you and learning from you and working with you. Not to mention the immense amount of fun and laughter. I truly feel like I'm part of a tribe that is on a special journey during a special time. I AM ALL IN. Thanks again!" (See doc. 37-2 (emphasis in original)).

The idea that Johnson was offended by the assertions cast against Mrs. Yorio and Mr. Kerr is nothing short of preposterous. Indeed, in April 2022, Johnson wrote to Mr. Kerr describing a woman he was pictured with, and described her as a "21 year old smoke show, her [boyfriend] is older than me . . . Gonna snatch it up when they part ways . . . Catch and release [Mr. Kerr]!!" (See doc. 35-1).

Clearly, the intimation that Mrs. Yorio or Mr. Kerr forced Johnson to engage in unwelcome conversations of a sexual nature is an outright lie.

## II. Johnson's Claims Are Legally Frivolous.

In addition to his false factual allegations, Johnson and his counsel also violated Rule 11 by asserting legally frivolous claims. Rule 11(b)(2) requires that any "claims" or "legal contentions" asserted by a party must be "warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law." This provision prohibits parties from filing claims when "it is patently clear that [they have] absolutely no chance of success." *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991). Thus, a violation occurs when "it should have been patently obvious to any attorney who had familiarized himself [or herself] with the law" that the claim could not succeed. *Four Keys Leasing & Maint. Corp. v. Simithis*, 849 F.2d 770, 773 (2d Cir. 1988). For example, this Court has awarded sanctions when a plaintiff's "Title VII and FLSA claims [were] wholly frivolous"

because there was "no good faith basis for arguing that [the plaintiff] should have a cause of action." *LaVigna v. WABC Television, Inc.*, 159 F.R.D. 432, 435-36 (S.D.N.Y. 1995).

Here, it was—or should have been—obvious to Johnson's counsel that his claims were legally frivolous. Indeed, Johnson asserts causes of action for "sexual harassment" against Ms. Schwartz (See doc. 62-3 at COA 3 and 4), but the Complaint is devoid of a single factual assertion alleging such misconduct against her. And, when the Everyrealm Defendants noted as much in their Motion to Dismiss (See doc. 37 p. 11 at n.4), Johnson did not raise any argument in response.

Moreover, accepting all of Johnson's lies as true, his purported "sex harassment" claim is not remotely plausible under any federal, state or local laws. Johnson's allegations—which stem from facially-neutral comments about his appearance—do not come close to reaching the "severe and pervasive" standard under federal law. *See Sosa v. Medstaff, Inc.*, No. 12 Civ. 8926 (NRB), 2013 WL 6569913, at *5-6 (S.D.N.Y. Dec. 13, 2013) (dismissing Title VII race-based hostile work environment claim where plaintiff's claim was "based on only two comments," including "'You look like Urckle'" and "'You're so street, Eddie'"); *see also Duff v. Pristine Servs., Inc.*, No. 19-CV-10423 (RA), 2021 WL 663981, at *2 (S.D.N.Y. Feb. 19, 2021) (graffiti plaintiff encountered at the job site which "included a racial epithet derogatory to African Americans and a reference to the KKK" insufficient to prove hostile work environment). Further, Johnson's newest allegations in the FAC have no connection to New York, given that the allegations occurred while he was in Nevada and Texas, and thus there is no cognizable claims under New York law. *See, e.g., Syeed v. Bloomberg*, 568 F. Supp. 3d 314, 329-330 (S.D.N.Y. 2021) (dismissing plaintiff's NYCHRL and NYSHRL claims where she did not work in New York, even where she sought a promotion in New York City); *Pedroza v. Ralph Lauren Corp.*, No. 19-

cv-08639 (ER), 2020 WL 4273988, at *2, 4-6 (S.D.N.Y. July 24, 2020) (dismissing NYSHRL and NYCHRL claims because plaintiff who worked in New Jersey could not establish impact in New York); *Maines v. Last Chance Funding, Inc.*, No. 2:17-CV-05453 (ADS)(ARL), 2018 WL 4558408, at *8 (E.D.N.Y. Sept. 21, 2018) (dismissing NYSHRL claim brought by a plaintiff who worked with people in New York, but did not personally work in New York); *Kearse v. ATC Healthcare Servs.*, No. 12 Civ. 233 (NRB), 2013 WL 1496951, at *1-2 (S.D.N.Y. Apr. 8, 2013) (dismissing NYCHRL claim where plaintiff did not work in New York City); *Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 625 (E.D.N.Y. 2012) (granting motion to dismiss NYCHRL claim and stating that "the relevant location of the injury for purposes of the impact analysis is . . . the [p]laintiff's place of employment").  But even if there were, the allegations remain insufficient as a matter of law to evidence sexual harassment.  *Goodwine v. City of N.Y.*, No. 15-CV-2868 (JMF), 2016 WL 3017398, at *8-9 (S.D.N.Y. May 23, 2016) (allegation plaintiff was "referred to as a 'cunt' and 'bitch' by a manager . . . that she was once asked rhetorically if she was 'smoking crack' (a comment that she perceived to be racial) . . . and that she was referred to as 'shit girl,'" fail to allege hostile work environment under NYCHRL and were "stray remarks using nominally gendered or racial language"); *Colon v. Fashion Inst. of Tech. (State Univ. of N.Y.)*, 983 F. Supp. 2d 277, 292 (S.D.N.Y. 2013) (allegations that plaintiff was subject to "intense scrutiny and micro-management on a daily basis" and reprimanded more harshly than white employees insufficient to sustain a hostile work environment claim).

There is no question, Johnson's sexual harassment claim is legally frivolous.

## III.   Johnson And His Counsel Advanced His Claims For An Improper Purpose.

Johnson's false allegations and improper tactics were designed to harass the Everyrealm Defendants into acceding to his approximately two-million-dollar-settlement demand. Rule 11(b)(1) prohibits claims that are "presented for any improper purpose, such as to harass, cause

unnecessary delay, or needlessly increase the cost of litigation." As the Second Circuit has noted, courts must exercise "vigilance" to ensure that litigation does not "become a vehicle for improper purposes." *Brown v. Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019). Because the "legal process is already susceptible to abuse," courts must ensure that "[u]nscrupulous litigants" do not "weaponize" litigation to "humiliate and embarrass their adversaries" by "defam[ing] [them] in court pleadings or depositions without fear of lawsuit and liability." *Id.*

As a general matter, "the total lack of substance" of a plaintiff's claims itself "give[s] rise to the inference that the action was filed for improper purposes." *Abner Realty, Inc. v. Adm'r of GSA*, No. 97 CIV. 3075 (RWS), 1998 WL 410958, at *7 (S.D.N.Y. July 22, 1998). That is especially true when a plaintiff asserts "baseless claims as part of a public relations campaign in order to embarrass the defendants and thereby coerce a settlement." *Galonsky v. Williams*, No. 96 CIV. 6207 (JSM), 1997 WL 759445, at *6 (S.D.N.Y. Dec. 10, 1997). Thus, using frivolous filings to "intimidate the defendant into a large settlement" is "an improper purpose under Rule 11(b)(1)." *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995).

That is exactly what Johnson and his counsel did here. Johnson manufactured allegations of sexual harassment only after the Everyrealm Defendants put him on notice of their intent to compel arbitration. He did so only to attempt to fraudulently invoke the EFA Act. His counsel sat for an interview with TechCrunch on the same day he filed Johnson's FAC for the purpose of publicizing those bogus claims, which was clearly done in an effort to generate publicity, destroy the Everyrealm Defendants' reputations, and extort a settlement.

Importantly the frivolous nature of Johnson's claims speak for themselves. As explained at length above, the core factual allegations are not only knowingly false, but easily disproved based on documentary evidence—his very own words. If Johnson and his counsel did not know

his claims were frivolous at the time of filing, they should have known through the most rudimentary investigation. And, they certainly knew after the Everyrealm Defendants filed their Motion to Compel Arbitration, Reply in Support of their Motion to Compel Arbitration, Motion to Dismiss, Reply in Support of their Motion to Dismiss, and the four declarations and seven exhibits submitted therewith which refuted Johnson's substantive assertions, and subsequently served a Rule 11 letter along with a draft of this memorandum of law. In addition, Johnson's claims are also legally frivolous because the allegations of sexual harassment, even if true, were not pleaded with any support sufficient to meet the requisite standards.  The total lack of legal and factual support for his claims thus "give[s] rise to the inference that the action was filed for improper purposes." *Abner Realty*, 1998 WL 410958, at *7.

Moreover, Johnson's baseless claims were asserted for the improper purpose of fraudulently invoking the EFA Act because, prior to being confronted with his obligation to arbitrate, he had plainly never intended to pursue any such claim. Johnson only warped this action into one regarding sexual harassment in the hopes that he could avoid arbitration, and that public scrutiny stemming from his claims with this Court would force the Everyrealm Defendants to settle.

Further, Johnson's counsel's frequent sprints to the press reveal his and his client's improper purpose. When a complaint "lack[s] foundation in law or fact," then filing it "with a view to exerting pressure on defendants through the generation of adverse and economically disadvantageous publicity reflect[s] an improper purpose." *Sussman ex rel. Guilden v. Bank of Isr.*, 56 F.3d 450, 459 (2d Cir. 1995). Accordingly, "it is appropriate to consider" the "press" generated "by counsel in assessing the issue of his good faith in filing frivolous claims." *Galonsky*, 1997 WL 759445, at *6. Here, as explained above, Counsel for Johnson has spoken to

16

the press approximately ten times since filing claims against the Everyrealm Defendants.[11] The improper purpose of generating publicity was especially evident here because Johnson's counsel seized on Johnson's patently false and frivolous claims to secure publicity (and thereby increase the pressure for a settlement); he also used Johnson's false claims in an attempt to secure a multi-million-dollar-settlement. Indeed, he sat for an interview with TechCrunch and repeated the FAC's fabrications.  He thus "made good on [the] threat he had previously made to defense counsel . . . that unless defendants paid him," they would face public allegations that would "cause [them] personal embarrassment" and serious reputational harm. *Galonsky*, 1997 WL 759445, at *3.

Indeed, Johnson's counsel has stated to the press that he represents a multitude of former (and possibly current) Everyrealm Employees, but that claim is apparently false as well. According to the August 8, 2022 Decrypt article, Johnson's counsel stated that "Johnson and Yost are 'two of the numerous clients we represent who intend to bring claims against Everyrealm,' and that [Johnson's counsel] has spoken to about 10 total current and former Everyrealm employees that have 'shared disturbing allegations,' he said." Johnson's counsel only made his statements to generate negative publicity around the Everyrealm Defendants, as no more than four claimants have surfaced to date, and all of them appear to be conspiring together to bring false claims.

There can be no doubt – Johnson and his counsel have thus advanced his claims for an improper purpose.

---

[11] *Recent Press*, Seppinni LLP, https://seppinnilaw.com/#press (last visited Feb. 14, 2023).

### IV.     Dismissal and Monetary Sanctions Are Appropriate.

Rule 11 permits a sanction of dismissal "for serious misconduct when lesser sanctions would be ineffective or are unavailable." *Safe-Strap Co. v. Koala Corp*., 270 F. Supp. 2d 407, 418 n.8 (S.D.N.Y. 2003); *see also Murray v. Dominick Corp. of Can., Ltd*., 117 F.R.D. 512, 516 (S.D.N.Y. 1987). The Court is likewise authorized to enter "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). Such an order can encompass the fees and costs a party incurs for filing the Rule 11 motion, as well as the fees and costs of litigation that "the parties would have avoided" had the plaintiff "withdrawn is claims" after learning that the defendant intended to seek Rule 11 sanctions." *Galin v. Hamada*, 283 F. Supp. 3d 189, 204 (S.D.N.Y. 2017).

Here, both dismissal of the sexual harassment claims and monetary sanctions are appropriate.[12] First, the Court should dismiss Johnson's sexual harassment claim with prejudice, as that is the only way to end the Rule 11 violation by stopping him from pursuing his frivolous claims. And second, the Court should require Johnson and his counsel to reimburse the fees and costs that the Everyrealm Defendants have incurred to prepare and file this motion, and otherwise to defend themselves against Johnson's malicious fabrications. Sanctions are appropriate against Johnson's counsel because he participated in the Rule 11 motion by filing the frivolous SAC.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should impose Rule 11 sanctions.

Dated:  February 14, 2023

---

[12] The Everyrealm Defendants reserve the right to pursue sanctions as to the non-sexual harassment claims in the forum this Court determines to be proper.

By:      /s/ Lloyd B. Chinn
         Lloyd B. Chinn, Esq.
         PROSKAUER ROSE LLP
         Eleven Times Square
         New York, New York 10036-8299
         (212) 969-3000
         lchinn@proskauer.com

         *Attorneys for Defendants Everyrealm Inc.,*
         *Janine Yorio, Julia Schwartz and William*
         *Kerr*