**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

TEYO JOHNSON,

                 Plaintiff,

      v.

EVERYREALM INC., WILLIAM KERR in his
individual and professional capacities, JULIA
SCHWARTZ in her individual and professional
capacities, and JANINE YORIO in her individual and
professional capacities,

                 Defendants.

Index No.: 1:22-cv-06669-PAE

---

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL DISMISAL OF PLAINTIFF'S THIRD AMENDED COMPLAINT

Shane Seppinni
Seppinni LLP
43 W 43rd St., Suite 256
New York, NY 10036
212-859-5085
shane@seppinnilaw.com

*Counsel for Plaintiff*

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

LEGAL STANDARD..........................................................................................................1

ARGUMENT .......................................................................................................................2

I.     Mr. Johnson Plausibly Alleged Discrimination Based on Race, Color, and Ethnicity and Plausibly Alleged an Equal Pay Claim Under NYLL § 194. .............................................2

     A.    Mr. Johnson Plausibly Alleged a Hostile Work Environment................................3

          1.    Ms. Yorio's remarks were racist, not "neutral". ............................................5

          2.    Ms. Yorio's racist comments made out of Mr. Johnson's presence lend support to his hostile work environment theory. ..........................................8

          3.    Defendants' harassment was not "petty slights and trivial inconveniences". ...................................................................................................................9

     B.    Mr. Johnson's termination ...................................................................................10

     C.    Mr. Johnson's transfer to a less favorable work assignment ................................12

     D.    Mr. Johnson Plausibly Alleged a Violation of NYLL § 194 and Disparate Pay in Violation of Title VII, § 1981, the NYSHRL, and the NYCHRL. ........................12

          1.    Mr. Johnson identified a similarly situated comparator............................13

          2.    Mr. Johnson plausibly alleged disparate compensation in violation of Title VII, § 1981, NYCHRL, and NYSHRL.............................................................16

II.    Mr. Johnson Plausibly Stated a Claim for Sex-Based Discrimination Under Title VII. ...18

III.   Mr. Johnson Plausibly Alleged Protected Activity in Support of His Retaliation Claims 19

IV.   Mr. Johnson Plausibly Alleged Post-Employment Retaliation ........................................21

V.    Mr. Johnson Plausibly Alleged Individual and Aiding and Abetting Liability. ................22

     A.    Mr. Johnson plausibly alleged individual liability against Ms. Schwartz and Mr. Kerr. ......................................................................................................................23

     B.    Mr. Johnson plausibly alleged aiding and abetting.............................................24

VI.   Mr. Johnson Plausibly Alleged Intentional Infliction of Emotional Distress...................25

CONCLUSION...................................................................................................................25

# <u>TABLE OF AUTHORITIES</u>
## Cases

*Albunio v. City of New York*, 16 N.Y.3d 472, 947 N.E.2d 135 (2011)..........................................20

*Areu v. Fox News Network, LLC*, No. 20-CV-8678 (RA), 2021 WL 4124226 (S.D.N.Y. Sept. 9, 2021) ..........................................................................................................................................22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................1

*Bass v. World Wrestling Fed'n Ent., Inc.*, 129 F. Supp. 2d 491 (E.D.N.Y. 2001)........................18

*BBL, Inc. v. City of Angola*, 809 F.3d 317 (7th Cir. 2015) .............................................................2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................................1

*Brown v. Daikin Am. Inc.*, 756 F.3d 219 (2d Cir. 2014)................................................................17

*Buon v. Spindler*, 65 F.4th 64 (2d Cir. 2023)............................................................................1, 3

*Caver v. City of Trenton*, 420 F.3d 243 (3d Cir. 2005)...................................................................8

*Chiaramonte v. Animal Med. Ctr.*, 677 F. App'x 689 (2d Cir. 2017) ....................................13, 15

*Craven v. City of New York*, No. 19-CV-1486 (JMF), 2020 WL 2765694 (S.D.N.Y. May 28, 2020) ..................................................................................................................................7, 9, 19

*Cruz v. Coach Stores, Inc.*, 202 F.3d 560 (2d Cir. 2000) .............................................................39

*Cooper v. Templeton*, No. 21-CV-4692 (RA), 2022 WL 4367445 (S.D.N.Y. Sept. 21, 2022).....16

*Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439 (S.D.N.Y. 2013) ......................................9

*Dixon v. Int'l Bhd. of Police Officers*, 504 F.3d 73 (1st Cir. 2007)..............................................22

*E.E.O.C. v. Port Auth. of New York and New Jersey*, 768 F.3d 247 (2d Cir. 2014)...............14, 15

*Falcon v. City Univ. of New York*, 263 F.Supp.3d 416 (E.D.N.Y. 2017) .......................................4

*Feingold v. New York*, 366 F.3d 138 (2d Cir. 2004)................................................................ 23-24

*Fitzgerald v. Henderson*, 251 F.3d 345 (2d Cir. 2001)................................................................20

*Galabya v. New York City Bd. of Educ.*, 202 F.3d 636 (2d Cir. 2000)..........................................12

*Gold v. Titlevest Agency LLC*, No. 18-CV-935, 2020 WL 2835570 (S.D.N.Y. June 1, 2020).......9

*Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509 (S.D.N.Y. 2015)..........................................23, 25

*Harding v. Dorilton Cap. Advisors LLC*, No. 22 CIV 01726 (CM), 2022 WL 10650256 (S.D.N.Y. Oct. 18, 2022) ................................................................................................................7

*Henry v. Daytop Vill., Inc.*, 42 F.3d 89 (2d Cir. 1994) ..................................................................25

*Howley v. Town of Stratford*, 217 F.3d 141 (2d Cir. 2000) ..........................................................19

*Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429 (S.D.N.Y. 2018)......................22

*In re Am. Express Anti-Steering Rules Antitrust Litig.,* 343 F. Supp. 3d 94 (E.D.N.Y. 2018)........3

*Isbell v. City of New York*, 316 F. Supp. 3d 571 (S.D.N.Y. 2018) ................................................14

*Joseph v. Owens & Minor Distribution, Inc.*, 5 F. Supp. 3d 295 (E.D.N.Y. 2014), <u>aff'd</u>, 594 F. App'x 29 (2d Cir. 2015) ...............................................................................................................16

*Karupaiyan v. CVS Health Corp.*, No. 19 CIV. 8814 (KPF), 2021 WL 4341132 (S.D.N.Y. Sept. 23, 2021) .............................................................................................................................23, 24

*Kassman v. KPMG LLP*, No. 11 CIV. 3743 (LGS), 2020 WL 4003367 (S.D.N.Y. July 15, 2020) ..............................................................................................................................................14, 16

*Kimble v. Wisconsin Dep't of Workforce Dev.*, 690 F. Supp. 2d 765 (E.D. Wis. 2010)................6

*Laurin v. Pokoik*, 02–CV–1938, 2005 WL 911429 (S.D.N.Y. Apr. 18, 2005) ............................20

*Lenart v. Coach Inc.*, 131 F. Supp. 3d 61 (S.D.N.Y. 2015) .......................................................4, 10

*Lenzi v. Systemax, Inc.*, 944 F.3d 97 (2d Cir. 2019) ................................................................11, 17

*Littlejohn v. City of N.Y.*, 795 F.3d 297 (2d Cir. 2015)............................................................11, 19

*Lima v. Hatsuhana of USA, Inc.*, No. 13 Civ. 3389 (JMF), 2014 WL 177412 (S.D.N.Y. Jan. 6, 2014) ........................................................................................................................................21

*Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349 (S.D.N.Y. 2012)...................22, 23

*Marcus v. Barilla Am. NY, Inc.*, 14 F. Supp. 3d 108 (W.D.N.Y. 2014) ......................................19

*McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51 (S.D.N.Y. 2020) ...............................25

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108 (2d Cir. 2013)..........19, 20

*Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21 CIV 02512 (CM), 2022 WL 524551 (S.D.N.Y. Feb. 22, 2022) ........................................................................................18

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998)......................................................5

*Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007) .................................................................4, 10, 18

*Percy v. New York (Hudson Valley DDSO)*, 264 F. Supp. 3d 574 (S.D.N.Y. 2017)...................20

*Petrosino v. Bell Atl.*, 385 F.3d 210 (2d Cir. 2004) ........................................................................6

*Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429 F. App'x 524 (6th Cir. 2011) ..........16

*Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252 (S.D.N.Y. 2014) ............................................18

*Randall v. United Parcel Serv., Inc.*, No. 3:17-CV-00807-HZ, 2018 WL 4955197 (D. Or. Oct. 12, 2018) .......................................................................................................................................7

*Redd v. New York Div. of Parole*, 678 F.3d 166 (2d Cir. 2012) ....................................................7

*Rice v. Smithtown Volkswagen*, 321 F. Supp. 3d 375 (E.D.N.Y. 2018) ...................................4, 18

*Sanderson v. Leg Apparel LLC*, No. 19 Civ. 8423 (GHW), 2020 WL 7342742 (S.D.N.Y. Dec. 14, 2020) .......................................................................................................................................9

*Santiago v. ACACIA Network, Inc.*, No. 22-CV-228 (JGK), 2022 WL 6775835 (S.D.N.Y. Oct. 10, 2022) ...............................................................................................................................13, 15

*Schwapp v. Town of Avon*, 118 F.3d 106 (2d Cir. 1997) ...............................................................9

*Shager v. Upjohn Co.*, 913 F.2d 398, 402 (7th Cir. 1990).............................................................7

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)........................................................................2

*Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314 (S.D.N.Y. 2021) ..................................................3

*Talwar v. Staten Island Univ. Hosp.*, 610 F. App'x 28 (2d Cir. 2015) ........................................16

*Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41 (2d Cir. 2012).................................................23

*Tromblee v. New York*, No. 119CV0638LEKCFH, 2021 WL 981847 (N.D.N.Y. Mar. 16, 2021)2, 22

*Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276 (S.D.N.Y. 2020) .....................................17

*Tully-Boone v. N. Shore-Long Island Jewish Hosp. Sys.*, 588 F. Supp. 2d 419 (E.D.N.Y. 2008).25

*United States v. Dingwall*, 6 F.4th 744 (7th Cir. 2021) ....................................................................6

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015)..................................60, 62

*Ward v. Shaddock*, No. 14-CV-7660 (KMK), 2016 WL 4371752 (S.D.N.Y. Aug. 11, 2016) .....10

*Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501 (S.D.N.Y. 2018) ................................................................................................................................................13

*Wellner v. Montefiore Med. Ctr.*, No. 17 CIV. 3479 (KPF), 2019 WL 4081898 (S.D.N.Y. Aug. 29, 2019) .....................................................................................................................................3

*Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62 (2d Cir. 2000) ....................................9

*Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 872 N.Y.S.2d 27 (2009)..............................3, 8, 10

*Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575 (2d Cir. 2020) ..................................14

*Xanthakos v. City Univ. of New York*, No. 17-CV-9829, 2020 WL 5026930 (S.D.N.Y. Aug. 24, 2020) ...........................................................................................................................................17

## Statutes

New York Labor Law § 194  ............................................................................................... passim

New York Labor Law § 740  .................................................................................................2, 21

New York City Human Rights Law, N.Y.C. Admin. Code § 8-107  .................................... passim

New York State Human Rights Law, N.Y. Exec. Law § 296................................................ passim

42 U.S.C. § 1981................................................................................................................ passim

Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e *et seq.* ........................................... passim

## Other Authorities

Fed. R. Civ. P. 8(e)(2)..............................................................................................................25

Fed. R. Civ. P. 12(b)(6)...........................................................................................................1, 2

**Preliminary Statement**

Plaintiff Teyo Johnson's employment with Defendant Everyrealm, Inc. was dominated by an escalating campaign of sexual harassment, racial discrimination, and retaliation carried out by Defendants Janine Yorio, Julia Schwartz, and William Kerr. Mr. Johnson was pressured to have sex with coworkers and clients, subjected to humiliating rumors about his sex life, singled out for racist commentary, and paid less than a non-Black, subordinate employee in a substantially similar role. After drawing Defendants' ire for turning down Ms. Yorio's sexual advances and internally reporting that a proposed crypto gambling initiative would be unlawful, Defendants retaliated by transferring him to a lower-level role, taking away major job responsibilities, and ultimately firing him. Defendants "justified" this termination with the explanation that it was "worse to have a stupid Black person on the team because then…you're making it look like you're trying to be diverse." Defendants continued their retaliatory campaign against Mr. Johnson after his employment ended and embarked on a campaign to destroy his reputation.

Defendants' motion misrepresents the allegations in Mr. Johnson's Third Amended Complaint (TAC) and misconstrues the law. The Court should deny Defendants' Motion to Dismiss.

**Legal Standard**

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), "the pleadings must contain 'enough facts to state a claim for relief that is plausible on its face,' *i.e.*, the pleaded facts must 'allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In evaluating

a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Id.*

A plaintiff need not "plead facts establishing a prima facie case." *Id.* at 79 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). This is so "because 'the precise requirements of a prima facie case can vary depending on the context,' and '[b]efore discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case[.]'" *Id.* (citing *Swiekiewicz*, 534 U.S. at 512).

<u>Argument</u>

The Court should deny Defendants' Partial Motion to Dismiss. Mr. Johnson has plausibly alleged claims of discrimination based on race and color in violation of § 1981, Title VII, the New York State Human Rights Law (NYSHRL), and the New York City Human Rights Law (NYCHRL); unequal pay in violation of New York Labor Law (NYLL) § 194; sexual harassment in violation of Title VII, the NYSHRL, and the NYCHRL; retaliation in violation of Title VII, the NYSHRL, and the NYCHRL; whistleblower retaliation in violation of NYLL § 740, individual liability, aiding and abetting liability, and intentional infliction of emotional distress.

**I.**     **Mr. Johnson Plausibly Alleged Discrimination Based on Race, Color, and Ethnicity and Plausibly Alleged an Equal Pay Claim Under NYLL § 194.**

As explained below, Mr. Johnson plausibly alleged race discrimination under several legal theories, including that Defendants created a hostile work environment, terminated him, transferred him to a less favorable work assignment, and paid him less because of his race, in violation of Title VII, § 1981, the NYSHRL, and the NYCHRL.[1] Relatedly, Mr. Johnson plausibly

---

[1] While Defendants has asked the Court to dismiss "each respective theory," Dkt. 83 at 11, the Court may not "dismiss" individual legal theories from Mr. Johnson's causes of action in a piecemeal fashion. "A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims[.]" *Tromblee v. New York*, No. 119CV0638LEKCFH, 2021 WL 981847, at *11 (N.D.N.Y. Mar. 16, 2021) (quoting *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (emphasis in original). While the word "claim" is

alleged that Defendants violated New York Labor Law (NYLL) § 194 by paying him less than non-Black employees performing the same or substantially similar work.

To properly plead a Title VII or § 1981 employment discrimination claim, "a plaintiff must allege two elements: (1) the employer discriminated against [him] (2) because of [his] race, color, religion, sex, or national origin." *Buon*, 65 F.4th at 78; *see Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) (discrimination claims under § 1981 and Title VII have same pleading standard). "To plead a discrimination claim under the NYCHRL, a plaintiff must allege only that '[he] was treated 'less well'…because of a discriminatory intent.'" *Syeed*, 568 F. Supp. 3d at 321 (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 872 N.Y.S.2d 27, 39 (2009)). The NYSHRL, as amended in 2019, "adopts the same [pleading] standard as the NYCHRL." *Id.*[2]

NYLL § 194 is a strict liability statute that requires no evidence of discriminatory intent. *See* NYLL § 194(1) (providing that it is unlawful for an employer to pay an employee who is a member of a protected class a lower rate than the rate an employee outside the protected class is paid for equal or substantially similar work).

### A.    Mr. Johnson Plausibly Alleged a Hostile Work Environment.

Mr. Johnson plausibly alleged a hostile work environment based on race. "To state a claim for hostile work environment in violation of Title VII [or §1981], a plaintiff must plead facts that

---

sometimes used to denote a particular legal theory, the key point is that if the Court finds Mr. Johnson to have sufficiently pleaded, for example, a Title VII race discrimination claim based on a hostile work environment theory, his entire cause of action survives. *See In re Am. Express Anti-Steering Rules Antitrust Litig.,* 343 F. Supp. 3d 94, 102 (E.D.N.Y. 2018) (explaining that "where two 'claims' share facts and a cause of action, but not a legal theory supporting liability, they are not separate claims at all but rather alternative formulations of the same claim").

[2] Alternately, some case law states that the 2019 amendment brought that NYSHRL "closer to" the NYCHRL standard. *See Wellner v. Montefiore Med. Ctr.*, No. 17 CIV. 3479 (KPF), 2019 WL 4081898, at *5 (S.D.N.Y. Aug. 29, 2019). Identifying a precise NYSHRL standard is immaterial here because Mr. Johnson has met the higher burden of plausibly alleging his federal claims.

would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive, that is, …creates an environment that a reasonable person would find hostile or abusive'; 2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [protected characteristic].'" *Rice v. Smithtown Volkswagen*, 321 F. Supp. 3d 375, 387 (E.D.N.Y. 2018) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)).

"However, a plaintiff need not prove all these elements at the pleading stage." *Id.* at 388 (quoting *Falcon v. City Univ. of New York*, 263 F.Supp.3d 416, 430 (E.D.N.Y. 2017)). Rather, "a plaintiff need only plead facts sufficient to support the conclusion that he was faced with harassment…of such quality or quantity that a reasonable employee would find the conditions of his employment altered for the worse." *Id.* (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)).

To state a plausible hostile work environment claim under the NYCHRL or NYSHRL, Mr. Johnson need only allege that he was subjected to "unwanted [race]-based conduct." *See Lenart v. Coach Inc*., 131 F. Supp. 3d 61, 69 (S.D.N.Y. 2015)

Defendants argue, first, that Johnson cannot show Everyrealm's hostile work environment was created *because of* his race because, by their telling, most of Ms. Yorio's allegedly racist statements to Mr. Johnson were not racist. Dkt. 83 at 12-15. Second, Defendants argue that any comments Mr. Johnson did not personally overhear are irrelevant. Dkt. 83 at 16-17. Finally, Defendants argue that Mr. Johnson endured nothing but "petty slights and trivial inconveniences." Dkt. 83 at 17. Mr. Johnson addresses each argument in turn below.

4

### (1)   Ms. Yorio's remarks were racist, not "neutral."

Defendants' argument that Ms. Yorio's remarks were "neutral" rather than "racially derogatory" is in fact no more than a request for the Court to draw inferences in the light most favorable to Defendants—the opposite of what the law requires. Dkt. 83 at 13-14.

The allegations Defendants claim could not possibly support an inference of racial animus are as follows. Mr. Johnson alleges that he was subject to racist commentary in which Ms. Yorio implied that she owned him by making repeated threats to "trade" him and referring to him as "expensive." TAC ¶¶ 2, 146-150, 165-169. Mr. Johnson's "qualifications and intelligence were often questioned and disparaged at Everyrealm." TAC ¶ 152. For example, Ms. Yorio stated that Mr. Johnson "isn't smart," "doesn't know asset management," "absolutely does not know our industry," and "does not put [the company's] best foot forward." TAC ¶ 152. Ms. Yorio made "strange, race-based comments" to Johnson, "including saying unprompted to Mr. Johnson that she is 'part Black,' but that it was a secret." TAC ¶ 40. Ms. Yorio falsely accused Mr. Johnson of being late to work. *Id.* at ¶ 75.

The inference that comments about "trading" a Black man and calling him "expensive" were made because of his race is plainly reasonable. As Ms. Yorio is presumably aware, Americans used to own Black people as slaves. Black people were "traded," bought, and sold for a price. That Mr. Johnson used to play football may have allowed Ms. Yorio to rationalize her racist comments after the fact as "jokes," but her comments were still racist. She was not "the owner of a professional sports team threatening to trade a minority player." Dkt. 83 at 15 n.9. She is the CEO of a corporation, in a professional workplace—i.e., a setting in which it is not at all normal to talk about "trading" employees as if they are owned by their employers. TAC at ¶ 16. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998) (observing that "[a] professional

football player's working environment is not severely or pervasively abusive…if the coach smacks him on the buttocks as he heads onto the field—even if the same behavior would reasonably be experienced as abusive…at the office" and explaining that "[t]he real social impact of workplace behavior often depends on a constellation of the surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed"). And as Mr. Johnson alleged, the connection between comments about owning athletes and racism has been drawn by many athletes and academics. TAC at ¶ 150.

Mr. Johnson also alleged that a number of these comments were based on racist tropes about Black men. *Id.* at ¶¶ 52 (promiscuity), 77 (tardiness). A reasonable Black man in Mr. Johnson's circumstances—who would, no doubt be aware of the racist tropes and stereotypes directed at Black men—likely would have understood these comments as based on his race. *See Petrosino v. Bell Atl.*, 385 F.3d 210, 222 n.12 (2d Cir. 2004) (explaining that a "reasonable person" must be one "informed of 'how members of the protected class would regard the challenged remarks'" because "otherwise, 'the perspective of the reasonable 'person' might turn out to be the very stereotypical views that Title VII is designed to outlaw in the workplace'") (quoting *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 321 (2d Cir. 1999) (Newman, J., concurring in part and dissenting in part)); *United States v. Dingwall*, 6 F.4th 744, 756 (7th Cir. 2021) (explaining that "courts consider an employee's race when determining whether racist comments in the workplace create an objectively hostile work environment" because "[i]t would make little sense for a court to ask how a hypothetical white person might have interpreted" comments that were "directed at a person of color"); *Kimble v. Wisconsin Dep't of Workforce Dev.*, 690 F. Supp. 2d 765, 770 (E.D. Wis. 2010) (explaining that "scholars have long recognized that [B]lack males are subject to distinct stereotypes[,]" including that they are "less intelligent than other groups");

6

*Randall v. United Parcel Serv., Inc.*, No. 3:17-CV-00807-HZ, 2018 WL 4955197, at *12 (D. Or. Oct. 12, 2018) (finding hostile work environment where plaintiff was "subject to rumors and questions by other employees about whether [he] was having affairs" and "assert[ed] that such comments offended him because they are rooted in stereotypes about the sexuality of African-American men"); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (referring to use of phrase "colored people's time," which refers to stereotype that Black people are often late, as a "racially derogatory remark"). And to whatever extent Ms. Yorio's comments were ambiguous, it is the role of the jury, not the Court, to decide what to make of them. *See Shager v. Upjohn Co.*, 913 F.2d 398, 402 (7th Cir. 1990) (explaining that while allegedly biased comments were "ambiguous," "disambiguating ambiguous utterances is for trial, not for summary judgment"); *see also Redd v. New York Div. of Parole*, 678 F.3d 166, 178 (2d Cir. 2012) (explaining that "[t]he interpretation of ambiguous conduct is an issue for the jury" because the line between "inappropriate behavior" and "actionable" harassment is "admittedly indistinct").

Mr. Johnson further alleged that he was the only Black man working at Everyrealm and that none of his coworkers were subjected to similar comments. *Id.* at ¶¶ 52, 77, 90, 149, 154. Mr. Johnson's "alleg[ation] that white [and/or non-Black] employees were not subjected to the same kind of harassing comments as he was" is another "fact from which the requisite intent may be inferred." *See Harding v. Dorilton Cap. Advisors LLC*, No. 22 CIV 01726 (CM), 2022 WL 10650256, at *5-6 (S.D.N.Y. Oct. 18, 2022) (holding that plaintiff adequately stated hostile work environment Title VII and NYCHRL claims).

### (2)   Ms. Yorio's racist comments made out of Mr. Johnson's presence lend support to his hostile work environment theory.

Defendants argue that three of Ms. Yorio's comments are irrelevant because Mr. Johnson did not personally overhear them and because one comment was made before he started working

at Everyrealm. Dkt. 83 at 16-17.[3] Specifically, Mr. Johnson alleged that, after he interviewed for his job, Ms. Yorio called him "the whitest Black guy" she had ever met; that Ms. Yorio later wrote an email stating he "need[ed] to go" because he was not "smart," "not a good representative," and did not put the company's "best foot forward"; and that she called him a "stupid Black person" in an attempt "to justify Mr. Johnson's imminent, or, in the alternative, recent discriminatory termination." TAC ¶¶ 32, 152, 159.

These comments do support Mr. Johnson's hostile work environment theory—no matter if he heard them and when they were made—because they show Ms. Yorio's discriminatory animus. A jury that learns Ms. Yorio called Mr. Johnson a "stupid black person" will hardly be inclined to infer the harassment Mr. Johnson experienced while employed by Everyrealm had nothing to do with his race. *See Caver v. City of Trenton*, 420 F.3d 243, 263-64 (3d Cir. 2005) (explaining that while plaintiff cannot establish hostile work environment "based *solely* on comments that were directed at others…evidence of these comments may be considered in determining whether facially neutral conduct on the part of [a defendant] was actually based on [the plaintiff's] race"). And despite Defendants' assertion to the contrary, the Second Circuit has repeatedly held that comments the plaintiff did not experience personally are still relevant to a hostile work environment claim. Dkt. 83 at 16-17; *see Williams*, 61 F.4th at 72 (explaining that even if the plaintiff were "not present" or "not the target of some of the racial remarks, a jury plausibly could find that the persistently offensive conduct created an overall hostile or abusive environment, which exacerbated the effect of the harassment the plaintiff experienced individually") (quoting *Cruz*, 202 F.3d at 571) (internal quotations and alterations omitted); *see also Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d

---

[3] Defendants argue that Ms. Yorio called Mr. Johnson a "stupid black person" after his employment ended; however, Mr. Johnson pled this fact in the alternative. TAC ¶159.

62, 71 (2d Cir. 2000). The cases Defendants cite are inapt because they, unlike here, did not involve racist remarks specifically pertaining to the plaintiff, and are summary judgment decisions.[4]

> **(3)** **Defendants' harassment was not "petty slights and trivial inconveniences."**

Finally, Defendants argue that "these three remarks…amount to nothing more than 'petty slights and trivial inconveniences.'" Dkt. 83 at 17. By "these three remarks," Defendants refer to Mr. Johnson's allegation that Ms. Yorio called Mr. Johnson "the whitest Black guy" she had ever met, wrongly accused him of being late, and called him a "stupid Black person"—disregarding the many other comments Ms. Yorio made which Defendants claim were "neutral." Dkt. 83 at 13, 16.

It is not the Court's role at this stage to evaluate whether Mr. Johnson was subject to more than "petty slights and trivial inconveniences." As this Court observed when it denied Defendants' motions to compel arbitration, "[T]he case law recognizing that the NYCHRL does not apply to 'petty slights or minor annoyances'…generally identifies that as an affirmative defense ill-suited to a motion to dismiss." Dkt. 70 at 28 (citing *Sanderson v. Leg Apparel LLC*, No. 19 Civ. 8423 (GHW), 2020 WL 7342742, at *8 (S.D.N.Y. Dec. 14, 2020)).[5] And even if it were, the Court would not be free to consider only a select few of Ms. Yorio's comments and disregard the rest as irrelevant to Mr. Johnson's hostile work environment theory. The Second Circuit recently

---

[4] *See* Doc. 83 at 17; *Gold v. Titlevest Agency LLC*, No. 18-CV-935, 2020 WL 2835570, at *9 (S.D.N.Y. June 1, 2020) (holding that conduct not personally experienced by plaintiff did not establish hostile work environment because it did not "involve conduct that affect[ed] or concern[ed] the plaintiff"); *Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 459 (S.D.N.Y. 2013) (granting summary judgment because plaintiff "provided only hearsay" rather than "admissible evidence that these things in fact happened.").

[5] Nor is it the role of the Court at this stage to evaluate whether Mr. Johnson has alleged "severe and pervasive" harassment, which he will ultimately need to demonstrate to prevail on his hostile work environment theory at trial under Title VII and § 1981. *See Patane v. Clark*, 508 F.3d 106, 114 (2d Cir. 2007)

9

overruled a district court's summary judgment ruling for doing the same thing. *Williams,* 61 F.4th at 70, 76.[6]

All Mr. Johnson was required to allege under the NYCHRL was unwanted race-based conduct. *See Lenart*, 131 F. Supp. 3d at 69. He did so based on the allegations detailed above. The same allegations established his federal discrimination claims. *See Ward v. Shaddock*, No. 14-CV-7660 (KMK), 2016 WL 4371752, at *7 (S.D.N.Y. Aug. 11, 2016) (plaintiff plausibly alleged Title VII hostile work environment claim based on "a pattern of racial slurs and derogatory remarks" by supervisor "regularly" making "racially charged jokes").

**B.    Mr. Johnson's termination.**

Defendants argue that Mr. Johnson made no allegations "connecting his race to his discharge." Dkt. 83 at 21-22. Mr. Johnson could not have done so more clearly:

> In the presence of Everyrealm Board Member Ms. Schwartz and other employees, Ms. Yorio attempted to justify Mr. Johnson's imminent, or, in the alternative, recent discriminatory termination: "It's worse to have a stupid Black person on the team because then you're really just exploiting them and making it look like you're trying to be diverse." Ms. Yorio told the group that one of the company's investors had shared this "wisdom" with her recently when discussing whether to terminate Mr. Johnson with him or her.

TAC ¶ 159. These comments are essentially a "smoking gun" because they were made by a supervisor and decisionmaker, specifically pertained to his termination and the decision-making process, and referred negatively to his race. *See Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019) (explaining that comments are especially probative evidence of discrimination if they (1) are made by a decisionmaker or supervisor, (2) relate to the employment decision at issue, (3) have

---

[6] In *Williams*, the district court first considered the "five main incidents" comprising the plaintiff's hostile work environment claim, "categorized the first three as ones that 'potentially referred to race,' and categorized the latter two as 'facially neutral.'" *Id.* at 70. The court then considered only the first three incidents in its totality of the circumstances analysis. *Id.* at 70, 76. The Second Circuit held that the district court failed to properly "consider the totality of the circumstances in its refusal to factor the other two events into its analysis." *Id.* at 75.

content which could reasonably be viewed as discriminatory, or (4) are related to the decision-making process). Indeed, even if Mr. Johnson were "stupid"—which he is not—Ms. Yorio's comments conveying she would rather that a stupid white person on the team than a stupid Black person amounted to an admission that Mr. Johnson's race was a factor in the termination.[7]

Defendants are also incorrect to focus solely on Ms. Yorio's comments that specifically pertained to Mr. Johnson's termination. All of Mr. Johnson's allegations that support an inference of racial bias count, not only those he can specifically tie to his termination at the pleading stage. *See Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015) (explaining that "the facts to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination" but rather "need only give plausible support to a minimal inference of discrimination"). All of Ms. Yorio's remarks discussed above, as well as the reassignment of Mr. Johnson to a less favorable work assignment and unequal pay discussed below, support an inference of discrimination here. *See id.* at 312-13 (explaining that "[a]n inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms [or] the more favorable treatment of employees not in the protected group").

### C.    Mr. Johnson's transfer to a less favorable work assignment.

Defendants argue that the Court should dismiss Mr. Johnson's "theory" that he was transferred to a less favorable work assignment because of his race because Mr. Johnson

---

[7] Defendants' tortured interpretation of Ms. Yorio's comments is that she "allegedly stated that—even if poorly worded, had Everyrealm not discharged Johnson because he is Black—despite his poor performance, the Company would be engaging in performative diversity." Dkt. 83 at 22. Even this twisted rephrasing of Ms. Yorio's comments raises an inference of discrimination. If Everyrealm was motivated to fire Mr. Johnson to avoid appearing to "engage in performative diversity," then Everyrealm fired Mr. Johnson because he is Black, because that is not a reason Everyrealm would have fired a white employee.

supposedly did not make "a single factual assertion…connecting his race to any 'less favorable' work assignment." Dkt. 83 at 21.

But as explained above, Mr. Johnson's complaint was not *required* to specifically tie each alleged adverse action to his race. The evidence discussed above provides the necessary support for an inference of discrimination.

Further, in a footnote, Defendants argue that the transfer did not constitute an adverse employment action under Title VII or Section 1981. Dkt. 83 at 21. But a transfer is an adverse employment action under Title VII and Section 1981 "if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (abrogated on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). Here, Defendants transferred Mr. Johnson out of his high-level role as the Director of Strategic Partnerships into a less desirable Asset Management role, taking away significant responsibilities in the process. TAC ¶¶ 111-112 (explaining that "Defendants made Mr. Johnson hand over his entire personal rolodex" to his replacement).

### D.  Mr. Johnson Plausibly Alleged a Violation of NYLL § 194 and Disparate Pay in Violation of Title VII, § 1981, the NYSHRL, and the NYCHRL.

Mr. Johnson has plausibly alleged that Defendants violated NYLL § 194 by paying him less than non-Black employees performing the same or substantially similar work. *See* NYLL § 194(1) (providing that it is unlawful for an employer to pay an employee who is a member of a protected class a lower rate than the rate an employee outside the protected class is paid for equal or substantially similar work, unless the discrepancy results from one of the specific factors enumerated in the statute, such as the application of a seniority system). Mr. Johnson's allegation that Everyrealm paid him less because of his race is one of the theories underlying his Title VII, § 1981, NYCHRL, and NYSHRL discrimination claims and, like the discriminatory hostile work

environment, transfer to a less favorable work assignment, and termination discussed above, yet another way he has plausibly alleged violations of these antidiscrimination statutes.

Defendants erroneously lump together the analysis of Mr. Johnson's NYLL § 194 equal pay claim with his discrimination claims, arguing that the Court "should dismiss Johnson's disparate pay claim" because, supposedly Mr. Johnson failed to (1) identify a similarly situated comparator and (2) "allege any facts suggesting an inference of discriminatory motive." Dkt. 83 at 18-21. NYLL § 194 does not require any evidence of a discriminatory motive. *See* NYLL § 194(1); *Santiago v. ACACIA Network, Inc.*, No. 22-CV-228 (JGK), 2022 WL 6775835, at *7 (S.D.N.Y. Oct. 10, 2022) (citing *Belfi v. Prendergast*, 191 F.3d 129, 136 (2d Cir. 1999); *see Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 519 (S.D.N.Y. 2018) ("The Equal Pay Act creates a type of strict liability; no intent to discriminate need be shown").[8] Consequently, Mr. Johnson explains separately below that he (1) identified a similarly situated comparator and (2) alleged facts suggesting an inference of discriminatory motive.

### (1)    Mr. Johnson identified a similarly situated comparator.

All Mr. Johnson needs to do at the pleading stage to assert his NYLL § 194 claim is identify a single, better-paid comparator outside his protected class and specify some overlapping job duties or content between the two roles.[9] "[A]t the pleading stage, 'a plausible [NYLL § 194] claim must include sufficient factual matter, accepted as true to permit the reasonable inference that the relevant employees' job *content* was substantially equal.'" *Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 581 (2d Cir. 2020) (quoting *E.E.O.C. v. Port Auth. of New York and New*

---

[8] "An equal pay claim under New York Labor Law § 194 is analyzed under the same standards applicable to the federal Equal Pay Act." *Chiaramonte v. Animal Med. Ctr.*, 677 F. App'x 689, 690 n.1 (2d Cir. 2017) (summary order).

[9] Everyrealm incorrectly identifies the prima facie case which Mr. Johnson must "ultimately prove" as what he must "plausibly assert" to state a NYLL § 194 claim. *See* Dkt. 83 at 19 n.15; *Wu*, 815 F. App'x at 580.

*Jersey*, 768 F.3d 247, 254-55 (2d Cir. 2014) (emphasis in original); *see Port Auth. of New York and New Jersey*, 768 F.3d at 255 ("To satisfy this standard, a plaintiff must establish that the jobs compared entail common duties or content"); *Isbell v. City of New York*, 316 F. Supp. 3d 571, 589 (S.D.N.Y. 2018) (explaining that a plaintiff need only identify a single comparator at the pleading stage) (citing *Lavin-McEleny v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir .2001)).

Mr. Johnson more than met this standard. Mr. Johnson alleged that he—the 40-year-old Director of Strategic Partnerships at Everyrealm, who came into the role with years of experience in Strategic Partnerships—was paid less than his 23-year-old non-Black subordinate, Lea, the Strategic Partnerships Associate. TAC ¶¶ 121-123. Mr. Johnson further alleged that "[t]heir duties were comparable" in that "[b]oth were tasked with identifying strategic partnerships, negotiating them, closing them, and ensuring that they went on to be successful." *Id.* at ¶ 123. This list of shared job duties is in fact quite similar to that found to sufficiently state an Equal Pay Act (EPA) claim in a recent case in this district. *Kassman v. KPMG LLP*, No. 11 CIV. 3743 (LGS), 2020 WL 4003367, at *11 (S.D.N.Y. July 15, 2020) (holding that plaintiff sufficiently stated EPA claim where she alleged common job duties of "ensuring engagement teams delivered quality client service," "coordinat[ing] projects," "manag[ing] client relationships," and "work[ing] to enhance business development"). Moreover, Mr. Johnson alleged that "[t]he main difference in their roles was that Mr. Johnson was shouldered with more responsibility and a heavier workload, despite being paid less." TAC ¶ 123. That Mr. Johnson was paid less than someone who was not only performing the same job duties, but who also had less experience, less responsibility, and a lighter workload than Mr. Johnson makes the strength of his claim all the clearer. *See Craven v. City of New York*, No. 19-CV-1486 (JMF), 2020 WL 2765694, at *3, 7 (S.D.N.Y. May 28, 2020) (holding that plaintiff sufficiently stated EPA claim where she alleged she and comparator both oversaw

social services fraud investigations, "attended the same routine meetings," and that comparator had less experience and managed fewer employees); *Chiaramonte*, 2014 WL 3611098, at *5 (holding that plaintiff adequately stated EPA claim by alleging that she and comparator performed similar work as veterinarians and that she "shouldered responsibilities that [the male comparator] did not match" and had a greater workload). Finally, although Mr. Johnson did not need to allege more than one comparator, he reinforced his claim by alleging that Ms. Yorio hired her non-Black husband in an equal-level role, that Mr. Johnson and Mr. Yorio were both tasked with leading their respective departments, and Mr. Yorio was given a vastly greater amount of pay despite his comparative lack of experience. *See* TAC ¶ 121; *Santiago*, 2022 WL 6775835, at *6-7 (holding that non-Black employee with similar job duties and fewer qualifications was similarly situated to employee, for purposes of EPA and NYLL § 194, and explaining that "[i]t would make no sense to conclude that [the white male employee] was less of a comparator for having fewer credentials when he was still being paid more than the plaintiff").

Everyrealm does not contend with the actual allegations included in Mr. Johnson's complaint—in particular, the list of specific job duties shared between Mr. Johnson and Lea—and, instead, relies on the false premise that Mr. Johnson alleged no more than similar job titles. Dkt. 83 at 18-20. As a result, all of the case law Everyrealm relies on which actually applies the pleading standard applicable to NYLL § 194 is inapposite. *See* Dkt. 83 at 20 (citing *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247 (2d Cir. 2014) and *Kassman v. KPMG LLP*, No. 11 Civ. 3743 (LGS), 2020 WL 4003367, at *9 (S.D.N.Y. July 15, 2020)). The other cases Everyrealm relies on are irrelevant because each pertains either to whether the plaintiff alleged a discriminatory motive,[10]

---

[10] As noted above, NYLL § 194 does not require proof of discriminatory motive.

applied the more demanding standard applicable at summary judgment,[11] or did not involve the issue of disparate pay at all.[12] *See* Dkt. 83 at 20-21.

Finally, while Defendants point out that Mr. Johnson did not "allege that either Mr. Yorio or 'Lea' resided out of New York City and had a comparable remote work agreement[,]" this is the kind of fact-based argument that is inappropriate for resolution on a motion to dismiss. *See Kassman*, 2020 WL 4003367, at *12 (refusing to consider defendant's argument asserting differences between plaintiff's job responsibilities and those of comparators). And, regardless, Mr. Johnson did not allege that he had a "remote work arrangement"; he alleged that he was "assigned to Everyrealm's New York, New York office for at least two weeks per month." TAC ¶ 13.

> **(2)** **Mr. Johnson plausibly alleged disparate compensation in violation of Title VII, § 1981, NYCHRL, and NYSHRL.**

Mr. Johnson sufficiently alleged disparate compensation in violation of Title VII, § 1981, the NYSHRL, and NYCHRL because (1) as explained above, he satisfied the NYLL § 194 unequal-pay-for-equal work standard and (2) has "satisfie[d] his 'minimal burden of alleging facts 'suggesting an inference of discriminatory motivation'" for the pay disparity. *See Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 285 (S.D.N.Y. 2020) (explaining that "satisfaction of the

---

[11] *See Joseph v. Owens & Minor Distribution, Inc.*, 5 F. Supp. 3d 295, 312 (E.D.N.Y. 2014), aff'd, 594 F. App'x 29 (2d Cir. 2015) (upholding summary judgment in Title VII case where Plaintiff submitted evidence only that proposed comparators shared same job title); *Talwar v. Staten Island Univ. Hosp.*, 610 F. App'x 28, 31 (2d Cir. 2015) (finding that plaintiff failed to establish prima facie case at summary judgment).

[12] *See Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429 F. App'x 524, 537 (6th Cir. 2011) (holding that plaintiff alleging retaliation failed to rebut employer's legitimate, non-retaliatory explanation offered at summary judgment for why plaintiff was required to sign different contract than other employees); *Cooper v. Templeton*, No. 21-CV-4692 (RA), 2022 WL 4367445, at *4 (S.D.N.Y. Sept. 21, 2022) (holding that plaintiff, who infamously called 911 on a Black birdwatcher in Central Park, did not plausibly allege discrimination claims in disparate discipline case because misconduct proposed comparators' misconduct was "too different in kind to be comparable to her conduct in this case").

Equal Pay Act's unequal-pay-for-equal-work standard is sufficient (although not necessary) to establish an adverse employment action").

Mr. Johnson more than met his minimal burden of alleging facts suggesting an inference of discriminatory motivation based on the facts detailed above. Courts have regularly denied motions to dismiss disparate pay claims where the allegations supporting an inference of discrimination were similar or far less substantial than those here. *See, e.g.*, *id.* at 286 (denying motion to dismiss Title VII, NYSHRL, and NYCHRL disparate pay claims where plaintiff alleged similarly situated male colleagues were paid more and that supervisor "consistently showed favoritism" towards male colleague); *Xanthakos v. City Univ. of New York*, No. 17-CV-9829, 2020 WL 5026930, at *6 (S.D.N.Y. Aug. 24, 2020) (holding that the "instances of differential treatment" that supervisor did not invite plaintiff to staff meetings that male colleagues were invited to, made disparaging comments about a former female employee but not former male employees, and reassigned some of plaintiff's projects to a male project manager adequately supported inference of discrimination); *see also Lenzi*, 944 F.3d at 112 (reversing district court's grant of summary judgment on Title VII pay discrimination claim and explaining that evidence that CFO of company consistently made disparaging remarks about women established discriminatory motive).

Defendants also argue that nepotism, not discrimination based on race, is the real reason Ms. Yorio's husband was paid much more than Mr. Johnson. This is another factual argument inappropriate for resolution on a motion to dismiss. *See Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) ("That there may be other explanations for the defendants' employment decisions does not render [Plaintiff's] allegations of discrimination inadequate as a matter of law").

**II.      Mr. Johnson Plausibly Stated a Claim for Sex-Based Discrimination Under Title VII.**

Everyrealm argues that Mr. Johnson has "failed to sufficiently allege the conduct was 'severe or pervasive'" and thus has not stated a Title VII sexual harassment claim. Dkt. 83 at 22.

Mr. Johnson was not required to allege "severe or pervasive" harassment. "[D]etermining whether conduct is severe or pervasive…involves a question of fact and is generally inappropriate to determine at the pleadings stage of a litigation." *Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21 CIV 02512 (CM), 2022 WL 524551, at \*9 (S.D.N.Y. Feb. 22, 2022) (citing *Patane*, 508 F.3d at 114); *see Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 259 (S.D.N.Y. 2014) (observing "how difficult it is for courts to perform the extraordinarily sensitive and comprehensive analysis necessary to assess a total set of workplace circumstances"). "[A] plaintiff need only plead facts sufficient to support the conclusion that he was faced with harassment…of such quality or quantity that a reasonable employee would find the conditions of his employment altered for the worse." *Rice*, 321 F. Supp. 3d at 388 (quoting *Patane*, 508 F.3d at 113). The Second Circuit has "repeatedly cautioned against setting the bar too high in this context." *Patane*, 508 F.3d at 113.

Mr. Johnson met this standard by alleging a pattern of offensive, demeaning sexual comments in the workplace and that Ms. Yorio recurrently pressured him to have sex with coworkers and clients, including propositioning him herself. TAC ¶¶ 38, 42-109; *see Bass v. World Wrestling Fed'n Ent., Inc.*, 129 F. Supp. 2d 491, 501 (E.D.N.Y. 2001) (holding that Title VII plaintiff sufficiently alleged hostile work environment by alleging "repeated and unwelcome sexual advances and intrusions").

That said, Mr. Johnson did allege "severe or pervasive" harassment. The harassment was "unrelenting," included "humiliating" bullying about his girlfriend's menstrual cycle, and was "so

severe and regular that it often made it impossible for Mr. Johnson to carry out his duties." TAC ¶¶ 42, 83; *see Littlejohn*, 795 F.3d at 321 (explaining that to determine the severity or pervasiveness of harassment, courts consider "the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is…humiliating…and whether it unreasonably interferes with an employee's work performance"). Indeed, one of Ms. Yorio's sexually harassing "tirades" was so severe that it ruined a $20 million business deal Mr. Johnson had negotiated. TAC ¶¶ 106-111. *See Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (holding that single "tirade" of obscene comments made in front of plaintiff's co-workers was severe enough to establish a hostile work environment).

Moreover, the "interplay" between the racial and sexual harassment present in this case only heightens the severity. TAC ¶ 50-52 (alleging that Ms. Yorio's "encouragement" to cheat on his girlfriend with her "insinuate[ed] that Mr. Johnson was promiscuous—a longstanding trope regarding Black men"); *see Cruz*, 202 F.3d at 572 (holding that a jury could find racial harassment "exacerbated the effect" of sexual harassment, "and vice versa").

## III.   Mr. Johnson Plausibly Alleged Protected Activity in Support of His Retaliation Claims.

Defendants argue that Mr. Johnson failed to allege protected activity. Under Title VII, "protected activity" includes "a broad range of actions taken to oppose or protest discrimination[.]" *Marcus v. Barilla Am. NY, Inc.*, 14 F. Supp. 3d 108, 115 (W.D.N.Y. 2014) (citing *Cruz*, 202 F.3d at 566). Protected activity under the NYCHRL is similarly defined, but more broadly interpreted. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*., 715 F.3d 102, 108, 112 (2d Cir. 2013) (explaining that "under the NYCHRL, protected activities include 'oppo[sing] any practice forbidden under this chapter'").

Mr. Johnson sufficiently pleaded protected activity by alleging that he declined Ms. Yorio's sexual advances and, at least under the NYCHRL, by expressing his disapproval of her sexually harassing conduct during their meeting with Mr. Berling. TAC ¶¶ 50-55, 108-109.[13]

It is true that the Second Circuit has declined to rule on the issue of whether, *under Title VII*, rejection of sexual advances is a protected activity. *Fitzgerald v. Henderson*, 251 F.3d 345, 366 (2d Cir. 2001). That said, district court case law suggests that where, as here, the unwanted sexual advances came from a supervisor, rejecting such advances does constitute protected activity under Title VII. *See, e.g.*, *Percy v. New York (Hudson Valley DDSO)*, 264 F. Supp. 3d 574, 585 (S.D.N.Y. 2017) (holding that rejecting sexual advances of employee who held supervisory position was protected activity); *Laurin v. Pokoik*, 02–CV–1938, 2005 WL 911429, at *4 (S.D.N.Y. Apr. 18, 2005) (holding that rejection of sexual advances was protected activity because perpetrator owned company and "had no supervisor for [the plaintiff] to complain to").

Even so, under the NYCHRL, the Second Circuit *has* held that an employee "opposed" discrimination by rejecting her supervisor's advances. *Mihalik*, 715 F.3d at 115. Indeed, under the NYCHRL, even Mr. Johnson's clear disapproval of Ms. Yorio's sexually harassing conduct during their meeting with Mr. Berling constitutes protected activity. *See Albunio v. City of New York*, 16 N.Y.3d 472, 479, 947 N.E.2d 135, 138 (2011) (holding that, even though plaintiff "did not say in so many words that [her coworker] was a discrimination victim," a jury could find she had

---

[13] Defendants claim that Mr. Johnson did not actually turn down Ms. Yorio's advances because, when he told her "he had no interest in having sexual relationships with his coworkers," he did not also explain, "and that includes you." Dkt. 83 at 23 n.20. Not only does this make no sense—Ms. Yorio knew she was a "coworker"—but Mr. Johnson's complaint does make clear that he alleges he turned down Ms. Yorio's clumsy advances. TAC ¶¶ 50-58 (alleging that Ms. Yorio was "testing the waters with him" by coming to him late at night at their hotel and encouraging him to cheat on his girlfriend, and that he declined).

"opposed" discrimination because she communicated that she thought the treatment of her coworker "was wrong").[14]

Defendants also ask the Court to strike Mr. Johnson's assertions about his protected activity from his TAC. Dkt. 83 at 25. Defendants' reasoning is unclear and misrepresents the procedural history of this case. Mr. Johnson has not added any new factual allegations having to do with sexual harassment, and the Court did not "forbid" Mr. Johnson from later amending his claims by giving him the opportunity to "add any allegations that might bear on whether the EFA precludes arbitration" before ruling on the matter. Dkt. 83 at 25. Regardless, even Mr. Johnson's first, now non-operative, Complaint mentioned retaliation under NYCHRL and NYSHRL.

## IV.    Mr. Johnson Plausibly Alleged Post-Employment Retaliation.

First, Defendants impermissibly request that the Court dismiss only the post-employment portion of Mr. Johnson's NYLL § 740 whistleblower retaliation claim. Dkt. 84 at 8 n.2. Mr. Johnson alleged a single set of facts in support of his NYLL § 740 claim: that after he internally reported concerns about the legality of Defendants' proposed line of business, Defendants retaliated against him by, among other things, sabotaging his work, terminating him, and "engaging in an ongoing campaign of retaliatory legal actions and disclosures of confidential facts and documents." TAC ¶ 225. The Court may not "dismiss" a single portion of a sentence from this

---

[14] In a footnote, Defendants claim that Mr. Johnson "does not assert a single fact linking his purported 'rejection' of Ms. Yorio's advances with any adverse act." Defendants waived any argument that Mr. Johnson did not plausibly allege retaliatory motivation by making no effort to develop one. *See Lima v. Hatsuhana of USA, Inc.*, No. 13 Civ. 3389 (JMF), 2014 WL 177412, at *1 (S.D.N.Y. Jan. 6, 2014) ("It is well established that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). At any rate, Mr. Johnson alleges that the sexual harassment of him became more severe, personal, and humiliating soon after he turned down her advances; this timing supports an inference of retaliation. TAC ¶¶ 50-58 (turning down advances), 64-83 (harassment regarding his girlfriend's menstrual cycle); *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (explaining that "protected activity followed closely in time by adverse employment action" shows retaliatory purpose).

single claim. *See Tromblee*, 2021 WL 981847, at *11 (explaining that defendant could not move to dismiss one of two theories of plaintiff's retaliation claim).

Second, Defendants argue that their post-termination actions constitute "reasonable defensive measures" and that Mr. Johnson "cannot establish any 'differential treatment'" absent actual publication of his private tax records and confidential personnel file, both of which Defendants publicly distributed. Dkt. 83 at 26-27. TAC ¶¶ 170-175.

The case law Defendants rely on is inapposite. In *Areu* and *Hughes*, each employer simply leaked its side of the story to the media; neither distributed private documents. *See Areu v. Fox News Network, LLC*, No. 20-CV-8678 (RA), 2021 WL 4124226, at *16 (S.D.N.Y. Sept. 9, 2021); *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 449 (S.D.N.Y. 2018). It is well-recognized that "[l]egitimate privacy concerns exist with regard to personnel files." *Ladson v. Ulltra E. Parking Corp.*, 164 F.R.D. 376, 377 (S.D.N.Y. 1996). Defendants' actions were "threatening" and "intimidating," not merely defensive. *See Dixon v. Int'l Bhd. of Police Officers*, 504 F.3d 73, 84 (1st Cir. 2007) ("There is an important difference between defending oneself…and threatening [or] intimidating").

And Mr. Johnson need not show "differential treatment" to establish retaliation under the NYSHRL or NYCHRL; he is required "only… to show that something happened that was 'reasonably likely to deter a person from engaging in protected activity.'" *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 362 (S.D.N.Y. 2012) (citing NYCHRL § 8-107(7). The case law Defendants rely on is inapplicable in this regard because it applies the anti-retaliation provision of Title VII, and Mr. Johnson did not allege post-employment retaliation in his Title VII retaliation claim. *See* Dkt. 83 at 27; TAC ¶¶ 239-243; *Hughes*, 304 F. Supp. 3d at 449.

**V.     Mr. Johnson Plausibly Alleged Individual and Aiding and Abetting Liability.**

Mr. Johnson plausibly alleged individual liability against Ms. Schwartz and Mr. Kerr, as well as aiding and abetting liability against all Defendants.

The NYSRHL "provides for individual liability where the individual defendant: (i) is considered an 'employer,' NYSHRL § 296(i), or (ii) aided and abetted the unlawful discriminatory acts of others, *id.*§ 296(6)." *Karupaiyan v. CVS Health Corp.*, No. 19 CIV. 8814 (KPF), 2021 WL 4341132, at *8 (S.D.N.Y. Sept. 23, 2021) (citing *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 521-22 (S.D.N.Y. 2015)). "[A]n individual defendant may be liable as an 'employer' under the NYSHRL 'when that individual has an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others[.]'" *Id.* (quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012)).

"[T]he NYCHRL provides for individual liability of an employee 'regardless of ownership or decisionmaking power.'" *Id.* (quoting *Malena*, 886 F. Supp. 2d at 366). "The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL." *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004).

### A. Mr. Johnson plausibly alleged individual liability against Ms. Schwartz and Mr. Kerr.

First, Mr. Johnson plausibly alleged the individual liability of both Ms. Schwartz and Mr. Kerr as employers. TAC ¶ 17 (Ms. Schwartz is one of Everyrealm's "largest individual shareholders"); TAC ¶¶ 15, 92-101 (Mr. Kerr sexually harassed Mr. Johnson while supervising his work managing celebrity investor relationships); *see Feingold*, 366 F.3d at 157 (explaining that supervisor qualifies as "employer" under the NYSHRL if the supervisor "actually participates in the conduct giving rise to the discrimination").

In addition, Mr. Johnson sufficiently alleged the direct participation of Ms. Schwartz and Mr. Kerr, given both of their alleged sexual harassment and Ms. Schwarz's alleged role in Mr.

Johnson's transfer and termination. *See Karupaiyan*, 2021 WL 4341132, at *14 (holding that plaintiff sufficiently established individual liability under NYSHRL and NYCHRL as to (1) coworker "alleged to have played a decision-making role in Plaintiff's termination" and (2) coworker who was "alleged to have been involved in supervising Plaintiff" and made comments "reflecting an intent to force Plaintiff out of his role"). Mr. Johnson alleged that Ms. Schwartz sexually harassed him about his girlfriend's menstrual cycle, TAC ¶¶ 64-83, participated in the retaliatory and discriminatory transfer of Mr. Johnson to the less desirable position, TAC ¶¶ 111-112, and joined conversations about his discriminatory and retaliatory termination, TAC ¶ 159. Mr. Johnson alleged that Mr. Kerr sexually harassed him by continually making him listen to offensive sexual remarks about an investor Mr. Johnson managed. TAC ¶¶ 92-101.

As to Defendants' claim that Ms. Schwartz and Mr. Kerr's involvement amounted to no more than "petty slights or minor annoyances," alleging direct participation does not require that each individual defendant's actions in isolation established a hostile work environment. Dkt. 83 at 31-32; *see Feingold*, 366 F.3d at 158-159 (reversing grant of summary judgment because three individual defendants "all participated in creating a hostile work environment").

### B.    Mr. Johnson plausibly alleged aiding and abetting.

Johnson plausibly alleged that each individual defendant "aided and abetted" the actions of the other defendants by being aware of their unlawful conduct and failing to remedy it. TAC ¶ 42; *see Feingold*, 366 F.3d at 158-159 (reversing grant of summary judgment because individual defendants "took no action to remedy such behavior although they were aware of it").

Nor is Mr. Johnson's claim "impermissible" because individuals "cannot be liable for 'aiding and abetting' based on their own actions,'" as Defendants argue. Dkt. 83 at 30. There is significant "disagreement over whether an individual can be held liable for aiding and abetting *his*

*own conduct*[.]" *Gorman,* 146 F. Supp. 3d at 522 (emphasis in original) (citing cases). The rationale for such liability is "that the employees' actions imposed liability on the employer and therefore the employees were aiding and abetting the employer's violation of the HRL, and not their own." *Tully-Boone v. N. Shore-Long Island Jewish Hosp. Sys.*, 588 F. Supp. 2d 419, 427 (E.D.N.Y. 2008). At any rate, it is not improper for a plaintiff to plead alternative, inconsistent claims—particularly in an employment discrimination case. *See Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95 (2d Cir. 1994) (citing Fed. R. Civ. P. 8(e)(2)). Discovery has not yet taken place and the full extent of each individual Defendant's conduct remains to be seen.

## VI.   Mr. Johnson Plausibly Alleged Intentional Infliction of Emotional Distress.

Defendants argue that Mr. Johnson "fails to allege 'extreme and outrageous' behavior sufficient to state a claim" for IIED. Dkt. 83 at 28. Defendants acknowledge that Mr. Johnson plausibly alleged sexual harassment under the NYCHRL, but argue that an IIED claim based on sexual harassment must fail if "there are no allegations of physical touching." *Id.*

This is incorrect. *See McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 76 (S.D.N.Y. 2020) (finding plaintiff's IIED claim plausible based on sexual harassment without allegations of physical touching). Mr. Johnson sufficiently pled extreme and outrageous conduct by detailing a "continuous course" of sexually and racially harassing conduct, "tirades" by Ms. Yorio, TAC ¶ 106, and a retaliatory campaign that resulted in his termination and continued afterwards. *See id.* (holding that plaintiff sufficiently pled extreme and outrageous conduct based on "continuous course of harassing conduct," "verbal" assault, and retaliatory campaign).

## <u>Conclusion</u>

For the reasons given above, the Court should deny Defendants' Motion to Dismiss.

**Dated:** May 19, 2023
     New York, New York

Respectfully submitted,


*/s/ Shane Seppinni*

Shane Seppinni
Seppinni LLP
43 W 43rd St., Suite 256
New York, NY 10036
212-859-5085
shane@seppinnilaw.com

*Attorney for Plaintiff*